CLERK US DISTRICT COURT
NORTHERN DIST. OF TX
FILED

# THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

2014 NOV -3  PM 12: 51

DEPUTY CLERK_____NT_____

Jason Nieman,                                          )
                                                       )   Case No. **3-14CV3897-M**
     Plaintiff                 )
                                                       )
     vs.                       )   Judge: _____
                                                       )
The Concrete Cowboy Bar, Jonathan Valz,                )   Magistrate Judge: _____
John Does 1-4, City of Dallas, TX, City of             )
Dallas Fire/EMS Dept., John McKinney,                  )
Dwaine N. Helton, Michael Milham,  City of             )
Dallas Police Dept., Jessica L. Morrell, Dallas        )   **JURY TRIAL REQUESTED**
County, Texas, Dallas County Hospital                  )
District (d/b/a Parkland Health and Hospital           )
System), Amanda Garcia, RN, Jane Ellen                 )
O'Connell, M.D., Katherine M. Mapula, RN               )
Catherine Lewis Neal, MD, Luis Roman                   )
Tavaras, MD, Kristie Louann Brown, RN,                 )
University of Texas Southwest Medical Center           )
at Dallas, Dr. Alexander Eastman, M.D.,                )
Dr. Gina Sims, M.D., Dr. Jeffrey Pruitt, M.D.          )
Dr. Nhan Le, M.D., Dr. Kyle Molberg, M.D.,             )
Dr. Suhny Abbara, M.D., Dr. Anthony                    )
Whittemore, M.D.                                       )
                                                       )
     Defendants                )
_____

## PLAINTIFF'S FIRST  COMPLAINT AT LAW

Now Comes Plaintiff JASON NIEMAN ("Nieman"), *Pro Se,* subject to authorization

granted under Section 1654 of title 28 of the United States Code for self-representation, and the

constitutions of the United States of America, the State of Texas, and the State of Illinois,

complaining against Defendants The Concrete Cowboy Bar, Jonathan Valz, John Does 1-4, City

of Dallas Fire/EMS Dept., John McKinney, Dwaine N. Helton, Michael Milham, City of Dallas

Police Dept., Jessica L. Morrell, City of Dallas County Hospital District (d/b/a Parkland Health

and Hospital System), Amanda Garcia, RN, Jane Ellen O'Connell, M.D., Katherine M. Mapula, RN, Catherine Lewis Neal, MD, Luis Roman Tavaras, MD, Kristie Louann Brown, RN, University of Texas Southwest Medical Center at Dallas, Dr. Alexander Eastman, M.D., Dr. Gina Sims, M.D., Dr. Jeffrey Pruitt, M.D. , Dr. Nhan Le, M.D., Dr. Kyle Molberg, M.D., Dr. Suhny Abbara, M.D., Dr. Anthony Whittemore, M.D.

## INTRODUCTION

1. Plaintiff brings this action to redress violations under Texas Dram Shop Act;  Tex. Alco. Bev. Code §§ 2.02(b), 106.14(a) [The Concrete Cowboy, Johnathan Valz and John Does 1, 2], Texas Common Law, and other relevant sections of Texas statutory law as to causes of action for offenses including but not limited to kidnapping, false arrest, false imprisonment, battery, fraud, conversion, breach of express and/or implied fiduciary duties.  Plaintiff also brings this action to redress violations of the Fourth and Fourteenth Amendments to the Constitution of the United States of America, by way of 42 U.S.C. 1983 as to false arrest, unlawful seizure, unlawful detention, and excessive force by those acting under "color of law".

2. The Plaintiff is seeking damages in excess of $50,000.01 in this matter along with injunctive and equitable relief.

## JURISDICTION AND VENUE

3. This court has jurisdiction pursuant to 28 U.S.C. 1331.  Additionally, litigation is proper in this district as the Defendants reside and/or regularly do business in this district, and one or more of the tortious acts alleged occurred in this district.  Additionally, certain Defendants have submitted themselves to the laws of the State of Illinois, by virtue of committing one or more tortious acts against the Plaintiff, who permanently resides in the State

of Illinois, consistent with the Illinois Long-Arm Statute, 735 ILCS 5/2-209, specifically subsections (1), (2), and/or (7).

## ADMINISTRATIVE PROCEDURE

4. As to the municipal/governmental Defendants, no administrative process is required. In the alternative, Plaintiff has reasonably exhausted any required administrative remedy by virtue of his actions of contact with the relevant Defendants, and their refusal to respond in good faith. Plaintiff has attempted to contact the relevant Defendants, and/or their apparent representatives repeatedly. However, he has generally received little or no response. As to Defendant DCHD/Parkland, the Defendant's representative (Brenda Neel Hight, Senior Associate General Counsel) refused to respond further after Plaintiff refused to provide an extensive and oppressive three page medical authorization. Plaintiff also provided a copy of the drafted *Complaint* in this action to the various Defendants on or about October 8, 2014, soliciting input as to the accuracy of his allegations pursuant to Fed. R. Civ. P. 11. Plaintiff has received no response or rebuttal as to the pled causes and/or facts.

## PARTIES

5. Plaintiff Nieman is a resident of Sangamon County, Illinois. Plaintiff Nieman is an insurance industry professional with approximately 25 years of experience and an excellent professional reputation. At the time of the initial incidents, September 14 and 15, 2014, Plaintiff Nieman was in the Dallas, Texas area on personal business.

6. At all relevant times, Defendant The Concrete Cowboy operated as a for profit tavern/bar establishment located at 2512 Cedar Spring in Dallas, Texas. At all relevant times, Johnathan Valz was the owner and operator of The Concrete Cowboy, responsible for the operation of the for profit bar/tavern, including the maintenance of the premises, training and

supervision of all staff, and the safety of any customers as to such for profit business operations. By virtue of an oral and/or written agreement (contract) with the City of Dallas, TX and/or the City of Dallas Police Department, Defendants The Concrete Cowboy and Valz were permitted to employ several uniformed police officers (John Does 3 and 4) in a dual employment format for the benefit of Defendant City of Dallas, Texas, as well as Defendants The Concrete Cowboy and Valz.

7.  At all times relevant, Defendants John Doe 1 and 2 were employees of The Concrete Cowboy and Johnathan Valz, serving as employees responsible, in whole or part, for the service of alcoholic beverages to patrons.  Defendants John Doe 1 and 2 had, at all relevant times, a duty to monitor the safety and status of patrons of The Concrete Cowboy and to ensure that (1) no persons adulterated the products of The Concrete Cowboy as to patrons with drugs, poisons, or other similar substances and (2) not to serve alcohol to any patron who was visibly intoxicated or otherwise in a physically or mentally compromised status.

8.  At all relevant times, Defendant City of Dallas, TX has operated as a municipal corporation under the laws of the State of Texas and/or U.S. federal law.  Such entity operates numerous ministerial and/or governmental divisions including but not limited to, (1) operation of Defendant City of Dallas Police Department, (2) operation of Defendant City of Dallas Fire Department, including the Emergency Medical Services ("EMS") division.  As to Defendants Concrete Cowboy and Johnathan Valz, the City of Dallas, directly and/or through the Defendant Police division, participated in the operation and supervision of a for profit bar/tavern operation by virtue of allowing on duty law enforcement officers (including but limited to John Does 3 and 4) to provide security and other services for Defendants Concrete Cowboy and Johnathan Valz by virtue of a dual employment format.  Accordingly, Defendants City of Dallas and/or

City of Dallas Police Department are vicariously liable for certain liabilities which may apply to Defendants John Doe 3, 4, The Concrete Cowboy and/or Johnathan Valz.

9. At all relevant times, Defendants John Doe 3 and 4 are believed to have been residents of Dallas County, Texas, employed by the City of Dallas Police Department as police (law enforcement) officers. Additionally, at all relevant times, Defendants John Doe 3 and 4 served as dual employees of Defendants The Concrete Cowboy and Johnathan Valz, providing security and other services Defendants Concrete Cowboy and Valz. The actions and duties of Defendants John Doe 3 and 4 were made "under color of law" as duty authorized law enforcement officers for the City of Dallas, TX and/or the City of Dallas Police Department, and other times were as non-governmental employees of Defendants City of Dallas, TX, City of Dallas Police Department, The Concrete Cowboy and Johnathan Valz. Defendants City of Dallas, TX, City of Dallas Police Department, The Concrete Cowboy and Johnathan Valz are vicariously liable (respondent superior) for any actions taken by Defendants John Doe 3 and/or 4 which are ultimately found to be outside of any "color of law" authority.

10. At all relevant times, Defendants Dwaine N. Helton and Michael Milam are believed to have been residents of Dallas County, Texas, in the employ of Defendants City of Dallas and/or Defendant City of Dallas Fire Department, EMS division. As governmental employees, these Defendants took certain actions against Plaintiff Nieman under actual or alleged "color of law", including, in whole or part, capture of, battery against, unauthorized sedation of, unauthorized restraint of, and kidnapping of Plaintiff Nieman.

11. At all relevant times, Defendant Jessica L. Morrell is believed to have been in the employ of Defendants City of Dallas, TX and/or the City of Dallas Police Department as a

police (law enforcement) officer, acting in course and scope of duties in such role (under "color of law").

12. At all relevant times, Defendant Dallas County, TX has operated as a municipal corporation under the laws of the State of Texas and/or U.S. federal law.  Defendant Dallas County, TX operates a number of governmental and/or ministerial subdivisions including Defendant Dallas County Hospital District, d/b/a Parkland Health and Hospital System {"DCHD"), a for profit and/or not for profit medical facility, in the City of Dallas, Texas. Defendants Dallas County, TX and Dallas County Hospital District have duties to ensure that (1) staff acting under "color of law" are properly trained in their duties so as not to infringe upon the civil or other rights of persons under their influence and/or control, (2) to not allow policies or procedures which encourage or increase the events of tortious injury or property damage and/or violation of civil rights of patients and other persons as to municipal and/or hospital operations.  As to operations of a ministerial or medical nature, Defendants Dallas County, TX and DCHD are vicariously liable for the torts or offenses of their employees and/or other agents, contractors, or medical professionals under their control.

13. At all relevant times, Defendants Amanda Garcia, RN, Jane Ellen O'Connell, M.D., Katherine M. Mapula, RN, Catherine Lewis Neal, MD, Luis Roman Tavaras, MD and Kristie Louann Brown, RN were employees of and/or independent contractors under the direct and/or indirect control of Defendants Dallas County, TX and DCHD.  At times actions of such persons are taken "under color of law" as to municipal powers subject to oversight under Texas state and/or U.S. federal law, and at times such persons act in a medical or other related role subject to the laws of the State of Texas applying to medical professionals and/or as to ordinary non-medical professionals.  Defendants O'Connell, Neal, and Tavaras maintain supervisory authority

of professionals such as Defendants Mapula and/or Brown and are legally liable for any torts or offenses committed by those supervised Defendants other than those actions taken by Defendants Mapula and/or Brown under "color of law".

14. Defendant University of Texas Southwest Medical Center at Dallas ("UTSWMCD") is a political subdivision of the State of Texas, operated as a for profit and/or not for profit hospital system.  Defendant UTSWMCD has a duty to ensure that (1) staff acting under "color of law" are properly trained in their duties so as not to infringe upon the civil or other rights of persons under their influence and/or control, (2) to not allow policies or procedures which encourage or increase the events of tortious injury or property damage and/or violation of civil rights of patients and other persons as to municipal and/or hospital operations. As to operations of a ministerial or medical nature, Defendants Dallas County, TX and DCHD are vicariously liable for the torts or offenses of their employees and/or other agents, contractors, or medical professionals under their control.

15. At all relevant times, Defendants Dr. Alexander Eastman, M.D., Dr. Gina Sims, M.D. Dr. Jeffrey Pruitt, M.D., Dr. Nhan Le, M.D., Dr. Kyle Molberg, M.D., Dr. Suhny Abbara, M.D. Dr. Anthony Whittemore, M.D.  are believed to have been residents of Dallas County, were employees of and/or independent contractors under the direct and/or indirect control of Defendants Dallas County, TX and DCHD.  At times actions of such persons  are taken "under color of law" as to municipal powers subject to oversight under Texas state and/or U.S. federal law, and at times such persons act in a medical or other related role subject to the laws of the State of Texas applying to medical professionals and/or as to ordinary non-medical professionals.

### FACTS UPON WHICH CLAIMS ARE BASED

16.  On September 14, 2014 Plaintiff Nieman was in Dallas, TX on personal business, staying at a downtown Dallas hotel.  Plaintiff Nieman had dinner and consumed approximately 4 glasses of wine between 6 p.m. and 9 p.m., also eating dinner.  Plaintiff is approximately 5'7" and 175 lbs.

17.  At approximately 9:00 p.m. Plaintiff wanted to see if he could find a karaoke bar in the area.  He searched through his cellular telephone and found a close by location, the "OE Penguin".  Upon arrival he found that no karaoke was offered.  However, he entered into a conversation with a fellow patron who identified himself as "Jason".  Plaintiff does not recall consuming any alcohol at that location.  After a short while, "Jason" asked Plaintiff if he would like to accompany him to another popular night spot, the "Concrete Cowboy" located at 2512 Cedar Spring in Dallas, TX.  Plaintiff left with "Jason" and an unidentified female companion who was with "Jason" and they went to the Concrete Cowboy by way of the female's car, arriving at approximately 9:30 to 10:00 p.m.

18.  Shortly after arrival, Plaintiff offered to buy a round of drinks for the group and gave "Jason" and the unidentified female $20.00 U.S.D. each.  "Jason" returned shortly thereafter with a drink, believed to be vodka and "Red Bull".  "Jason" stated that the drink was "a shot" and Plaintiff and "Jason" each drank their shot.  Upon good faith, knowledge, and/or evidence "Jason" had contaminated Plaintiff's drink with a drug at that time unknown to Plaintiff.  Based upon good faith, knowledge, and/or best evidence the drug appears to have been GHB or Rohyphenol (Flunitrazepam), and said substance was placed in the drink in between the bar and the point of service to Plaintiff, just a few feet away.

19.  Within a few minutes, the unauthorized drug caused Plaintiff to be greatly compromised as to judgment, physical control and memory.  However, upon good faith and/or knowledge (1) staff of Defendant Concrete Cowboy, including Defendants Johnathan Valz, employees John Does 1, 2, and dual employment police officers John Does 3 and 4, failed to detect the drugging incident and allowed Plaintiff to be provided more alcoholic beverages despite his obviously compromised and/or intoxicated condition.

20.  At approximately 12:00 p.m. Plaintiff Nieman was apparently trying to escape the clutches of "Jason" and his female accomplice and made his way to the exterior of the Concrete Cowboy bar/tavern.   Shortly thereafter, Plaintiff Nieman suffered a fall on a staircase on the premises.  Upon good faith and/or knowledge, the fall occurred in whole or in part because of the combination of (1) the unauthorized and unlawful drugging event as to his beverage, (2) the defective and/or dangerous condition of the staircase and/or handrail, (3) inadequate lighting as to the staircase.  Plaintiff suffered a hard fall with a serious facial/cranial impact.  Upon good faith, evidence and/or knowledge, Plaintiff suffered a deep abrasion/laceration to his nose, a serious nasal contusion, non-serious concussion from the fall.

21.  At approximately 12:10 p.m. Plaintiff encountered Defendants Jonathan Vaiz (owner/operator of Defendant Concrete Cowboy) and two Dallas Police Officers (John Does 3, 4) who were serving in a dual employment role as City of Dallas Police Officer and as employees/security for Defendants Concrete Cowboy and Valz.  Defendants Valz and John Does 3 and 4 could see that Plaintiff Nieman was impaired and had a good faith basis to believe that his impairment had occurred by virtue of over service of alcohol from Defendant Concrete Cowboy.  Additionally, Defendants Valz and John Does 3 and 4 could see that Plaintiff Nieman had suffered a serious injury and were advised that such injuries were the result of a fall on the

premises.  Plaintiff Nieman advised Defendants Valz and John Does 3 and 4 of his desire to

return to his hotel downtown, which he identified by name.  Rather than arranging for transport

or calling a taxi, Defendants Valz and John Does 3 and 4 simply allowed Plaintiff Nieman to

walk on, despite his obviously compromised state.  Defendants Valz and John Does 3 and 4 had

basis to know that a special relationship as to the safety of Plaintiff Nieman had been created by

the operations of Defendant Concrete Cowboy and acted in breach of said duties related to such a

special relationship.

22.  At approximately 12:45 a.m. on September 15, 2014, Defendants Dwaine N. Helton

and Michael Milam approached Plaintiff Nieman.  After a brief verbal exchange, Defendants

Helton and Milam captured and kidnapped Plaintiff Nieman against his will, using physical

force.  Plaintiff Nieman repeatedly asked to be released and stated that he would not consent to

transport or treatment.  Despite Plaintiff Nieman's requests and/or pleas, Defendants Helton and

Milam (1) physically restrained Plaintiff Nieman using overwhelming physical force, including

placing one or more knees on Plaintiff Nieman's chest and/or back, (2) restrained Plaintiff

Nieman using physical restraints, (3) forcibly inserted needles into Plaintiff Nieman, introducing

unauthorized substances into his bloodstream, including, but not limited to sedatives, (4)

transported Plaintiff Nieman against his will to Parkland Hospital in Dallas, owned and operated

by Defendants Dallas County Texas and/or Dallas County Hospital District, d/b/a Parkland

Health and Hospital System.  During this time, Defendants Helton and Milam sized control of

Plaintiff Nieman's wallet and identified him as a non-indigent person.  This action by

Defendants Helton and Milam constituted an unlawful search.  Based upon standard operating

procedure and/or standing agreement with Parkland Hospital and related entities, they then

steered Nieman to Parkland Hospital, based upon such financial status.

23. Upon good faith and/or knowledge, Defendant Jessica L. Morrell was acting as a duly authorized law enforcement officer in the employ of Defendant City of Dallas, TX and/or Defendant City of Dallas Police Department on September 15, 2014. Upon good faith and knowledge, Defendant Morrell had a duty to intervene to prevent Defendants Helton and Milam, and Defendants City of Dallas and/or City of Dallas Fire/EMS, Dallas County, Texas and DCHD (Parkland Hospital) and their staff from capturing, kidnapping (seizing), restraining, battering, sedating, and/or transporting against his will Plaintiff Nieman. Upon good faith and/or knowledge, Defendant Morrell would later backdate a supposed APW002 form (Apprehension by a Peace Officer Without Warrant or "APOWW") form attempting to make it appear as if proper procedure had been followed as to the Plaintiff's unlawful and unauthorized capture (seizure), imprisonment, sedation (battery), treatment and/or other related actions had been lawful and just when they in fact had not been lawful or just under Texas state and/or federal law. Moreover, pursuant to Title 7, Texas Mental Code Section 573 Defendant Morrell had a duty to perform any transport of Plaintiff Nieman and/or to accompany him to ensure his safety, yet she failed to do so. Moreover, to the extent that the form completed by Defendant officer Morrell is legitimate, Defendant Morrell failed to follow the requirements of Section 573 such that capture, kidnapping, detention, treatment, battery, and/or transport of Plaintiff Nieman was not justified by such code section, the present circumstances, or any other basis.

24. During the early morning of September 15, 2014 Plaintiff Nieman was held captive at Parkland Hospital in Dallas, Texas, an entity under the control of Defendants Dallas County, Texas, and DCHD. Without his permission and/or against his express requests, hospital staff cut off his clothes, destroying his shirt, pants and underwear, and stole his wallet, money, identification, credit cards, insurance cards, cellular phone and related items from him by way

of strong arm robbery and/or robbery my virtue of restraint and/or medication.. This action by the Defendants constituted acts of unlawful search and seizure.  While such items were in their unlawful possession, the relevant Defendants of DCHD and/or UTSWMCD copied down Plaintiff Nieman's personal identity information and insurance information.  At no time did Plaintiff Nieman give any relevant Defendant consent for treatment or billing, nor did he ever consent to this outrageous intrusion as to his personal privacy.

25.  Over approximately the next six hours, Plaintiff Nieman was subjected to numerous unauthorized physical and medical acts by Defendants including, but not necessarily limited to; Amanda Garcia, RN, Jane Ellen O'Connell, M.D., Katherine M. Mapula, RN, Catherine Lewis Neal, MD, Luis Roman Tavaras, MD, Kristie Louann Brown, RN, University of Texas Southwest Medical Center at Dallas, Dr. Alexander Eastman, M.D.,  Dr. Gina Sims, M.D., Dr. Jeffrey Pruitt, M.D. Dr. Nhan Le, M.D., Dr. Kyle Molberg, M.D., Dr. Suhny Abbara, M.D., and Dr. Anthony Whittemore, M.D.   Plaintiff was forcibly restrained, sedated, medicated, had a catheter inserted into his penis/urethra, and was otherwise subjected to numerous acts of battery, unauthorized medical action, and indignity at the hands of hospital staff and related persons. However, despite their utter disregard for Plaintiff Nieman's rights and/or expressed wishes (that he be released immediately and that no medical treatment be completed upon him) the staff failed to address the only obvious injury that Plaintiff had; a deep nasal laceration.  Instead, the staff allowed the wound to stay filthy and untreated while they performed treatments which they would later try to bill Plaintiff, and/or his insurer, approximately $50,000.00 USD for. Additionally, upon good faith and/or evidence, the unauthorized acts of the medical defendants related to Dallas Fire/EMS, Parkland (DCHD) and/or USWTD committed additional acts of medical negligence including, but not necessarily limited to (1) contaminating his complete

blood count ("CBC") sample during draw and/or thereafter so that that his blood alcohol level (BAC) was falsely reported as excessive, (2) by altering Plaintiff's blood content by the introduction of other, unauthorized substances, medications and/or drugs such that the illegally introduced substances were masked and/or not properly detected or reported in his CBC, and such evidence of a felony battery against Plaintiff Nieman was forever lost.

25.   At approximately 7:00 a.m. on September 15, 2014 Plaintiff Nieman regained consciousness from his ordeal, including the repeated and unauthorized medical sedation completed by the various Defendants.  At that time, Defendant Amanda Garcia, R.N. was serving as his guard.  Plaintiff Nieman informed Garcia that he wanted to leave immediately, that he had authorized no capture, detention, restraint, treatment, or any other action.  Defendant Garcia refused and used other staff, under color of law and/or other threat of force to continue to imprison Plaintiff Nieman against his will.  Defendant Nieman committed and/or participated in the following additional offenses:

(1) She informed Plaintiff Nieman that if he tried to remove the numerous IV needles that had been inserted into him that he would not be allowed to leave

(2) She informed Plaintiff Nieman that if he refused to eat the breakfast that was brought to him (without his request) that he would not be allowed to leave.

(3) She informed him that until he received clearance from the "psych department" that he would not be allowed to leave.  However, the prevailing statutes and standards, and Plaintiff's responses made it clear and obvious to Defendant Garcia and all relevant Defendants that he was not a legitimate mental health patient and should be released immediately.

(4) She informed Plaintiff Nieman that if he tried to leave she would have hospital staff restrain him and/or prevent such departure by force.  Defendant Garcia repeatedly cooed that Plaintiff Nieman was "APOWW" and that they were free to hold him under such status.

26.  From the period from approximately 7:00 a.m. until approximately 1:00 p.m. on September 15, 2014, in direct contradiction to the *Patient's Bill of Rights* (Tex. Adm. Code Title 25, Part 1, Chapter 133 et seq.)  and Plaintiff's rights under Texas and/or U.S. federal statutory and/or constitutional law, Plaintiff's belongings were kept from him, including his cellular telephone.  In contradiction to the *Patient's Bill of Rights,* requirements, Plaintiff Nieman was not provided with a copy of his written rights, nor informed of his right to contact a lawyer.

27.  At approximately 12:00 p.m. a group, allegedly from the "psych department" came to the area where Plaintiff Nieman was being held against his will.  They asked him a few questions and quickly determined that Plaintiff Nieman was not a viable detainee as to mental health considerations.  Almost immediately, they cleared Plaintiff for release.  However, by this time Plaintiff Nieman had already been prevented from leaving so that he could attend a previously scheduled business meeting in Dallas.

28.  At approximately 1:30 p.m. Plaintiff Nieman's wallet and phone were finally returned to him.  His phone's battery was fully discharged by unknown mechanism, and therefore the item was useless at that time.  At approximately 1:45 p.m. Plaintiff was given back his clothing which had been destroyed other than his shoes, socks, and belt.  Plaintiff was given an inexpensive "T-shirt" and shorts as clothing.  In direct violation of the relevant rules, Plaintiff was not offered transport back to his hotel or even to the location where he was seized

from.  Accordingly, Plaintiff to arrange for transportation back to his hotel by private cab, at his own expense.  In addition to being in conflict with state and/or federal law and/or prevailing standards, the Defendants failed to follow their own standing rules, procedures and orders, to the detriment of the Plaintiff.  Additionally, the medical Defendants as to Parkland Hospital (DCHD) and/or USWTD showed poor medical judgment by prescribing a powerful opioid pain killer (Hydrocodone) where Plaintiff had requested no painkillers or medication at all and expressed only minor pain, at best.

29.  Subsequent to these events, Plaintiff placed all relevant Defendants on notice of the incidents and his concerns.   Plaintiff also specifically informed the Dallas Police Department of what he believed was a unlawful battery (by drugging) event against him, provided detailed information as to the suspect and suspect's likely location or reference point where he could be located from.  However, the Dallas Police Department took no action to investigate the events.  Such inaction is a breach of the department's duties as to public safety of persons in the Dallas area, including out of town visitors such as the Plaintiff.

30. Despite providing detailed information to the relevant parties and Defendants, none of these persons have elected to provide any legitimate or good faith response.  Instead, Defendants City of Dallas, City of Dallas Fire/EMS, and Captain John McKinney have elected to try and bill Plaintiff improperly for alleged "services" that he did not consent to and which were unnecessary and/or unreasonable in nature.  Similarly, Defendants City of Dallas, Dallas County, Texas, Dallas County Hospital District (d/b/a Parkland Health and Hospital System), Amanda Garcia, RN, Jane Ellen O'Connell, M.D., Katherine M. Mapula, RN Catherine Lewis Neal, MD, Luis Roman Tavaras, MD, Kristie Louann Brown, RN, University of Texas

Southwest Medical Center at Dallas, Dr. Alexander Eastman, M.D.,   Dr. Gina Sims, M.D., Dr. Jeffrey Pruitt, M.D.

Dr. Nhan Le, M.D., Dr. Kyle Molberg, M.D., Dr. Suhny Abbara, M.D., Dr. Anthony Whittemore, M.D. have unlawfully attempted to bill Plaintiff and/or Plaintiff's health insurer for alleged "services" that he did not consent to and which were unnecessary and/or unreasonable in nature.

## COUNT I : (The Concrete Cowboy Bar, Jonathan Valz, John Does 1-4); Violations of Texas Dram Shop Act and Related Breach of Duty as to Preventing Adulteration of Products

31. Plaintiff restates and re-alleges by reference paragraphs 1 through 30, as if fully set forth herein against Defendants The Concrete Cowboy Bar, Jonathan Valz, John Does 1-4.

32. In the operation of a for profit bar/tavern type business, the Defendants had a duty to provide safe products to their customers.  This includes preventing or detecting adulteration of products by virtue of unauthorized substances such as GHB, or Royphenol.  Defendants had a basis to know that their products were being adulterated with such products at times, placing patrons in severe danger of rape, robbery, and other crimes.  Defendants could easily have put measures into effect for the detection and prevention of such unauthorized adulteration, but elected not to, despite the nominal cost of such measures.

33. Defendants, as purveyors of alcoholic beverages for profit, have a duty not to overserve patrons and not to serve patrons who are obviously impaired and/or intoxicated, pursuant to Tex. Alco. Bev. Code §§ 2.02(b), 106.14(a).  Defendants violated this duty by allowing Plaintiff to be directly and/or indirectly served alcohol that was provided through their servers and business inventories, despite the fact that Plaintiff was obviously in a compromised

and/or intoxicated condition.  Such action is actionable under Texas law and also constitutes a

crime under section 101.63 of the Texas Alcoholic Beverage Code.  Defendants The Concrete

Cowboy Bar, Jonathan Valz, John Does 1, 2 are subject to strict liability for such actions and/or

inaction.

34.  After the Plaintiff was placed into a compromised state on their premises, and as

they had actual and/or constructive notice of this status, the Defendants also assumed a special

duty as to the Plaintiff's safety, which they breached.  The Defendants had actual or

constructive notice that Plaintiff was unable to travel on his own back to his hotel, and that his

condition was created based upon a combination of (1) intoxication or impairment by alcohol

provided by their for profit business (2) that the Plaintiff had suffered an unlawful and

unauthorized drugging on their premises, (3) that the Plaintiff had suffered a serious fall on the

premises, further aggravating his ability to arrange for transportation back to his hotel, and

safety.  Despite having actual and/or constructive notice of Plaintiff's status, and a special duty

to ensure his safety under the circumstances, Defendants breached such duties.

**COUNT II: (The Concrete Cowboy Bar, Jonathan Valz): Premises Liability**

35.  Plaintiff restates and re-alleges by reference paragraphs 1 through 30, as if fully set

forth herein against Defendants The Concrete Cowboy Bar and Jonathan Valz.

36.   Defendants The Concrete Cowboy Bar and Jonathan Valz operate a for profit

business (bar/tavern) at 2512 Cedar Springs Road, in Dallas, Texas.  Under Texas statutory

and/or common law they have a duty to business invitees such as the Plaintiff.

37.  Despite such duties, Defendants The Concrete Cowboy Bar and Jonathan Valz

allowed their premises to exist in an unreasonably dangerous condition.  In particular, a

staircase exists on the premises which is unreasonably dangerous as to condition, slope, status of disrepair, status of handrails (and/or lack thereof) and/or as to lack of sufficient lighting in the evening hours when the business is principally operated.

38.  As a direct result of the unreasonably dangerous condition of the premises and/or stairs, Plaintiff Nieman suffered a serious fall and facial/cranial impact at approximately 11:45 p.m. on September 14, 2014.  As a result of the fall, Plaintiff suffered a serious nasal laceration, facial contusions and/ abrasions, closed head injury (concussion), and related injuries.  As a direct result of the cranial impact, in whole or part, Plaintiff has suffered some loss of memory, dizziness, and/or other post concussive symptoms.  Plaintiff will also suffer permanent nasal and/or facial scarring which will require surgical revision in order to try to eliminate and/or reduce the obvious visual impact of such scarring.  Plaintiff has suffered a certain degree of pain and suffering and humiliation related to the injuries and the disfigurement, and will continue to suffer from same to a certain degree in the future until or unless the scarring can be completely revised by surgical means.  Additionally, since the incident date, Plaintiff has suffered a mysterious but persistent pain in his right rear back quadrant that has not been yet successfully diagnosed as to cause or possible resolution.  Upon good faith and/or belief, these additional and possibly permanent injuries were caused by or are directly related to the Defendants' negligence.

39.  The injuries suffered by way of the Defendants negligence was responsible, in whole or part, for Plaintiff being required to miss an important personal business meeting on September 15, 2014.  Plaintiff suffered certain tangible costs related to the resetting of the meeting, and for the costs and lost wages related to his being required to travel back to Dallas, Texas several weeks later to complete the meeting.

40.  Defendants are legally liable for all tangible and intangible damages sustained by Plaintiff as to their negligence and/or breach of duties.

**COUNT III: (John Does 3 and 4); 42 U.S.C. 1983 – Violations of the 14th Amendment to the U.S. Constitution, Equal Protection**

40. Plaintiff restates and re-alleges by reference paragraphs 1 through 30, as if fully set forth herein against Defendants John Doe 3 and 4.

41.  At all relevant times, Defendants John Doe 3 and 4 served as dually employed persons; employed as duty authorized police officers for the City of Dallas and simultaneously as security officers/employees employed by Defendants The Concrete Cowboy and Johnathan Valz.

42.  On the late evening of September 14, 2014, and/or early morning of September 15, 2014, Defendants John Doe 3 and 4 encountered Plaintiff Nieman directly after he suffered a serious fall on the premises.  Plaintiff Nieman had obvious facial and head injuries. Additionally, Defendants John Doe 3 and 4 became aware, or should have been aware, that Plaintiff was in a compromised state and apparently intoxicated.  Defendants John Doe 3 and 4 knew or should have known that Plaintiff's compromised status was caused, in whole or part, by the operations of Defendants The Concrete Cowboy and Johnathan Valz which they had assumed responsibility for in their official duties.

43.  Upon recognizing that Plaintiff was in a compromised mental, cognitive, and/or physical status, and that such compromised status was caused, in whole or part by the operations of the business that they were responsible for, Defendants John Doe 3 and 4 assumed a special duty as to the safety of Plaintiff Nieman.

44.   Despite the obvious need, and/or reasonable request of Plaintiff for transportation back to his downtown Dallas hotel, Defendants John Doe 3 and 4 took no action and simply allowed him to walk and/or stumble off of the premises they had assumed responsibility for. This is true even though the actions and/or inactions Defendants John Doe 3 and 4 had created, contributed to and/or increased the risk to Plaintiff Nieman.

45.   As a direct and proximate cause of the actions and/or inactions of Defendants John Doe 3 and 4, Plaintiff Nieman would ultimately be assaulted, battered, captured, kidnapped, restrained, forcibly sedated, and/or wrongfully imprisoned by other relevant Defendants. Accordingly, Defendants John Doe 3 and 4 are directly responsible for the tangible and/or compensatory damages suffered by and/or due to Plaintiff Nieman.

**COUNT IV: (Dwaine N. Helton, Michael Milham); 42 U.S.C. 1983 – Violations of the 4th and 14th Amendments to the U.S. Constitution, Equal Protection; Conspiracy [42 U.S.C. 1985]**

46.   Plaintiff restates and re-alleges by reference paragraphs 1 through 30, as if fully set forth herein against Defendants Dwaine N. Helton and Michael Milham.

47.   At approximately 12:44 a.m. on September 15, 2014 Defendants Helton and Milham happened upon Plaintiff Nieman.  After a brief interaction, Defendants Helton and Milham elected to physically capture Plaintiff Nieman against his will, and despite his express requests that they cease such action.  Shortly thereafter, Defendants Helton and Milham physically forced him into their ambulance, and onto a gurney or holding device where he was strapped down against his will.  Defendants Helton and Milham refused to release Plaintiff Nieman despite his requests and/or pleas that they do so.  The actions of Defendants Helton and Milham constituted an unlawful seizure in violation of the 4th and/or 14th Amendments to the

U.S. Constitution.  Defendants had no legitimate basis for this action and do not enjoy qualified immunity for such violations of Plaintiff's constitutional rights.

48.  As part of their actions in capturing, kidnapping, and restraining Plaintiff Nieman, Defendants Helton and Milham physically battered him, including placing one or more knees on the Plaintiff's back and/or torso as part of their actions of forcibly restraining Plaintiff against his will.   Shortly thereafter, Defendants Helton and Milham sedated and/or drugged Plaintiff Nieman against his will, rendering him unconscious.  Defendants Helton and Milham took such actions even though Plaintiff Nieman was able to expressly state that he was not consenting to any of these actions and wanted to be immediately released.  The actions of Defendants Helton and Milham constituted excessive force and/or unconstitutional battery in violation of the 4th and/or 14th Amendments to the U.S. Constitution.  The Defendants also seized Plaintiff's wallet and cellular phone, acts of unlawful search and seizure in violation of Plaintiff's 4th Amendment rights.  Additionally, Defendants' actions also constituted a deprivation of Plaintiff's liberty as guaranteed by the 14th Amendment to the U.S. Constitution, such deprivation occurring without required due process of law.   Defendants had no legitimate basis for these actions and do not enjoy qualified immunity for such violations of Plaintiff's constitutional rights.

49.  Defendants Helton and Milham then transported Plaintiff Nieman to Parkland Hospital / University of Southwest Texas Medical Center in Dallas against his will.  Defendants Helton and Milham then transferred Nieman into the unlawful possession of the staff of Parkland Hospital / University of Southwest Texas Medical Center in Dallas.  The actions of continuing to hold Plaintiff Nieman against his will and then allowing others to continue to hold Plaintiff against his will, and despite his express requests and/or pleas for immediate release constituted false imprisonment and conspiracy to commit same, in violation of the 4th and/or

14th Defendants had no legitimate basis for this action and do not enjoy qualified immunity for such violations of Plaintiff's constitutional rights.  Amendments to the U.S. Constitution.  As to offenses actionable under 42 U.S.C. 1985, Defendants actions were taken in concert with intention to deprive Plaintiff of his federal civil rights and/or reckless indifference of such rights.

50.  As a direct result of the actions of Defendants Helton and Milham, Plaintiff Nieman suffered physical puncture injuries from needles, injuries to his ribs, soft tissue injuries to his arms and torso, soft tissue and/or organ based injuries to his kidneys, and related injury(ies).  The actions of Defendants Helton and Milham also directly and/or indirectly caused and/or contributed to Plaintiff being unable to attend a previously scheduled business meeting on September 15, 2014.  The actions of Defendants Helton and Milham directly and/or indirectly caused Plaintiff Nieman damages as to lost wages, required redundant travel, and other related damages as the requirement to re-set such meeting(s) and to travel back to Dallas several weeks later to complete the meetings originally set for September 15, 2014.  Defendants Helton and Milham are personally and legally responsible for the damages suffered by Plaintiff Nieman.

51.  Because the actions of Defendants Helton and Milham were intentional and/or grossly negligent, outrageous and unacceptable, Defendants Helton and Milham have subjected themselves to the imposition of significant punitive and/or exemplary damages.

**COUNT V: (Dwaine N. Helton, Michael Milham, Captain John McKinney, City of Dallas as to City of Dallas Fire/EMS); Battery, False Imprisonment, Invasion of Privacy, Medical Negligence and/or Gross Negligence, and/or Conversion, in Violation of Texas Law**

52. Plaintiff restates and re-alleges by reference paragraphs 1 through 51, as if fully set forth herein against Defendants Dwaine N. Helton and Michael Milham, Captain John

McKinney, City of Dallas as to City of Dallas Fire/EMS, and Dallas as to City of Dallas Fire/EMS. At times the Defendants operated and acted as part of a for profit medical/ambulance enterprise and at times they acted as a governmental entity.

53. At the time of Defendants Helton and Milham encountering Plaintiff Nieman, he was in no particular medical or other distress which justified their actions. The basic medical tests that they performed upon Plaintiff Nieman against his will quickly revealed that he was in no danger of death or permanent disability so as to justify any request for, and/or action as to, involuntary kidnapping, seizure, capture, physical attack upon, imprisonment, forced sedation, and/or medical treatment of Plaintiff Nieman.

54. At all relevant times, Plaintiff Nieman refused to give consent for any action by Defendants Helton and/or Milham. Instead, Plaintiff Nieman was sufficiently lucid to inform Defendants Helton and Milham that he was refusing treatment and/or transport. At that time, they had a duty to release him and cease any transport or treatment of him, but they refused and failed to do so. Accordingly, their actions in involuntary kidnapping, seizure, capture, physical attack upon, imprisonment, forced sedation, and/or medical treatment of Plaintiff Nieman constitute unlawful offenses as to the laws of the State of Texas, including, but not necessarily limited to, battery, false imprisonment.

55. As part of their unlawful actions and conspiracy, Defendants Helton and Milham unlawfully took possession of Plaintiff's wallet and identification and recorded his personal information without his permission and contrary to his express communicated wishes. These actions constituted unlawful conversion and invasion of privacy.

56. As a direct result of the actions of Defendants Helton and Milham, Plaintiff Nieman suffered physical puncture injuries from needles, injuries to his ribs, soft tissue injuries to his

arms and torso, and related injury.  The actions of Defendants Helton and Milham also directly and/or indirectly caused and/or contributed to Plaintiff being unable to attend a previously scheduled business meeting on September 15, 2014.  The actions of Defendants Helton and Milham directly and/or indirectly caused Plaintiff Nieman damages as to lost wages, required redundant travel, and other related damages as the requirement to re-set such meeting(s) and to travel back to Dallas several weeks later to complete the meetings originally set for September 15, 2014.  Defendants Helton and Milham are legally responsible for the damages suffered by Plaintiff Nieman.

57.  Because the actions of Defendants Helton and Milham were intentional and/or grossly negligent, committed in malice, and/or outrageous and unacceptable, Defendants Helton and Milham have subjected themselves to the imposition of significant punitive and/or exemplary damages.  Additionally, to the extent that Defendants Helton and Milham falsely claimed to have followed proper procedure as to involuntary imprisonment and action under Texas Mental Health Code 573, with knowledge of such falsity, Defendants Helton and Milham are subject to punitive and/or exemplary damages as a result of such fraud.

58.  Defendants City of Dallas, City of Dallas Fire/EMS and Captain John McKinney had a duty to train and supervise Defendants Helton and Milham so as to prevent the types of abuses, torts, and misconduct which were committed by Defendants Helton and Milham against Plaintiff Nieman.  As Defendants City of Dallas, City of Dallas Fire/EMS and Captain John McKinney had a right and duty to control the actions of Defendants Helton and Milham, they are vicariously liable for the torts of Defendants Helton and Milham and the damages suffered by Plaintiff Nieman.  Because Defendants City of Dallas, City of Dallas Fire/EMS and Captain John McKinney showed reckless indifference as to, and/or subsequently ratified the unlawful,

outrageous, fraudulent, malicious, and/or grossly negligent actions of Defendants Helton and

Milham they are vicariously liable for any compensatory, exemplary and/or punitive damages

which may be assessed against Defendants Helton and Milham.

**COUNT VI: (City of Dallas, TX (as to City of Dallas Fire/EMS), City of Dallas Fire/EMS,**
**Violations of the 4th and 14th Amendments to the U.S. Constitution, *Monell*)**

59. Plaintiff restates and re-alleges by reference paragraphs 1 through 58, as if fully set

forth herein against these Defendants.

60.  Defendants City of Dallas, TX (as to City of Dallas Fire/EMS), City of Dallas

Fire/EMS, have and had a duty to properly train employees acting under actual, alleged,

implied, or believed "color of law".  Defendants similarly have and had a duty not to allow

policies or procedures to be in place that cause or encourage violations of the federal civil rights

of persons such as Plaintiff Nieman.

61.  By virtue of act and/or omission, Defendants created, allowed and/or encouraged (1)

excessive and/or unjustified use of Texas Mental Health Code 573 ("APOWW") as a basis to

routinely capture, batter, restrain, sedate, and transport persons contrary to their federal civil

rights, such persons including, but not limited to the Plaintiff, (2) the improper use of physical

and/or chemical restraints and sedation to forcible imprison, detain, and/or to render

unconscious persons who legitimately refuse and/or refused medical treatment.

62.  By virtue of their actions and/or inactions in creating and/or allowing an

environment that has led to tangible constitutional violations against Plaintiff Nieman, and

apparently many others, Defendants City of Dallas and City of Dallas Fire/EMS are legally

liable to Plaintiff for the damages, injuries, humiliation suffered by him and/or related

compensation which he is justly entitled to..

**COUNT VII: (Jessica L. Morrell, Violations of the 4th and 14th Amendments to the U.S. Constitution, Equal Protection, Conspiracy [42 U.S.C. 1985])**

63. Plaintiff restates and re-alleges by reference paragraphs 1 through 30, as if fully set forth herein against Defendant Jessica L. Morrell.

64. Upon good faith, belief, and evidence, Defendant Morrell was on duty (in the course and scope of duties) as a City of Dallas Police Department officer on the evening of September 14, 2014, and early morning of September 15, 2014.

65. Upon good faith, belief, and/or evidence, Defendant Morrell was made aware of the unlawful actions of Defendants Helton and Milham as to their actions in seeking to capture, kidnap, restrain, batter, imprison, sedate and/or transport Plaintiff Nieman.  Upon good faith, belief, and evidence, Defendant Morrell participated in such unconstitutional abuse and unlawful seizure of the Plaintiff, and/or attempted to improperly ratify the actions of DFD EMS, Helton and Milham after the fact.  In the alternative, Defendant Morrell had a duty and clear opportunity to prevent such unconstitutional actions and abuse by Helton and Milham but failed to act as required to protect Plaintiff Nieman and preserve his constitutional rights, despite a clear duty to do so by way of intervention consistent with her police power authorities.  Defendant's actions and/or inactions constituted unlawful seizure and/or imprisonment, unlawful participation in such seizure/imprisonment, as to Plaintiff, in violation of Plaintiff's 4th and/or 14th Amendment rights.  Additionally, Defendant's actions and/or failure to act as required by intervention as to the actions of Defendants Helton and Milham, constituting a deprivation of Plaintiff's liberty as guaranteed by the 14th Amendment to the U.S. Constitution.  Such deprivation was completed by Defendant Morrell by acts and/or omissions occurring without required due process of law.   Defendant Morrell had no legitimate basis for these

actions and does not enjoy qualified or other immunity for such actions or in actions in violation of Plaintiff's constitutional rights.

66.   Additionally, Upon good faith, belief, and evidence, Defendant Morrell knew or should have known that Plaintiff Nieman's compromised condition was created and/or contributed to by the City of Dallas, Texas, and its participation in the operations of Defendant Concrete Cowboy and/or Johnathan Vaiz as to a for profit business (bar/tavern).  As Defendant Morell had a reasonable basis to know or believe that a special relationship had been created as to Plaintiff Nieman as to her and/or the City of Dallas Defendants, she was required to protect Plaintiff Nieman from further harm.  Defendant Morrell breached this duty.

67.   Based upon the information and evidence available to her, Defendant Morrell did not have a reasonable basis to believe that she had any justification to participate in and/or to allow others in her presence or under her authority to attack, batter, capture, kidnap, restrain, sedate, medically treat and/or transport Plaintiff Nieman against his will and/or without his express consent.  Plaintiff Nieman had committed no crime nor was he suspected of any crime. Moreover, Plaintiff Nieman had not threatened anyone and did not represent a reasonable danger to himself or others.

68.   To the extent that Defendant Morrell attempted to ratify or authorize Plaintiff Nieman's unlawful capture, kidnapping, restraint, and/or imprisonment, she was required to (1) personally transport Plaintiff Nieman or to arrange for a surrogate law enforcement officer to do so in her stead, to ensure the safety of Plaintiff Nieman, (2) to the extent transport would be by ambulance, Defendant Morrell had a duty to personally accompany Plaintiff Nieman or to arrange for a surrogate law enforcement officer to do so in her stead, so as to ensure the safety

of Plaintiff Nieman.  Defendant Morrell breached these duties and protections, constituting

violations of the Plaintiff's constitutional rights under U.S. federal law.

69.  As to offenses actionable under 42 U.S.C. 1985, Defendants actions were taken in

concert with intention to deprive Plaintiff of his federal civil rights and/or reckless indifference

of such rights.  To the extent that Defendant Morrell attempted to manufacture and/or backdate

proof in support of her actions and/or those of others, such actions would be grossly negligent,

malicious and/or fraudulent.

70.  As a direct result of Defendant Morell's actions and/or inaction Plaintiff suffered

significant injury and damage.  To the extent that Defendant Morrell attempted to manufacture

and/or backdate proof in support of her actions and/or those of others, such actions would be

grossly negligent, malicious and/or fraudulent.and would subject her to the imposition of

punitive and/or exemplary damages.

**COUNT VIII:** **(Amanda Garcia, RN, Jane Ellen O'Connell, M.D., Katherine M. Mapula,**
**RN, Catherine Lewis Neal, MD, Luis Roman Tavaras, MD, Kristie Louann Brown, RN,**
**Dr. Alexander Eastman, M.D.,   Dr. Gina Sims, M.D., Dr. Jeffrey Pruitt, M.D.  Dr. Nhan**
**Le, M.D., Dr. Kyle Molberg, M.D., Dr. Suhny Abbara, M.D., Dr. Anthony Whittemore,**
**M.D.): 42 U.S.C. 1983 – Violations of the 4th and 14th Amendments to the U.S.**
**Constitution, Equal Protection, False Imprisonment, Excessive Force; 42 U.S.C. 1985**
**(Conspiracy)**

71. Plaintiff restates and re-alleges by reference paragraphs 1 through 65, as applicable,

as if fully set forth herein against these enumerated Defendants.  Defendants individually and/or

collectively acted under actual or alleged "color of law" at one or more relevant times.

However, Defendants do not enjoy qualified immunity as such actions taken under "color of

law".

72.  Each of these Defendants directly and/or indirectly participated in the unlawful imprisonment of Plaintiff Nieman by virtue of (1) failing to release Plaintiff from custody and/or restraint and/or failure to intervene to order Plaintiff Nieman's release from unlawful and/or unconstitutional involuntary custody, (2) failing to intervene by virtue of individual and/or supervisory authority to effect the release of Plaintiff from his unlawful imprisonment and/or physical restraint.

73.  Each of these Defendants directly and/or indirectly participated improper and/or excessive force against Plaintiff Nieman by virtue of (1) placing Plaintiff in unnecessary and unreasonable physical restraint, (2) using chemicals and/or drugs to sedate Plaintiff against his will and despite his express requests for immediate release and cessation of medical activity upon him, (3) the placement of a forced catheter in the Plaintiff's penis/urethra as part of unauthorized treatment and/or sedation, (3) to attempt to charge egregious amounts under the guise of legitimate medical service charges even though all such charges were attributed to action and/or alleged medical treatment which was undertaken and/or completed against the express wishes of such persons, and/or completed without their express medical or other consent.  Additionally, Defendants' actions in holding Plaintiff against his will and forcibly restraining him by physical, mechanical or chemical/medical means also constituted a deprivation of Plaintiff's liberty as guaranteed by the 14th Amendment to the U.S. Constitution, such deprivation occurring without required due process of law.   Defendants had no legitimate basis for these actions and do not enjoy qualified or other immunity for any of these actions or inactions in defiance of Plaintiff's constitutional rights.  By virtue of seizing Plaintiff's wallet, identification, insurance cards, credit cards, cellular phone, and related items, the Defendants

committed acts of unlawful seizure in violation of Plaintiff's 4th Amendment rights, and without any required due process being followed.

74.  As a direct result of the actions and/or knowing inactions of Defendants individually and/or collectively, and/or a conspiracy to commit and/or permit such offenses, Plaintiff Nieman suffered physical puncture injuries from needles, suffered new and/or aggravation of soft tissue injuries to his arms and torso, soft tissue injuries to his penis/urethra and related organ structures, soft tissue and/or organ based injuries to his kidneys, and related injury(ies). The actions of Defendants the actions of Defendants individually and/or collectively also directly and/or indirectly caused and/or contributed to Plaintiff being unable to attend a previously scheduled business meeting on September 15, 2014.  Plaintiff Nieman has suffered objective damages as to lost wages, required redundant travel, and other related damages as the requirement to re-set such meeting(s) and to travel back to Dallas several weeks later to complete the meetings originally set for September 15, 2014.  Defendants the actions of Defendants individually and/or collectively are personally and legally responsible for the damages suffered by Plaintiff Nieman.

75.  Because the actions of the Defendants, individually and/or collectively were intentional and/or grossly negligent, malicious, and/or outrageous and unacceptable, these Defendants have subjected themselves to the imposition of significant punitive and/or exemplary damages.

**COUNT IX: (City of Dallas, TX as to Dallas County, Texas, Dallas County Hospital District [d/b/a Parkland Health and Hospital System] ("DCHD") and Parkland Hospital; Dallas County, Texas as to University of Texas Southwest Medical Center at Dallas ("UTSMCD") and UTSMCD): 42 U.S.C. 1983 – Violations of the 4th and 14th Amendments to the U.S. Constitution, Equal Protection, False Imprisonment, Excessive Force [*MONELL*]**

76. Plaintiff restates and re-alleges by reference paragraphs 1 through 70, as applicable, as if fully set forth herein against these enumerated Defendants.

77. Defendants City of Dallas, TX (as to DCHD and Parkland Hospital and the individual Defendants associated and/or employed by same), DCHD, Dallas County, Texas and UTSMCD each had a duty to properly train employees, agents, executive officers and/or independent contractors acting under actual, alleged, implied, or believed "color of law". Defendants similarly have and had a duty not to allow policies or procedures to be in place that cause or encourage violations of the federal civil rights of persons such as Plaintiff Nieman.

78. By virtue of act and/or omission, Defendants allowed and/or encouraged (1) excessive and/or unjustified use of Texas Mental Health Code 573 ("APOWW") as a basis to routinely capture, batter, restrain, sedate, and/or participate in transportation of persons contrary to their federal civil rights, such persons including, but not limited to the Plaintiff, (2) the improper use of physical and/or chemical restraints and sedation to forcible imprison, detain, and/or to render unconscious persons who legitimately refuse and/or refused medical treatment, (3) to attempt to charge egregious amounts under the guise of legitimate medical service charges even though all such charges were attributed to action and/or alleged medical treatment which was undertaken and/or completed against the express wishes of such persons, and/or completed without their express medical or other consent..

73. By virtue of their actions and/or inactions in creating and/or allowing an environment that has led to tangible constitutional violations against Plaintiff Nieman, and apparently many others, Defendants City of Dallas and City of Dallas Fire/EMS are legally liable to Plaintiff for the damages, injuries, humiliation suffered by him and/or related compensation which he is justly entitled to.

**COUNT X: (City of Dallas, TX as to Dallas County, Texas, Dallas County Hospital District [d/b/a Parkland Health and Hospital System] ("DCHD") and Parkland Hospital; Dallas County, Texas as to University of Texas Southwest Medical Center at Dallas ("UTSMCD") and UTSMCD, Amanda Garcia, RN, Jane Ellen O'Connell, M.D., Katherine M. Mapula, RN, Catherine Lewis Neal, MD, Luis Roman Tavaras, MD, Kristie Louann Brown, RN, Dr. Alexander Eastman, M.D.,  Dr. Gina Sims, M.D., Dr. Jeffrey Pruitt, M.D. Dr. Nhan Le, M.D., Dr. Kyle Molberg, M.D., Dr. Suhny Abbara, M.D., Dr. Anthony Whittemore, M.D.): Battery, False Imprisonment, Invasion of Privacy, Medical Negligence and/or Gross Negligence, and/or Conversion, in Violation of Texas Law**

74. Plaintiff restates and re-alleges by reference paragraphs 1 through 73, as appropriate and applicable, if fully set forth herein against these enumerated Defendants. At times the Defendants operated and acted as part of a for profit medical/hospital enterprise and at times they acted as a governmental entity and associated executive officers, employees, authorized agents or independent contractors of same.

75. At the time of Defendants encountering Plaintiff Nieman, he was in no particular medical or other distress which justified their actions.  The basic medical tests that they performed upon Plaintiff Nieman against his will quickly revealed that he was in no danger of death or permanent disability so as to justify any request for, and/or action as to, involuntary kidnapping, seizure, capture, physical attack upon, imprisonment, forced sedation, and/or

medical treatment of Plaintiff Nieman.  Despite these facts, and despite Plaintiff Nieman's

repeated requests for cessation of medical action and immediate release, the Defendants refused

to comply even though they had no legitimate or lawful basis for their actions.

76.   At all relevant times, Plaintiff Nieman refused to give consent for any action by any

or all of the Defendants.  Instead, Plaintiff Nieman was sufficiently lucid to inform Defendants

that he was refusing treatment of any type and wished to be immediately released.  At that time,

the Defendants, lacking informed consent, had an affirmative duty to cease action, release

Plaintiff, and to transport him back to the point of his abduction and/or to his hotel.  As they

failed to do so, their actions in involuntary imprisonment, physical attack upon, forced sedation,

and/or continued medical treatment of Plaintiff Nieman constitute unlawful offenses as to the

laws of the State of Texas, including, but not necessarily limited to, battery and false

imprisonment.

77.   As part of their unlawful actions and conspiracy, the Defendants unlawfully took

possession of Plaintiff's wallet and identification and recorded his personal information and

insurance information, without his permission and contrary to his express communicated

wishes.  These actions constituted unlawful conversion and invasion of privacy and also

represented specific violations of the *Patient's Bill of Rights* in Texas which controlled their

authority and required duties, in whole or part.

78.   As a direct result of the actions of the Defendants, individually, in concert, and/or as

part of an unlawful conspiracy, Plaintiff Nieman suffered physical puncture injuries from

needles, suffered new and/or aggravation of soft tissue injuries to his arms and torso, soft tissue

injuries to his penis/urethra and related organ structures, soft tissue and/or organ based injuries

to his kidneys, and related injury(ies). The actions of Defendants also directly and/or indirectly

caused and/or contributed to Plaintiff being unable to attend a previously scheduled business meeting on September 15, 2014.  The actions of Defendants Helton and Milham directly and/or indirectly caused Plaintiff Nieman damages as to lost wages, required redundant travel, and other related damages as the requirement to re-set such meeting(s) and to travel back to Dallas several weeks later to complete the meetings originally set for September 15, 2014.  Defendants Helton and Milham are legally responsible for the damages suffered by Plaintiff Nieman.

79.  Because the actions of the Defendants, individually, in concert, and/or as part of an unlawful conspiracy, were intentional and/or grossly negligent, committed in malice, and/or outrageous and unacceptable, the Defendants have subjected themselves to the imposition of significant punitive and/or exemplary damages.  Additionally, to the extent that Defendants have falsely claimed to have followed proper procedure as to involuntary imprisonment and action under Texas Mental Health Code 573, with knowledge of such falsity, Defendants Helton and Milham are subject to punitive and/or exemplary damages as a result of such fraud.

80.  Defendants City of Dallas, DCHD and UTSMCD had a duty to train and supervise Defendants Helton and Milham so as to prevent the types of abuses, torts, and misconduct which were committed by Defendants Helton and Milham against Plaintiff Nieman.  As such, these Defendants are vicariously liable for the torts of Defendants Helton and Milham and the damages suffered by Plaintiff Nieman.  Because the Defendants showed reckless indifference as to, and/or subsequently ratified the unlawful, outrageous, fraudulent, malicious, and/or grossly negligent actions of individual Defendants they are vicariously liable for any compensatory and/or exemplary and/or punitive damages which may be assessed against the other relevant Defendants.

**COUNT XI: (All Defendants except The Concrete Cowboy, Johnathan Valz, and John Doe 1 and 2); Violations of 18 U.S.C. 1961-1969 (The Racketeer Influenced and Corrupt Organizations Act, "RICO").**

81.   Plaintiff restates and re-alleges by reference paragraphs 1 through 80 against the relevant Defendants.

82.   It has been widely reported by way of reliable media sources that the City of Dallas, DCHD ("Parkland Hospital"), and Dallas County, Texas have been the subject of financial and/or operational distress as to the issue of dealing with mentally ill patients, non-mental status patients and persons held against their will under "APOWW" justification.  It has also been widely reported in reliable media sources that these entities, particularly DCHD have been under intense state and/or federal scrutiny based upon their patterns and practices, including alleged or identified defects in such practices.  In particular, Parkview Hospital and related entities have  been placed under intensive review following one or more deaths related to APOWW and/or "Psych ER" involuntary detainees, including George Cornell.  Upon good faith, evidence, and/or knowledge, Parkland and UTSMCD have been under direct supervision of state and/or federal authorities since at least 2011, including intensive and continuing scrutiny by the U.S. Centers for Medicare and Medicaid Services ("CMS").

83.   It has similarly been widely reported that the Defendants, particularly DCHD (Parkland Hospital) began refusing indigent patients who were subject to capture, detention and/or transport under APOWW guise or justification, only accepting those who were deemed insured or capable of paying for authorized or unauthorized medical services and related charges.  The Defendants formed an enterprise whereby the relevant Defendants would work together to identify persons deemed insured and/or financially solvent, and to exclude or

eliminate those persons deemed uninsured and/or indigent.  Those persons who the participants in the enterprise believed could be captured, detained, restrained, imprisoned, and/or subjected to medical treatment and/or sedation under guise such as APOWW are being subjected to same.

84.  In the Plaintiff's case, as appears to be the case with many others, the capture, detention, restraint, sedation and treatment were refused at all relevant times.  The enterprise participants, as to Plaintiff Nieman and those similarly situated, chemically restrain and sedated Nieman (and similarly situated persons) to eliminate their ability to continue to resist and/or object to their unlawful detention, imprisonment, restraint, sedation, and/or medical treatment. The unlawful and/or criminal enterprise included the municipal entities and their subdivisions as well as their respective employees, and independent contractor medical professional defendants.

85.  After the Plaintiff finally gained release, the relevant Defendants (enterprise participants) then subsequently submitted by way of physical mail and/or electronic means, at least nine (10) unauthorized bills/invoices to the Plaintiff (an Illinois resident) and/or Plaintiff's health insurer, who maintains a primary office for operations as to Illinois policyholders in Chicago, Illinois.  These actions were first taken on or about September 15, 2014 through September 24, 2014.   The Defendants individually, and collectively (as part of an enterprise), attempted to bill the Plaintiff's insurer as if the charges were authorized, reasonable and/or necessary when in fact they were none of these.

86.  Defendants acts, individually and as part of an unlawful enterprise, were taken to receive moneys they were not legally entitled to.  By virtue of attempting to bill Plaintiff directly, and/or by way of his insurer (all residents of Illinois) was an act of interstate commerce by the Defendants, of an unlawful and/or fraudulent nature. Such actions are and/or were in direct violation of 18 U.S.C. 1962(b), (c) and/or (d). The actions of sending 10 or more

invoices/bills for alleged but fraudulent services constitute more than 2 (two) predicate acts of attempted and/or successful racketeering and/or billing fraud, as required by 18 U.S.C. 1961(a) Plaintiff is entitled to civil relief for such offenses pursuant to 18 U.S.C. 1964 et seq.

**WHEREFORE,** Plaintiff respectfully requests:

A.   Compensatory damages in an amount to be determined at trial to compensate Plaintiff for the humiliation, anguish, emotional distress, physical distress and pain, suffering, bodily injury, and/or scarring and/or disfigurement caused by the Defendant's conduct, along with other appropriate consequential damages. Defendants to be required to pay prejudgment interest to the Plaintiff on these damages.

B.   Compensatory damages in an amount to be determined at trial as to medical expenses, travel expenses, lost income or wages, and other related tangible damages caused by the Defendants individual and/or collective conduct.

C.   Treble damages as to any pecuniary loss suffered by Plaintiff or his insurer pursuant to 18 U.S.C. 1964.

D.   As the actions of the Defendants by way of one or more employees, executive officers, and/or agents (employment or otherwise) appear to have been willful, intentional and/or malicious in nature, the Plaintiff respectfully requests Punitive damages as allowed under U.S. federal/constitutional and/or Texas constitutional, statutory and/or common law.

E.   A permanent injunction enjoining all Defendants from engaging in the types of illegal and/or improper practices alleged herein.

Case 3:14-cv-03897-M-BT   Document 3   Filed 11/03/14   Page 38 of 40   PageID 42

F. The Court retain jurisdiction of this case until such time as it is assured that the Defendants have remedied the policies and practices complained of herein and is determined to be in full compliance with the law;

G. An award of reasonable attorney's fees, costs, and litigation expenses, subject to 42 U.S.C. § 1988, 18 U.S.C. 1964, and/or other appropriate justifications under statutory or case law related to such matters;

H. Such other relief as the Court may deem just or equitable.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Dated this October 30, 2014

Jason Nieman, *Pro Se*
1700 Windycrest Drive
Springfield, IL 62704
217 836 7126
Nieman46804@yahoo.com

This envelope is made from post-consumer waste. Please recycle - again.

# PRIORITY
★ MAIL ★

**DATE OF DELIVERY SPECIFIED ***

  

**USPS TRACKING™ INCLUDED ***

**INSURANCE INCLUDED ***

**PICKUP AVAILABLE**

* Domestic only

WHEN USED INTERNATIONALLY,
A CUSTOMS DECLARATION
LABEL MAY BE REQUIRED.

N/C

 **UNITED STATES**  
**POSTAL SERVICE ®** | **Click-N-Ship®**

**P**

usps.com | 9405 9036 9930 0280 5508 27 0050 5000 0007 5242
**$5.05**
**US POSTAGE**
Flat Rate Env
INSURED

Commercial Base Pricing

10/30/14 | Mailed from 62701 | 062S0000000310

**FROM:**

## PRIORITY MAIL 2-DAY™

JASON NIEMAN
1700 WINDYCREST DR
SPRINGFIELD IL 62704-5552

RECEIVED-5
Expected Delivery Date: 11/01/2014

**0006**

NOV – 3 2014
CE
MAILROOM

**C001**

SHIP
TO: CIVIL CLERK
U.S. DISTRICT COURT
1100 COMMERCE ST
STE 1452
**DALLAS TX 75242-1310**

### USPS TRACKING #



9405 9036 9930 0280 5508 27

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Jason Nieman

**DEFENDANTS**
The Concrete Cowboy Bar, Jonathan Valz, John Does 1-4, City of Dallas, TX, City of Dallas Fire/EMS Dept., John McKinney, Dwaine N. Helton, Michael Milham, City of Dallas Police Dept., et al.

**(b)** County of Residence of First Listed Plaintiff    Sangamon (Illinois)
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    Dallas (TX)
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Attorneys *(If Known)*

NOV - 3 2014

**3-14CV3897-M**

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1   U.S. Government Plaintiff
- ☐ 3   Federal Question *(U.S. Government Not a Party)*
- ☐ 2   U.S. Government Defendant
- ☒ 4   Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*    *and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☒ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product |    Product Liability | |    28 USC 157 | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument |    Liability | ☐ 367 Health Care/ | | | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & |    Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 450 Commerce |
|    & Enforcement of Judgment |    Slander |    Personal Injury | | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' |    Product Liability | | ☐ 830 Patent | ☐ 470 Racketeer Influenced and |
| ☐ 152 Recovery of Defaulted |    Liability | ☐ 368 Asbestos Personal | | ☐ 840 Trademark |    Corrupt Organizations |
|    Student Loans | ☐ 340 Marine |    Injury Product | | | ☐ 480 Consumer Credit |
|    (Excludes Veterans) | ☐ 345 Marine Product |    Liability | **LABOR** | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment |    Liability | **PERSONAL PROPERTY** | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ |
|    of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud |    Act | ☐ 862 Black Lung (923) |    Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 720 Labor/Management | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 190 Other Contract |    Product Liability | ☐ 380 Other Personal |    Relations | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | ☒ 360 Other Personal |    Property Damage | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 196 Franchise |    Injury | ☐ 385 Property Damage | ☐ 751 Family and Medical | | ☐ 895 Freedom of Information |
| | ☐ 362 Personal Injury - |    Product Liability |    Leave Act | |    Act |
| |    Medical Malpractice | | ☐ 790 Other Labor Litigation | | ☐ 896 Arbitration |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement | **FEDERAL TAX SUITS** | ☐ 899 Administrative Procedure |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** |    Income Security Act | ☐ 870 Taxes (U.S. Plaintiff |    Act/Review or Appeal of |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | |    or Defendant) |    Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate | | ☐ 871 IRS—Third Party | ☐ 950 Constitutionality of |
| ☐ 240 Torts to Land | ☐ 443 Housing/ |    Sentence | |    26 USC 7609 |    State Statutes |
| ☐ 245 Tort Product Liability |    Accommodations | ☐ 530 General | | | |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| |    Employment | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 446 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | |
| |    Other | ☐ 550 Civil Rights |    Actions | | |
| | ☐ 448 Education | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - | | | |
| | |    Conditions of | | | |
| | |    Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1   Original Proceeding
- ☐ 2   Removed from State Court
- ☐ 3   Remanded from Appellate Court
- ☐ 4   Reinstated or Reopened
- ☐ 5   Transferred from Another District *(specify)*
- ☐ 6   Multidistrict Litigation

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. 1983
Brief description of cause:
General liability, battery, medical malpractice, civil rights violations, apparent fraud (only as to certain Defendants)

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☒ Yes ☐ No

## VIII. RELATED PENDING OR CLOSED CASE(S)
IF ANY *(See instructions):*    JUDGE _____ DOCKET NUMBER _____

DATE October 30, 2014    SIGNATURE OF ATTORNEY OF RECORD    Jason Nieman, pro se.

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____