### THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

Jason Nieman,

   Plaintiff

  vs.

E. Street Investments, LLC, d/b/a The Concrete
Cowboy Bar, Jonathan Valz, Rico Taylor, John
Does 1-4, City of Dallas, TX, Dept., John
McKinney, Dwaine N. Helton, Michael Milam,
Jessica L. Morrell, Dallas County, Texas, Dallas
County Hospital District (d/b/a Parkland Health
and Hospital System), Amanda Garcia, RN,
Jason Gregory Smith, M.D., Nicholas S. Clarke,
M.D., Daniel Lee Marion, R.N., Jay Kun Lee,
M.D./D.D.S., John Quinn, M.D.,  Nancy
Schierding, R.N., Christopher Madden,
Frederick Cerise, M.D.,  Jane Ellen O'Connell,
M.D., Katherine M. Mapula, R.N., Catherine
Lewis Neal, M.D., Luis Roman Tavaras, MD,
Kristie Louann Brown, R.N.,  Dr. Alexander
Eastman, M.D.,  Dr. Gina Sims, M.D., Dr.
Jeffrey Pruitt, M.D. Dr. Nhan Le, M.D., Dr.
Kyle Molberg, M.D., Dr. Suhny Abbara, M.D.,
Dr. Anthony Whittemore, M.D. John Gregory
Fitz, M.D., John Warner, M.D., W. Gary Reed,
M.D.

   Defendants

Case No: 3:14 cv 3897

Judge: Hon. Barbara M.G. Lynn

Magistrate Judge: Hon. Paul D. Stickney

**JURY TRIAL REQUESTED**

<u>**PLAINTIFF'S RULE 7(a) REPLY TO THE *ANSWER* AND AFFIRMATIVE DEFENSES [DKT. 49] OF CERTAIN PARKLAND INDIVIDUAL DEFENDANTS (AMANDA GARCIA, R.N.'S, KATHERINE MAPULA, R.N. CATHERINE LEWIS NEAL, M.D.'S, LUIS ROMAN TAVERAS, M.D.'S, KRISTIE LOUANN BROWN, FNP-BC'S, JASON GREGORY SMITH, M.D.'S, NICHOLAS S. CLARKE, M.D.'S, JAY KUN LEE, M.D.'S, DANIEL LEE MARION, R.N.'S, AND NANCY SCHIERDING, R.N) PER ORDER [DKT. 59]**</u>

  Now Comes Plaintiff JASON NIEMAN ("Nieman"), *Pro Se,* pursuant to the Court's

express *Order* [Dkt. 59] providing a timely Rule 7(a) *Reply* to the *Answer* [Dkt. 49] of

Defendants Amanda Garcia, RN,., Katherine M. Mapula, R.N., Catherine Lewis Neal, M.D.,

Luis Roman Tavaras, M.D., Kristie Louann Brown, R.N.,  Jason Gregory Smith, M.D., Nicholas S. Clarke, M.D., Daniel Lee Marion, R.N., Jay Kun Lee, M.D./D.D.S., Nancy Schierding, R.N., ("certain individual Parkland Defendants").  Such *Reply,* as ordered, is primarily tailored to the qualified immunity affirmative defenses of said Defendants.

Plaintiff herein incorporates directly and/or by way of reference all relevant allegations and/or facts in the operative *1st Amended Complaint* [Dkt. 16].  To the extent Plaintiff does not specifically reply to an assertion or denial of the Defendants, it is Plaintiff's intention that the Court construe that Plaintiff disagrees with and/or denies the assertions, alleged facts, and/or alleged affirmative defenses to the extent he has not expressly denied such items in this *Reply.*

The Plaintiff also notes to the Court that Plaintiff has pled his facts, allegations and/or supports under penalty of perjury affirmation which the Defendants have not provided any similar affirmation.  Similarly, no individual Defendant at issue has provided any sort of affidavit or other form of sworn testimony in favor of their *Answer* [Dkt. 49] and/or included affirmative defenses.

## RESPONSE AS TO ISSUE OF DEFENDANT NANCY SCHIERDING

Plaintiff provided counsel for these Defendants a copy of the proposed *1st Amended Complaint* on or about December 28, 2014.  Plaintiff sought input from the various Defendants and/or their counsel and received no input other than the noted threats from Jason Schuette of the City of Dallas (calling the action "frivolous" and threatening to seek "every penny" of legal time and/or costs spent on defending the action).  In light of this threat, on December 31, 2014 Plaintiff sent a draft *Motion for Leave to Amend* to the Defendants/counsel for input.  On December 31, 2014 Plaintiff received an email from Andy Messer (counsel for these certain individual Parkland Defendants stating vaguely: (Copy attached as *Reply* exhibit A).

*"Mr. Nieman – I do not think one or more of the new individual defendants have <u>any</u> involvement with the events of the case, and therefore, they should not be defendants. I will need to review, but will not be able to do that for several days. Thank you."*

Based upon this assertion Plaintiff agreed to extend out his filing until 1/9/2015 to allow counsel time to review and respond as to the assertion that one or more of the individual Parkland Defendants was incorrectly named.  Plaintiff sent updates to all relevant parties, including attorney Messer, on 1/3/2015 and 1/6/2015.  Having received no noted update from attorney Messer or any other person on behalf of the individual Parkland Defendants, Plaintiff filed his *1st Amended Complaint* on 1/9/2015.  Plaintiff does not believe he first learned of the indication that Defendant Nancy Schierding was no longer associated with DCHD/Parkland until late January 2015.  Plaintiff anticipates that the Court will agree that despite Plaintiff's best and good faith efforts, consistent with Fed. R. Civ. P. 11 requirements for diligence as to pleading, that Defendant Schierding was likely incorrectly named and should be dismissed from the action and removed from the caption.  Plaintiff has no objection to such an outcome as to Defendant Schierding and has already noted this to her attorney in prior communications.

## <u>RESPONSES AND SPECIFIC AVERMENTS - REPLY</u>

1. Plaintiff disagrees with Defendants' positions in full, believing that Defendants are legally liable and owe damages for compensatory and/or punitive damages, and that equitable and/or injunctive should be ordered against them as well.  Moreover, Plaintiff disagrees with Defendants' position as to being subject to the laws of Illinois. By virtue of committing one or more torts and/or violations of federal/constitutional law against the Plaintiff, Plaintiff believes that the Defendants have subjected themselves to the laws of the state of Illinois pursuant to the Illinois Long-Arm Statute, Illinois Long Arm Statute, 735 ILCS 5/2-209.

11-13. As to Plaintiff's *1st Amended Complaint* at 10, Plaintiff believes this is an improper denial.  Defendants are in a position to know about the intensive state and/or federal regulatory scrutiny that DCHD/Parkland has been under for at least the last several years as to alleged Medicare fraud, patient abuse and/or mistreatment, and similar alleged lapses or offenses in professional and/or medical judgment of a type that are similar to and/or directly at issue in this case.

16.  While denying the allegations and facts pled in Plaintiff's *1st Amended Complaint* at 14, Defendants offer no facts to refute Plaintiff's allegations and/or facts that he was awake and lucid enough to self-determine medical care (refuse any detention and /or treatment) and that they defied Plaintiff's expressed wishes.

23. As to Plaintiff's *1st Amended Complaint,* Plaintiff disputes Defendants' assertion that Plaintiff has not pled sufficient allegations, facts, and/or legal arguments (in motion practice including [Dkt. 52]) to show that Defendants are not entitled to qualified immunity.

35, 52, 62. As to Plaintiff's *1st Amended Complaint,* Defendants have provided no proof to support the assertion that Defendants were "employed by" Defendant DCHD/Parkland, nor have they provided any facts or documents to support any possible determination that such persons were employees rather than independent contractors for such entity.

40 to 48.  Defendants claim a lack of sufficient knowledge to admit or deny any of the pled allegations and/or facts related to the Plaintiff's interactions with persons including, but not limited to Defendants Jessica Merrell, Dwaine Helton, and Michael Milam (City of Dallas individual Defendants).  However, Defendants later attempt rely upon alleged facts as to such events in support of their affirmative defenses, without legitimate support, at least as to any determination of qualified immunity defenses as a matter of law.

**AFFIRMATIVE DEFENSES – REPLY**

I. Preliminary Objection to Pled Affirmative Defenses:

Plaintiff asserts a preliminary objection as to any assertion, alleged fact, and/or defense by Defendants which attempts to refer to personal and/or private information in the Defendants' possession, including but not limited to information which appears to have been taken directly from the alleged medical records of DCHD/Parkland Hospital or other related Defendants. Defendants have admitted that Plaintiff has not provided a medical authorization up to this date and have not received authorization from this Court to seek, use, and/or publish in open court records any personal and/or private information related to the Plaintiff. (See, e.g., *Motion for Rule 7(a) Reply* [Dkt. 51] at page 19, paragraph 1 et seq.)  Plaintiff believes that such references, specifically including the assertions in Affirmative Defenses [Dkt. 49] at 128 et seq. have been asserted and/or pled in violation of the privacy protections of The Health Insurance Portability and Accountability Act of 1996 (HIPAA), Public Law 104-191 and the Texas Medical Privacy Act, S.B. 11 (2001), Texas Health and Safety Code Chapter 181, §180.001 et seq.  Additionally, Plaintiff believes that Defendants allegations as to certain items, such as his alleged blood alcohol level (BAC) (at 128.4) attempt to assert facts and/or affirmative defenses based upon evidence that, even if true, would have been secured by way of illegal action and/or unconstitutional search.  Plaintiff believes that disallowed information includes any information contained in any actual or alleged medical records held or created by Defendant DCHD/Parkland, UTSW, Dallas Fire/EMS. As such, Plaintiff believes that the Court will agree that such references are improper and that any alleged facts or defenses based upon such assertions must be stricken and/or disregarded.

II.  Specific Reply to pled Affir-mative Defenses:

128. Defendants are not entitled to qualified immunity.  Plaintiff has not pled and Defendants have provided no admissible facts or other reasonable support for the assertion that they were "public employees of Dallas County Hospital District ("Parkland Hospital")." Similarly, Defendants have pled or provided no admissible facts or reasonable support that they were, at all times, acting within the scope of their discretion.  Defendants additionally improperly and inaccurately attempt to assert that their actions were solely "medical" in nature, while ignoring the facts that they participated in unlawful detention, physical abuse, unlawful searches by way of apparent blood tests and/or radiation/radiology, unlawful and unconsented entry of needles and catheter equipment into Plaintiff's body, and unlawful chemical and physical restraint of Plaintiff, none of which could not be reasonably construed or argued as reasonable, necessary, or purely "medical" in nature.  Any questions as to the reasonableness of force used by the Defendants as to their detention, chemical and/or physical/mechanical restraint of Plaintiff are unresolved and disputed fact questions that cannot be resolved in favor of the Defendants at this time.  Similarly, the nature and existence of any conspiracy as to actions, record keeping and/or modification of records, internal investigations, and/or similar issues are unresolved and disputed fact questions that cannot be resolved in favor of the Defendants at this time.

128.1 Defendants have provided no proof to support the assertion that any or all of the Defendants were "employed by Parkland Hospital" as opposed to serving as independent contractors, employees of a separate entity, potentially as dual employees of the University of Texas Southwestern Medical Center ("UTSW"), DCHD/Parkland, and/or some other presently unknown entity, at all relevant times.  Plaintiff subsequently learned that Defendant Nancy

Schierding appears to have been fired from DCHD/Parkland on or about June 11, 2011 "on the eve of a sweeping federal inspection triggered by mental health care failures" at Parkland: http://www.dallasnews.com/investigations/headlines/20110624-dallas-parkland-hospital-fires-its-head-of-psychiatric-services.ece. Accordingly, Plaintiff believes that this Defendant was incorrectly named despite good faith efforts and lack of specific objection by Defendant Schierding and/or her attorney, when the operative *1st Amended Complaint* was filed on January 9, 2015. [Dkt. 16]

128.2. Plaintiff believes this alleged defense is insufficiently supported as to the required level of facts.  Defendants do not state upon what basis they have a reasonable belief as to asserted facts or defenses related to the events occurring prior to Plaintiff first arriving at Parkland Hospital.  Defendants have specifically denied "sufficient knowledge" as to such issues in their *Answer* [Dkt. 49], specifically at 40 to 48.  Defendants also assert that *"A Notice of Emergency Detention By Peace Officer was made by a Dallas police officer at approximately 12:30 a.m."*  However, they do not confirm which police officer allegedly created that form, how or when it was received, nor in what ways it complied and/or did not comply with Texas Mental Health Code §573.  Defendants assert that Plaintiff arrived in an "altered mental status" but do not assert that at any time they believed (reasonably or otherwise) that Plaintiff was believed to be "mentally ill" at any time.

128.3. This item appears to contain disallowed facts, references and/or other information taken from actual or alleged medical records or Defendant knowledge related specifically as to actions alleged by the Defendants to have been taken in a purely medical context.  Accordingly, such references are likely inadmissible and/or improper as to an affirmative defense, including qualified immunity.  Without waiving this assertion or defense, Plaintiff disputes the allegations

of the Defendants.  Defendants have provided no legitimate support to the assertion that

Plaintiff was properly and/or lawfully held against his will subject to an "APOWW" status.

Defendants have provided no specific argument or admissible evidence as to who at the Dallas

Police Department allegedly activated such Mental Health Code §573 ("APOWW") status,

when such has been pled.  Indeed, in their *Answer* [Dkt. 49] they also refer to this item as being

"facially valid" (at 139), suggesting that they may have determined after the fact that the item

and/or process was actually invalid, but providing no detail as to such conflicting pleadings.

Replying further, Plaintiff awoke shortly after arrival and noted that he was being physically

restrained and had pain in his groin/penis which he was informed was a Foley catheter. (See *1st*

*Am. Cmplt.* [16] at 48 et seq.).  Plaintiff denies that he was screaming or incapable of providing

self determination as to his detention and/or refusal of any medical treatment or restraint.

Plaintiff has asserted and reconfirms that he did firmly (verbally) request his release and

cessation of all restraint, detention, and/or physical action upon him (including any current or

planned medical treatment or diagnostic work), but that the Defendants refused to comply with

such requests.  Plaintiff also asserts that he reminded Defendants of his constitutional civil

rights, specifically noting "42 U.S.C. 1983" during such discussions but that Defendants

disregarded Plaintiff's wishes, refusal to consent, and/or assertions as to his rights.  Plaintiff was

not violent and did not threaten violence at any time, so far as he is aware.  Such conduct would

also be highly inconsistent with Plaintiff's history and/or behavioral nature.  Defendants appear

to rely upon the alleged judgment and/or decision of separate UTSW individual Defendant

Ellen O'Connell M.D. as to whether or not Plaintiff was mentally competent to refuse

treatment, detention, and/or restraint.  However, Defendants provide no reliable fact or basis to

refute Plaintiff's assertions that (1) he verbally refused consent to treatment, restraint, and/or

detention and (2) that Defendants knew or should have known that Plaintiff refused consent, (3) that there was no legitimate basis under state and/or federal law to disregard Plaintiff's refusal of consent, (4) that they then proceeded to continue to detain, restrain, and/or take other action upon Plaintiff with legitimate legal authority and/or Plaintiff's consent.  Despite asserting that there was some non-specific emergency that justified their actions, Defendants have provided no factual or statutory basis for such a position.  Defendants do not allege actual or implied consent to treat or take action in any medical capacity upon Plaintiff.  Defendants also admit that Defendant Dr. Jan Kun Lee "ordered cardiac monitoring, insertion of an IV, and blood work."  Defendants also admit that Defendant Dr. Lee ordered physical restraint of Plaintiff. Defendants do not legitimate dispute that this was unlawful search committed by the Defendants, specifically including Defendant Dr. Lee.  Plaintiff further disputes that at any time did he attempt to "grab and strike" any person, whether a member of the Parkland staff or otherwise.  Plaintiff also denies ever attempting to or actually "kicking, punching, hitting, slapping, scratching and/or biting" any person at Parkland and/or otherwise during the relevant events, or trying to do any of these things at any time.  Plaintiff does admit that he did struggle somewhat during his capture, battery, and restraint by the Dallas Fire/EMT Defendants, but such actions were legitimate and reasonable attempts to free unlawful capture, battery, and/or detention.  Defendants have offered no admissible proof or reliable fact or evidence support such serious allegations of violent actions by Plaintiff.  Defendants also admit that Defendant Dr. Lee chemically sedated Plaintiff with Ativan multiple times.  Defendants have offered no admissible evidence or reliable proof that such action was medically necessary rather than, as Plaintiff has alleged and supported, taken solely to "shut Plaintiff up" because he was

consistently (verbally) refusing to consent to any detention, restraint, and/or other action by Defendants upon him.

128.4. This item appears to contain disallowed facts, references and/or other information taken from actual or alleged medical records or Defendant knowledge related specifically as to actions alleged by the Defendants to have been taken in a purely medical context. Accordingly, such references are likely inadmissible and/or improper as to an affirmative defense, including qualified immunity. Without waiving this assertion or defense, Plaintiff disputes the allegations of the Defendants. Specifically, Plaintiff is unaware of any occasion where he was "urinating on himself". Plaintiff believes this may be a known false statement offered by the Defendants in violation of Fed. R. Civ. P. 11. Plaintiff does not believe he ever urinated on himself and he is unaware of any basis for such assertion by the Defendants. When Plaintiff awoke at approximately 12:55 a.m. and again at approximately 7:00 a.m. later that morning he believes he was wearing his same underwear at both times, and they were not wet with urine so far as the Plaintiff is aware. Certainly he was wearing the same underwear as he was wearing from the day/night before (9/14/2015) and they showed no evidence of having been urinated in when he woke up at about 7:00 a.m. on 9/15/2015. At no time did Plaintiff detect the smell of urine on himself which would corroborate or confirm such an allegation. Additionally, when Plaintiff received his torn up/cut up clothing in a bag at approximately 12:30 p.m on 9/15/2014 they did not smell of urine. Plaintiff does recall urinating in a restroom in the room where he was being held against his will, at approximately 8:30 a.m. on 9/15/2014. Additionally, Plaintiff recalls being awake at approximately 12:55 a.m. when he felt a sharp pain in his penis. A female, apparently a doctor, was standing over him to the right and agreed to remove it noting that Plaintiff preferred to "evacuate on his own". Given the chemical sedation that rendered him and

kept him unconscious, and the alleged justification for this bodily invasion the Defendants'

alleged affirmative defense is neither supported nor credible.  Indeed the lack of any proof of

Plaintiff ever "urinating on himself" coupled with conflicting responses from Defendants as to

*Answer* [Dkt. 49] responses 50, 52, 119 suggests that Defendants knew or should have known

that any allegation or defense that Plaintiff had been "urinating on himself" as justification for

catheterization without consent is false and a likely violation of Fed. R. Civ. P. 11(3) and/or (4).

Plaintiff is unaware, but cannot presently rule out that Defendants further violated him by

rendering him unconscious with drugs, re-inserting the catheter, and then removing it at some

point prior to the next morning, when he awoke.

Further, as to 128.4, Defendants have provided no admissible or credible evidence or

fact to show that it was "imperative that Plaintiff have an emergency CT scan of his head, face,

spine and abdomen in order to determine the seriousness of the injury."  Defendants have not

credibly disputed Plaintiff's assertion that his only objectively viewed injury, other than those

created and/or aggravated by Defendants' actions, the actions of the UTSW individual

Defendants, and/or the City of Dallas individual Defendants, was a "2cm laceration" on his

nose.  Defendants do not credibly dispute that they had no legitimate basis to suspect any

serious injury based upon a simple exterior examination of Plaintiff's head and/or skull.

Defendants have not credibly disputed that they did not treat the nasal laceration, nor that by

their actions that they prevented Plaintiff from doing so until approximately 1:00 p.m. on

9/15/2014.  Defendants have also improperly attempted to refer to an alleged blood alcohol test

result showing a blood alcohol level ("BAC") of ".268 g/dl which they say is "*more than three*

*times the legal limit for intoxication*."  The alleged BAC would have been the result of an

unlawful and unconstitutional search (blood and/or urine), and the reference in their *Answer*

[Dkt. 49] also likely constitutes a violation of state and/or federal medical privacy laws (HIPPA, etc.). Defendants also provide no specific facts or admissible support to show that any such test was properly taken or accurate. Conversely, Plaintiff's recollections from the hospital at the times prior to his forced chemical sedation and after he awoke suggest that any allegation of such severe level of intoxication is untrue. It is a matter of verifiable fact that in the reasonable period leading up to the date in question Plaintiff could not consume more than about 5 to 6 drinks in a continuous period of a similar number of hours without becoming violently ill (nausea, vomiting, etc.) with such illness lasting for two to three days afterward. Had Plaintiff actually been that intoxicated it is extremely probable that he would have exhibited such symptoms for days thereafter, but he did not. As such, there is no basis to consider or find such alleged BAC credible.

128.5. This item appears to contain disallowed facts, references and/or other information taken from actual or alleged medical records or Defendant knowledge related specifically as to actions alleged by the Defendants to have been taken in a purely medical context. Accordingly, such references are likely inadmissible and/or improper as to an affirmative defense, including qualified immunity. Without waiving this assertion or defense, Plaintiff disputes the allegations of the Defendants. First of all, Plaintiff believes the assertion that the catheter was removed at 7:21 a.m. is false. Plaintiff recalls that item being removed shortly after arrival after he felt pain and objected. The only way this item could have been removed in the morning is if it had been again inserted without Plaintiff's knowledge or consent after he was rendered unconscious by Defendants' admitted chemical sedation and then removed before he awoke the next morning, at approximately 7:00 a.m. Plaintiff also disputes that a police officer ever spoke to him as to his status. Defendants appear to ignore the involvement of Defendant Amanda Garcia.

Defendants do not dispute, however, that Defendant Garcia specifically refused to allow Plaintiff to leave, under alleged "APOWW" justification and under threat of force from police officer(s) who were stated to be on the same floor.  Defendants also do not specifically dispute that Defendant Amanda Garcia was the one who told Plaintiff specifically that the Dallas Fire/EMS crew had first chemically sedated him with "Ativan" while they were transporting him to Parkland. (See *1st Am. Cmplt.* [Dkt. 16] at 80 et seq. and *Answer* [Dkt. 49] at 83 (vaguely claiming lack of sufficient knowledge as to that item.))  Plaintiff recalls that just after he awoke, a person identifying themselves as "Amanda Garcia" told him "you're APOWW and can't leave" (exact quote and/or close paraphrase) when Plaintiff requested his immediate release. Plaintiff also believes that the Defendants are mischaracterizing the true events.  Had Defendants not chemically sedated Plaintiff multiple times (so as to allow themselves to perform tests and/or other physical action upon Plaintiff against his will and without his constant verbal refusals to consent to such actions) Plaintiff would have been able to be released from the unlawful detention of the DCHD/Parkland Defendants and/or UTSW individual Defendants at least as of approximately 1:30 a.m., after serious injury was ruled out.  But once they sedated Plaintiff to unconsciousness he could no longer leave until approximately 7:00 a.m. the next morning when he awoke.  Defendants do not legitimately dispute that they continued to hold Plaintiff without just cause or any alleged medical justification for approximately five to six more hours.  Plaintiff agrees that he showed no signs of psychological distress or symptoms from at least 7:00 a.m. on 9/15/2015 and should have been immediately released once he awoke from his chemical sedation.

Additionally, Defendants do not dispute that they did not follow §573's requirements strictly as to §573.022 and/or .023, and that they did not offer or arrange to "immediately"

return (transport) the Plaintiff to a location of his choosing consistent with §573.024's requirements.

128.6. Plaintiff disputes that any or all of the Defendants actions were "consistent with the standard of care of treatment, objectively reasonable, and performed in good faith to provide medical care and assessment to the Plaintiff."  Defendants have provided no admissible evidence or legitimate support to show that they had any legitimate right or duty to hold Plaintiff against his will, chemically and physically restrain him, to perform unauthorized blood tests, urinalysis, catheterization, and/or radiology/tests upon him for any period, much less for approximately twelve hours.  Defendants have not disputed that performing any medical treatment upon a person who has verbally refused treatment is considered, at least in part, medical battery in the state of Texas.  Defendants have not alleged or argued that they had any belief that Plaintiff was at risk for death or serious disability if they did not detain, imprison, chemically and/or physically restrain, and/or take other action upon him.  Defendants provide no basis, fact, or argument that they could not have sought a court order from a judge pursuant to §573.011 before proceeding against Plaintiff's consent with continued detention, body searches, searches of property, chemical and/or physical restraint, and/or similar actions.  Defendants have failed to support any legitimate medical need for blood testing, urinalysis, radiology, catheterization, chemical and/or physical restraint, and/or detention, all committed and/or undertaken against Plaintiff's will.

128.7. Defendants have provided no factual support in support of the assertion that Plaintiff was, at no time, "seen or treated" in the "Parkland Psych Emergency Department", nor that this assertion, even if true, supports any type of affirmative defense.  Plaintiff does not dispute that Defendant Nancy Schierding appears to have been named in error, despite his

diligent and good faith efforts.  Plaintiff again notes that Defendant Schierding's attorney did not expressly assert any objection to her being added as a Defendant between the time he was sent the proposed *1ˢᵗ Amended Complaint* (on or about 12/26/2014) and when it was filed (1/9/2015).  Plaintiff also disputes the unsupported assertion that Defendant Dr. Roman Tavares "played no role and did not treat" Plaintiff.  Upon good faith and/or available information Dr. Tavares served as "admitting provider" from approximately 7:00 a.m. with a shift ending after Plaintiff finally was released by Parkland and/or UTSW staff.  Similarly, Defendant Dr. Gregory Smith is admitted to have participated in at least certain radiology activities as to the Plaintiff.  Plaintiff has credibly pled and supported that each of these persons had a duty not to treat or act upon Plaintiff in any way without his consent and also had a duty to intervene to prevent others from doing so.  (See *1ˢᵗ Am. Cmplt.* [Dkt. 16] at 103 et seq.).  Defendants cannot rely upon Plaintiff's lack of full knowledge as to each Defendants' role, duties, and/or actions by virtue of a vague and unsupported denial, as to any attempt to seek summary disposition on the pleadings at this phase.

129.  Plaintiff disputes Defendants' assertions and/or legal conclusions.  Defendants have not disputed that as to the only obvious injury that they were aware of (a nasal laceration) that they failed to treat this injury (clean, dress wound), restrained and/or sedated the Plaintiff to the point of unconsciousness which prevented him from being able to clean and/or care for the wound. Defendants also cite no efforts to allow Plaintiff to clean and care for this wound after his physical restraints were released at approximately 7:00 a.m. on 9/15/2015.  This is a sufficient allegation of deliberate indifference under the circumstances given that Plaintiff has credibly pled, and Defendants cannot credibly dispute, that the delay in treatment of this injury

caused and/or aggravated permanent scarring which remains on Plaintiff's face/nose.  As to constitutional violations:

I. False Imprisonment:

Plaintiff has properly pled and supported that he had a constitutionally recognized right, at least under the Fourth Amendment of the Constitution of the United States, to be free from unlawful seizure and/or imprisonment, that such right(s) were clearly established at the time of the relevant events, and that the Defendants knew and/or had a duty to know that such clearly established rights existed.  *See, e.g., Bivens v. Six Unknown Named Agents,* 403 U.S. 388 (1971).  Plaintiff has credibly pled and supported that each named Defendant at issue participated in the unlawful/unconstitutional detention and/or that they had a duty to intervene to effect Plaintiff's release from unlawful/unconstitutional confinement (to bring about cessation of constitutional violations being committed against Plaintiff).  *See, e.g., Kitchen v. Dallas County, Texas,* No. 13-10545 (5th Cir. July 17, 2014).   Plaintiff can find no assertion by the Defendants that they had neither the duty nor authority to intervene to effect Plaintiff's release from unlawful/unconstitutional confinement at DCHD/Parkland and/or UTSW. Defendants have failed to support with any admissible evidence or detailed fact that Plaintiff was even being held based upon any legitimate justification under Texas Mental Health Code § 573 Plaintiff has credibly pled and supported that he awoke at Parkland at approximately 12:55 a.m. and was sufficiently lucid that he requested immediate release and refused to consent to any examination, treatment, or any other action by Parkland staff.  Plaintiff has shown, and/or raised a sufficient question of fact to argue that the actions of the individual Parkland Defendants were not objectively reasonable as to his continued detention as (1) they can not show that Plaintiff was lawfully held under "APOWW" or any other justification, (2) they do

not argue that Plaintiff was held pursuant to any court order, (3) they can not successfully

dispute that Plaintiff was unable to care for himself physically and/or mentally so as to prevent

his release, (4) they do not assert that Plaintiff was at any time believed to be "mentally ill" as

required for any alleged justification under Texas Mental Health Code §573, (5) Defendants do

not dispute that they each had the authority to effect the release of Plaintiff from DCHD

(Parkland) and/or UTSW at any time they wished.  (6) Defendants cannot dispute that once

Plaintiff awoke at approximately 7:00 a.m., and was exhibiting no signs of mental illness or

physical/mental impairment in any way, they had a duty to effect his release immediately, but

failed to do so for approximately six more hours, without just cause.  Plaintiff has properly pled

and supported that the actions of the Defendants were objectively unreasonable as to direct

action and/or failure to intervene.

Accordingly, any such review of potential qualified immunity defenses will require

discovery and full review of the relevant facts and evidence, along with likely evidentiary

rulings from the Court as to what, if any, evidence related to the unlawful searches the

Defendants will be allowed to assert and/or argue.

II. Unlawful Search By Way of Medical Procedures or Physical Acts:

Plaintiff has properly pled and supported that he had a constitutionally recognized right,

at least under the Fourth Amendment of the Constitution of the United States, to be free from

unlawful search(es), that such right(s) were clearly established at the time of the relevant events,

and that the Defendants knew and/or had a duty to know that such clearly established rights

existed. *See, e.g., Bivens v. Six Unknown Named Agents,* 403 U.S. 388 (1971).  Plaintiff has

credibly pled and supported that each named Defendant at issue participated in the unlawful

and/or unconstitutional and/or unauthorized searches by way of (1) cutting off his clothes and

stripping him to his underwear, (2) sticking needles under his skin, including for the purposes of taking a blood test which searched for and/or showed results for a very broad set of items, (3) doing unauthorized radiological testing upon him, including searches that were far in excess of the alleged suspected injury area (head/skull), (4) extracting urine from the Plaintiff and doing unauthorized urinalysis upon him.  Defendants do not allege actual or implied consent to treat or take action in any medical capacity upon Plaintiff and the clear record shows that any assertion of this type would be false factually, and/or under established law, including laws relating to the definition of battery in the state of Texas, including battery in an allegedly medical context. Defendants similarly do not allege nor that they had any state or federal authority under which to perform any type of search of the Plaintiff body, bodily fluids, or his belongings, under color of law, or otherwise.  Defendants could perhaps have tried to seek a court order (warrant) for such searches, but did not elect to even attempt to do so, as far as Plaintiff is aware.

In the alternative, Plaintiff has credibly pled that each individual Defendant had the opportunity and duty to intervene and bring about the cessation of such violations of Plaintiff's constitutional rights before and/or after they occurred, prior Plaintiff finally being released from DCHD/Parkland and/or UTSW at approximately 1:00 p.m. on 9/15/2014.  Such duty to intervene was also clearly established at the time of the relevant events.  *See, e.g., Kitchen v. Dallas County, Texas,* No. 13-10545 (5th Cir. July 17, 2014).

Plaintiff has also shown that the Defendants' actions and/or inactions were objectively unreasonable.  Defendants cannot dispute that Plaintiff had no visible signs of injury other than a "2cm nasal laceration".  Defendants cannot dispute that Plaintiff had no objective exterior signs of cranial injury or skull fracture, nor was there any other evidence to suggest that Plaintiff was suffering from any injury serious enough that there was any risk for immediate

death and/or severe and permanent injury which would allow the Defendants to proceed to search and/or examine Plaintiff against his direct and verbalized refusal of consent.  Plaintiff also credibly pled and/or supported, and Defendants do not dispute, that each Defendant knew or should have known that Plaintiff had refused to consent to any treatment or action upon him prior to being rendered unconscious by their actions of chemical sedation.

Similarly, the Defendants actions as to their *Answer* [Dkt. 49] support a finding of objectively unreasonable behavior.  Defendants have apparently violated state and federal law as to patient medical record privacy despite attempting at all times portray their actions as required medical treatment.  The attempts to portray Plaintiff as violent and highly intoxicated are inconsistent with Plaintiff's recollections and his nature, and are unsupported by any admissible evidence.  Accordingly, any such review of potential qualified immunity defenses will require discovery and full review of the relevant facts and evidence, along with likely evidentiary rulings from the Court as to what, if any, evidence related to the unlawful searches the Defendants will be allowed to assert and/or argue.

Finally, and similarly, Defendants provide no actual or alleged justification for searching the Plaintiff and seizing and recording information from his wallet and/or cellular phone, specifically including his identity and insurance information.  Defendants do not appear to have even addressed this issue in their *Answer* [49] and/or affirmative defenses as to any qualified immunity defense.  However, such physical searches and seizures of Plaintiff's belongings clearly were violations of clearly established rights, and objectively unreasonable.

III. Excessive Force by Physical Means, Physical and/or Chemical Restraint:

        Plaintiff has properly pled and supported that he had a constitutionally recognized right, at least under the Fourth and/or Fourteenth Amendments to the Constitution of the United States, to be free from unreasonable uses of force by persons acting under alleged "color of law".  Such right(s) were clearly established at the time of the relevant events, and that the Defendants knew and/or had a duty to know that such clearly established rights existed.  *See, e.g., Graham v. Connor,* 490 U.S. 386 (1989).  Plaintiff has credibly pled and supported that each named Defendant at issue participated in the unlawful/unconstitutional detention and/or that they had a duty to intervene to effect a cessation as to such unlawful/unconstitutional uses of force against Plaintiff.  *See, e.g., Kitchen v. Dallas County, Texas,* No. 13-10545 (5th Cir. July 17, 2014).   Plaintiff can find no assertion by the Defendants that they had neither the duty nor authority to intervene to effect Plaintiff's release from unlawful/unconstitutional confinement at DCHD/Parkland and/or UTSW.  Defendants do not allege actual or implied consent to treat or take action in any medical capacity upon Plaintiff, nor that they had any state or federal authority under which to use any type of physical force against Plaintiff, under color of law, or otherwise..

        Specifically, Plaintiff has pled and supported and Defendants have not effectively disputed that Defendants used the following force against him (1) physical restraints on his arms and legs which prevented Plaintiff from moving and/or leaving the facility (2) use of IV needles and other related equipment which restricted his movement (despite Plaintiff's documented and agreed express refusal of consent), (3) use of multiple doses of Ativan (Lorazepam), a class of benzodiazepine, to chemically sedate him to the point of unconsciousness, (4) use of needles to take blood samples against Plaintiff's will and/or wishes, (5) use of a Foley catheter, which was

apparently used, at least in part, to forcibly extract urine from the Plaintiff for urinalysis.   While

asserting that Plaintiff was, at all relevant times, subject to "APOWW" (Texas Mental Health

Code §573) Defendants have provided no argument, legitimate or otherwise that any of them

are or were law enforcement officers empowered with police power, nor that they are permitted

to use chemical, physical or mechanical force on anyone at any time.  Defendants have admitted

that they have one or more police officers on duty in the facility (who would theoretically be

allowed to use force, if appropriate).  (See *Answer* [Dkt. 49] at affirmative defense 128.5).

Defendants have also offered conflicting indications as to this alleged item, again raising

question as to the legitimacy of the process followed (actually and/or allegedly) under §573.001

et seq. and/or knowledge which the Defendants may possess which now shows that the

document was falsely created and/or that the process followed was otherwise non-compliant

with the strict requirements of §573.   Defendants also have not asserted and cannot support that

Plaintiff was under arrest, suspected of any crime, nor that they were authorized by any court

order or other basis to chemically and/or physically restrain, search, and/or to take other

physical action upon a person who had specifically and expressly objected to

confinement/detention and expressly refused to consent to any and/or all treatment or action of

any type against him by the Defendants, upon arrival.

Plaintiff has pled and supported that at no time after his arrival at Parkland was he

violent or a danger to himself or others.  Defendants have apparently refused to expressly admit

or deny that they used "force" on Plaintiff, instead attempting to color their actions as of a

medical nature, and medically necessary at that, but providing only vague support for such

assertions.  Plaintiff believes that Defendants may have falsely pled and/or asserted that he tried

to "grab and strike" one or more persons while being held at DCHD/Parkland and/or UTSW,

and/or that Plaintiff committed any action of "kicking, punching, hitting, slapping, scratching and/or biting" anyone.  Plaintiff disputes the assertion that he had a .268 blood alcohol level as an unverified result of a test that would have come from an unlawful search, even if such test result were to be considered believable in any way.  Indeed the allegations that the Plaintiff was "biting" appear to be false and knowingly so as a false interpretation of references (including items such as exemplar "biting ETT" which refers to an endotracheal tube (intubation) which was not even present at any time).

To the extent that the Defendants have not intentionally falsely pled in whole or part as to Plaintiff's actions, Plaintiff believes that these assertions or events, if accurate in any way, came after the Defendants drugged the Plaintiff with multiple doses of Ativan.  Upon good faith and/or evidence, Defendants actually gave Plaintiff *three* doses (2mg each) of this powerful drug, at approximately 1:02 a.m., 1:07 a.m. and 3:15 a.m. on 9/15/2015.  The drugging was specifically authorized by Defendant Jay Kun Lee (at approximately 12:58 a.m., 1:03 a.m., 1:13 a.m. and 3:15 a.m. on 9/15/2015.) and was apparently physically administered by Defendants Katherine Mapula (RN) (first two) Daniel Lee Marion (RN) (last dose).  Plaintiff does not know why the third dose was apparently delayed by Nurse Marion ("held" as of 1:15 a.m until 3:15 a.m.) in contradiction to Defendant Dr. Lee's apparent express order.  Upon good faith and/or knowledge the first allegation that Plaintiff was attempting to "grab and strike staff" or otherwise acting violently in any way were not first made until *after* the Plaintiff had been severely drugged by the Defendants.

According to a credible website, the possible side effects of Ativan include "*Paradoxical reactions, including anxiety, excitation, agitation, hostility, aggression, rage, sleep disturbances/insomnia, sexual arousal, and hallucinations.* (See *Reply* exhibit B,

attached).  Accordingly, there is also a legitimate and unresolved question of fact as whether or not the unauthorized chemical sedation of the Plaintiff caused any alleged violent reactions, to the extent such allegations are even valid.

According to Plaintiff's recollections and best information, upon arrival at DCHD/Parkland and/or UTSW he awoke, was calm and lucid, refused to consent to any treatment and/or detention, Plaintiff asked to be immediately released. (At approximately 12:55 a.m.).  (See *1st Am. Cmplt.* at 48 et seq.)  Plaintiff spoke to a female standing over him (believed to be Defendant Dr. Ellen O'Connell) and confirmed that he was having pain in his groin and upon learning of a catheter in place, requested removed, which she then complied with. However, after Plaintiff confirmed that he would not consent to any treatment and wished to be released, and then cited his constitutional basis for such requests ("42 U.S.C. 1983) he was almost immediately sedated to the point of unconsciousness by the Defendants, particularly including Defendants Dr. Lee and nurse Mapula.

This Court has recently held that actions of this type upon a person who is, at best, "agitated" is objectively unreasonable.  See *Pena v. DCHD,* 3:12 cv 439 (N.D. Tex. June 26, 2013) (Where Judge Godby stated clearly that "*chemical sedation and physical restraint are not an objectively reasonable response to mere agitation." )*  In *Pena,* the deceased (George Cornell) could perhaps have been argued as a voluntary patient as he had been treated at Parkland before.  Defendants cannot dispute that Plaintiff was not voluntary, never consented to any detention or medical action of any type, and that he frankly would never have voluntarily agreed to be taken to a facility that had such a well-documented and negative reputation. Accordingly, these Defendants knew at the time of their action that such an actions (chemical and/or physical restraint of Plaintiff, who was at best, "merely agitated") was objectively

unreasonable, yet they defied this clear guidance of the Court.  Defendants have left no doubt

through their *Answer* and well documented history at Parkland that regardless of status persons

are more often than not treated as prisoners or criminals, rather than as "patients", while they

conversely refuse to follow the requirements of §573, including such provisions that allow them

to seek a court order to support actions such as those that they took upon Plaintiff.  (See

§573.011 et seq.).  Accordingly, each named Defendant, as to direct action and/or failure to

intervene, has been credibly pled to show objectively unreasonable constitutional violations as

to clearly established rights, and Defendants have failed to sufficiently support any claim that

they are entitled to qualified immunity as a strict affirmative defense to suit, at this early

pleadings phase.  Accordingly, Plaintiffs request for trial by jury (and Defendants' similar

request; *Answer* [Dkt. 49] at page 28, should be granted after appropriate discovery has been

completed).

129, 130.   The Defendants' assertion of lack of deliberate indifference appears to be

reasonable related to their assertions of qualified immunity.  *See, e.g., Tames v. Manthey,* 589

F.3d 764, 769 (5th Cir. 2009).  Plaintiff was not and has not been alleged to have been a "pretrial

detainee".  However, Plaintiff had an objective, obvious, and acknowledged "2cm nasal

laceration" on his face/nose.  Defendants did not treat this wound despite taking other

unauthorized medical and/or related actions against him.  Defendants do not dispute that by

virtue of their actions (physical/chemical sedation, including sedating Plaintiff to the point of

unconsciousness, and by otherwise restraining his movement by threats of force and/or actions

of intimidation) that they prevented Plaintiff from cleaning and/or self-treating the wound.

Defendants assert no fact or evidence to show that Plaintiff has not suffered permanent scarring

due, at least in part, to their actions.  Defendants also would have reasonably known that a dirty

and untreated wound could become seriously infected, representing a risk of serious injury. Accordingly, Defendants' assertion that they did not show deliberate indifference is inconsistent with the pled allegations of the parties before the Court.

131.  The Court did not specifically direct the Plaintiff to file a Rule 7(a) reply as to alleged lack of training items or lapses as to these Defendants.  As such, Plaintiff has not included such information in this ordered *Reply*.

133.  Plaintiff disputes, and has affirmatively shown that the unlawful and/or unconstitutional acts taken against him by these Defendants were not a matter of a singular and/or isolated action, but rather represent just one instance of behavior of this type against persons similarly situated to the Plaintiff, such unlawful, unconstitutional, and/or improper actions having been well documented by way of state and/or federal regulators and/or this Court.

139.  Defendants provide insufficient factual support for the affirmative defense that they relied upon a "facially valid Apprehension by Police Officer Without Warrant or APOWW form provided by an officer of the Dallas Police Department, which precludes a claim for wrongful imprisonment".  Defendants fail to provide the required factual specificity for such an affirmative defense, including details as to the form itself, when it was received, how, from whom, as well as any information they may have subsequently come to possess which showed them that the form and/or process was invalid.

140.  Despite seeking specific allegations as to each relevant Defendant, these certain individual Parkland Defendants have stated that "*The Individual Parkland Defendants (with the exception of Nancy Schierding and Dr. Luis Ramon Taveras) affirmatively assert that they participated in the examination, treatment, or discharge of plaintiff.*"  Plaintiff has pled

sufficient specificity in his *1st Amended Complaint* [Dkt. 16] and/or in this *Reply* to show that each named Defendant (with the exception of Nancy Schierding, who appears to have been named as a result of good faith error) by affirmative action and/or failure to intervene (despite a clear duty to do so) committed and/or allowed numerous constitutional violations against Plaintiff of false imprisonment, unlawful search, unlawful seizure, and/or unconstitutional use of force against Plaintiff, with no viable defense under qualified immunity or other basis.

141.  Defendants provide no factual support for the position that others caused certain injuries in whole or part, nor that this provides any type of legitimate affirmative defense.

142.  Defendants falsely claim that Plaintiff is not a member of any protected class as to equal protection.  Plaintiff is a citizen of the United States and of the State of Illinois. Defendants, under the guise of Texas Mental Health Code §573 have attempted to assert that persons who are actually and/or allegedly subject to such determination are somehow deprived of their federal constitutional rights.  This is clearly an actual or implied assertion which is unsupported by fact or law and which is contradicted by a plain reading of the federal statutes and relevant interpretive precedent.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, and/or based upon the best available information available to me at this time.

Dated this February 13, 2015

/s/ Jason Nieman
Jason Nieman, *Pro Se*
1700 Windycrest Drive
Springfield, IL 62704
217 836 7126
Nieman46804@yahoo.com

## **CERTIFICATE OF SERVICE**

Jason Nieman, *pro se*, certifies that on this date (February 13, 2015) he electronically filed a true and correct copy of the foregoing proposed amended complaint and exhibits with the clerk of the court for the Northern District of Texas, at Dallas, by way of the Court's ECF/CM system.  A Judge's paper copy of all items were mailed to the Court on this date, as required to the attention of the Clerk for Judge Paul D. Stickney at 1100 Commerce Street Room 1611, Dallas, Texas 75242-1003.

The following Defendant(s) have appeared by counsel and should receive copies of this pleading and supports by way of the ECF/CM system:

Tatia R. Wilson, James Butt (Asst. City Attorneys)
Dallas City Attorney's Office
1500 Marilla Street, 7CN, Dallas, Texas 75201
Tel:  214-671-9553
tatia.wilson@dallascityhall.com, james.butt@dallascityhall.com
*Counsel for The City of Dallas Defendants*

Eric A. Hudson, Assistant Attorney General
Financial Litigation, Tax, Charitable Trusts Division
P.O. Box 12548, Austin, Texas 78711-2548
Telephone: (512) 936-6417, FAX: (512) 478-4013
eric.hudson@texasattorneygeneral.gov
*Attorney for University of Texas Southwestern Medical Center*

Wm. Andrew Messer, Esq., Jennifer DeCurtis, Esq., Brett Gardner, Esq.
Messer, Rockefeller, & Fort PLLC
6351 Preston Rd., Suite 350, Frisco, TX 75034
972.668.6400 (P), 972.668.6414 (Fax)
andy@txmunicipallaw.com, jennifer@txmunicipallaw.com, brett@txmunicipallaw.com

*Counsel for Katherine Mapula, Catherine Lewis Neal, Luis Roman Tavaras, Kristie Louann Brown, Amanda Garcia and other related Parkland Individual Defendants.*

Joshua D. Kornely, Esq., Joan Parma, Esq.
Watson, Caraway, Midkiff & Luningham, LLP
1600 Oil & Gas Building, 309 W. 7th Street, Fort Worth, Texas 76102
817.870.1717, Fax 817.338.4842
JKornely@watsoncaraway.com, JParma@watsoncaraway.com
*Counsel for Defendant Dallas County Hospital District*

Philipa M. Remington, Esq.
Thiebaud, Remington, Thornton, Bailey, LLP
1445 Ross Ave., Suite 4800, Dallas, TX 75202
214 954 2210
Premington@trtblaw.com

*Counsel for Defendants Ellen O'Connell, Alexander Eastman, Gina Sims, Jeffrey Pruitt, Nhan Le, Kyle Molberg, Suhny Abbara, and Anthony Whittemore and related UTSW Individual Defendants*

/s/ Jason Nieman
Jason Nieman, Pro Se
1700 Windycrest Drive
Springfield, IL 62704
217 836 7126
Nieman46804@yahoo.com