UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JASON NIEMAN, | § | |
| Plaintiff, | § | |
| | § | CIVIL ACTION NO. |
| v. | § | |
| | § | 3:14-CV-3897-M-BF |
| E. STREET INVESTMENTS, LLC, d/b/a | § | |
| THE CONCRETE COWBOY BAR, et al., | § | |
| Defendants. | § | |

**DEFENDANTS HELTON, MILAM AND MERRELL'S FIRST
AMENDED ANSWER, DEFENSES, COUNTERCLAIM, AND JURY DEMAND**

TO THE HONORABLE COURT:

Defendants, Dwaine N. Helton ("Helton"), Michael Milam ("Milam"), and Jessica L. Merrell ("Merrell") (collectively, "Defendants"), pursuant to Rules 8 and 15 of the Federal Rules of Civil Procedure and Local Civil Rule LR 15.1 of the Local Rules of the United States District Court for the Northern District of Texas, file their first amended answer and defenses in response to Plaintiff's First Amended Complaint at Law ("Complaint") (Doc. No. 16)), and counterclaim.

## I.   ANSWER

1.1     The first unnumbered paragraph of Plaintiff's Complaint contains propositions and conclusions of law to which no answer is required. To the extent an answer is required, Defendants admit that Plaintiff, Jason Nieman ("Nieman"), is proceeding in this litigation *pro se*, and that the individuals and corporate and governmental entities identified in that paragraph are named defendants in this lawsuit. Defendants deny that Nieman has stated a claim against them upon which relief can be granted under the United States Constitution, federal statutory law, or under the laws of the State of Texas, and deny that they are subject to the laws of the State of Illinois. Defendants lack knowledge or information sufficient to form a belief about the truth of the irrelevant allegations pleaded in the second unnumbered paragraph, except that Defendants

admit that they made no objection to Nieman filing an amended complaint pursuant to Rule 15(a)(2) of the Federal Rules of Civil Procedure.

1.2     Paragraph number 1 of the Complaint contains propositions and conclusions of law to which no answer is required.  To the extent an answer is required, Defendants deny all allegations contained in that paragraph that specifically relate to them.  Defendants further deny that Nieman has stated a claim upon which relief can be granted against them under the Fourth and Fourteenth Amendments to the United States Constitution, deny that they deprived Nieman of any constitutional rights, deny that they violated any federal or state law, and deny that Nieman is entitled to any of the relief he seeks against Defendants.

1.3     Paragraph number 2 of the Complaint contains no factual allegations that require an answer.  To the extent an answer is required, Defendants deny that Nieman has stated a claim upon which relief can be granted against them under the Fourth and Fourteenth Amendments to the United States Constitution, deny that they deprived Nieman of any constitutional rights, deny that they violated any federal or state law, and deny that Nieman is entitled to any of the relief he seeks against Defendants, including the relief specifically requested in that paragraph.

1.4     Paragraph number 3 of the Complaint contains propositions and conclusions of law to which no answer is required.  To the extent an answer is required, Defendants deny the allegations contained in that paragraph.

1.5     Paragraph number 4 of the Complaint contains superfluous allegations unrelated to Nieman's specific claims against Defendants, as well as propositions and conclusions of law to which no answer is required.  To the extent an answer is required, Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in that paragraph.

1.6     Paragraph number 5 of the Complaint is comprised of superfluous allegations unrelated to Nieman's specific claims against Defendants, as well as argument, propositions and conclusions of law to which no answer is required.   To the extent an answer is required, Defendants lack knowledge or information sufficient to form a belief about the truth of allegations pleaded in that paragraph.

1.7     Paragraph number 6 of the Complaint is comprised of vague allegations, argument, propositions and conclusions of law that relate to Nieman's claims against Defendants' employer, the City of Dallas ("City").   To the extent an answer is required of Defendants, Defendants lack knowledge or information sufficient to form a belief about the truth of allegations pleaded in that paragraph, except that Defendants deny that Nieman's injuries were caused by any alleged unlawful policy or custom of the City, and deny further that they acted pursuant to any alleged unlawful policy or custom of the City at any time during their encounter with Nieman.

1.8     Paragraph number 7 of the Complaint is comprised of argument, propositions and conclusions of law, and superfluous allegations that do not relate to Nieman's specific claims against Defendants.   Defendants, therefore, are unable to frame a response to the irrelevant, vague, and conclusory allegations pleaded in that lengthy paragraph.   To the extent an answer is required, Defendants lack knowledge or information sufficient to form a belief about the truth of the vague and conclusory allegations pleaded in the first, seventh, eighth, ninth, tenth, and eleventh sentences of that paragraph, except that Defendants deny that they acted pursuant to any alleged unlawful policy or custom of the City, and deny further that they deprived Nieman of any legally protected rights, or subjected him to an unlawful search, unlawful seizure, excessive use of force, unlawful chemical restraint, or unlawful detention under Chapter 573 of the Texas

Mental Health Code.  Defendants deny the vague and conclusory allegations pleaded in the second, third, and sixth sentences of that paragraph.  Defendants deny, as pleaded, the superfluous allegations in the fourth and fifth sentences of that paragraph.

1.9     Defendants lack knowledge or information sufficient to form a belief about the truth of the vague allegations pleaded in paragraph 8 of the Complaint.

1.10    Defendants lack knowledge or information sufficient to form a belief about the truth of the superfluous allegations pleaded in the first two sentences of paragraph 9 of the Complaint, including the text set forth in italics.  Defendants deny the remaining allegations contained in that paragraph, except that Defendants lack knowledge or information sufficient to form a belief about the truth of the allegation that the Concrete Cowboy was authorized to use on and/or off duty City of Dallas police officers as part of its security and/or employee base, and lack knowledge or information sufficient to form a belief about the truth of the allegation pleaded in the fifth sentence of that paragraph.

1.11    Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations pleaded in paragraph 10 of the Complaint.

1.12    Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations pleaded in the first paragraph 11 of the Complaint.

1.13    Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations pleaded in the second paragraph 11 of the Complaint.

1.14    Paragraph 12 of the Complaint contains argument and propositions and conclusions of law to which no answer is required.  To the extent an answer is required, Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations pleaded in that paragraph, except that Defendants deny that they or the City used

improper methods of restraint against Neiman or deprived him of any constitutional rights.

1.15    Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations pleaded in paragraph 13 of the Complaint, except that Defendants deny that they or the City participated in any abuse, chemical and/or physical restraint of Nieman, other than the "soft restraints" used by Helton and Milam after Nieman actively resisted Merrell's lawful detention of him.   Defendants further deny that they intentionally, knowingly, or falsely misrepresented in any report or official document that Nieman was uncooperative, that he was spitting, or that he tried to bite Milam during Defendants' encounter with Nieman.

1.16    Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations pleaded in paragraph 14 of the Complaint, except that, and to the extent the allegations pleaded in that paragraph specifically relate to Defendants, Defendants deny, as pleaded, the allegations contained in the first sentence of that paragraph, deny the allegations that Nieman was not violent or exhibiting any evidence that he was a danger to himself or others at the time of his emergency detention, and deny that Nieman coherently recited to Defendants his "constitutional rights, including '42 U.S.C. § 1983.'"

1.17    Paragraph 15 of the Complaint is comprised of argument and conclusory and superfluous allegations that are irrelevant to Nieman's claims against Defendants.   Defendants, therefore, are unable to frame a response to the irrelevant and vague allegations contained in that paragraph.   To the extent an answer is required, Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations pleaded in that paragraph, except that Defendants deny that Nieman's alleged injuries were caused by any unlawful policy or custom of the City, including insufficient supervision or training, deny further that they acted pursuant to any alleged unlawful policy or custom of the City at any time during their encounter with

Nieman, and deny that Nieman is entitled to any relief.

1.18    Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations pleaded in paragraph 16 of the Complaint.

1.19    Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations pleaded in paragraph 17 of the Complaint.

1.20    Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations pleaded in paragraph 18 of the Complaint.

1.21    Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations pleaded in paragraph 19 of the Complaint.

1.22    Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations pleaded in paragraph 20 of the Complaint.

1.23    Defendants admit the allegations pleaded in paragraph 21 of the Complaint to the extent that Nieman has alleged claims that invoke federal question jurisdiction, but Defendants deny that the Court has supplemental jurisdiction over Nieman's purported claims under state law.  Defendants admit that venue is proper in this judicial district, but Defendants deny that Nieman has stated a claim upon which relief can be granted against them under the Fourth or Fourteenth Amendments and deny that Nieman has stated a viable claim for conspiracy under 42 U.S.C. § 1985.  Defendants deny further that Nieman has stated a viable cause of action against them under Texas state law.

1.24    Paragraph 22 contains propositions and conclusion of law to which no answer is required.  To the extent an answer is required, Defendants either lack knowledge or information sufficient to form a belief about the truth of the allegations pleaded or Defendants are unable to frame a response to the irrelevant, superfluous, vague allegations pleaded in that paragraph.

1.25    Paragraph 23 of the Complaint contains propositions and conclusions of law to which no answer is required.   To the extent an answer is required, Defendants either lack knowledge or information sufficient to form a belief about the truth of the allegations pleaded or Defendants are unable to frame a response to the vague allegations pleaded in that paragraph.

1.26    Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations pleaded in the first, second, third, and fourth sentences of paragraph 24 of the Complaint, except that Defendants admit that Nieman was in Dallas, Texas on September 14 and 15, 2014, and admit that Nieman was not issued a written citation or formally charged with a criminal offense.   Defendants deny, as pleaded, the allegations in the fifth sentence, and plead that they are not aware of any citation or formal charge of criminal conduct to have been made against Nieman in connection with the subject-matter of Nieman's complaint.   Defendants deny the allegations pleaded in the sixth sentence of that paragraph.

1.27    Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations pleaded in paragraph 25 of the Complaint.

1.28    Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations pleaded in paragraph 26 of the Complaint.

1.29    Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations pleaded in paragraph 27 of the Complaint.

1.30    With respect to the allegations pleaded in the first and second sentences of paragraph 28 of the Complaint, Defendants admit that the City of Dallas is a Texas home-rule municipality principally located in Dallas County, Texas, and that the City of Dallas operates the Dallas Police Department and the Dallas Fire-Rescue Department, but deny the remaining allegations as pleaded in those sentences.   Defendants lack knowledge or information sufficient

to form a belief about the truth of the allegations pleaded in the third sentence of that paragraph.

1.31    Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations pleaded in paragraph 29 of the Complaint.

1.32    Defendants deny the allegations pleaded in the first sentence of paragraph 30 of the Complaint, except that Defendants admit that Helton and Milam are residents of Dallas County, Texas, and are employees of the City of Dallas.  With respect to the allegations in the second sentence, Defendants admit that they were at all times acting under color of state law, but deny that they battered, assaulted, unlawfully restrained, or used unlawful force against Nieman. Defendants deny the allegations pleaded in the third and fourth sentences of that paragraph.

1.33    Defendants deny, as pleaded, the incomplete allegations in paragraph 31[1] of the Complaint, except that Defendants admit that Merrell is a Dallas Police officer employed by the City of Dallas, that she acted under color of state law at all times relevant to her encounter with Nieman, and that upon her arrival at Parkland on September 15, 2014, she immediately completed and filed with Parkland a notification of detention form entitled "Notification of Emergency Detention by a Peace Officer" in connection with Nieman's detention.

1.34    Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations pleaded in paragraph 32 of the Complaint.

1.35    Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations pleaded in paragraph 33 of the Complaint.

1.36    Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations pleaded in paragraph 34 of the Complaint.

1.37    Defendants lack knowledge or information sufficient to form a belief about the

---

[1] The final sentence of Complaint paragraph 31 is a sentence fragment.

truth of the allegations pleaded in paragraph 35 of the Complaint.

1.38    Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations pleaded in paragraph 36 of the Complaint.

1.39    Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations pleaded in paragraph 37 of the Complaint.

1.40    Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations pleaded in paragraph 38 of the Complaint, except that Defendants admit that Nieman was in Dallas on September 14, 2014, and that Nieman consumed at least four (4) alcoholic beverages in the hours prior to his contact with Defendants.

1.41    Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations pleaded in paragraph 39 of the Complaint.

1.42    Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations pleaded in paragraph 40 of the Complaint.

1.43    Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations pleaded in paragraph 41 of the Complaint.

1.44    Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations pleaded in paragraph 42 of the Complaint.

1.45    Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations pleaded in paragraph 43 of the Complaint.

1.46    Defendants deny, as pleaded, the allegations in the first sentence of paragraph 44 of the Complaint, and plead that Helton and Milam's direct contact with Nieman commenced at approximately 12:22 a.m. on September 15, 2014, when they saw Nieman lying on the ground partially on the sidewalk and partially in the street.   Defendants deny the allegations in the

second, third, and fourth sentences of that paragraph.  Defendants deny the remaining allegations pleaded in that paragraph, except that Defendants admit that Nieman struggled, growled/yelled, and spit saliva at certain times during his encounter with Defendants.

1.47    Defendants deny the allegations pleaded in paragraph 45 of the Complaint, except that Defendants admit that Helton and Milam acted under color of state law at all relevant times.

1.48    Defendants admit the allegations pleaded in the first sentence of paragraph 46 of the Complaint.  The second sentence of that paragraph contains propositions and conclusions of law to which no answer is required.  To the extent an answer is required, Defendants deny, as pleaded, the allegations in that sentence.  Defendants deny the remaining allegations pleaded in that paragraph.

1.49    Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations pleaded in paragraph 47 of the Complaint, except that, to the extent that Nieman pleads that Defendants committed an unlawful search and seizure, it is denied.

1.50    Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations pleaded in the first paragraph 48 of the Complaint.

1.51    Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations pleaded in the second paragraph 48 of the Complaint.

1.52    Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations pleaded in paragraph 49 of the Complaint.

1.53    Defendants deny the allegations pleaded in paragraph 50 of the Complaint.

1.54    Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations pleaded in paragraph 51 of the Complaint, except that Defendants deny that they unlawfully sedated Nieman.

1.55    Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations pleaded in paragraph 52 of the Complaint.

1.56    Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations pleaded in paragraph 53 of the Complaint.

1.57    Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations pleaded in paragraph 54 of the Complaint.

1.58    Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations pleaded in paragraph 55 of the Complaint, except that Defendants deny that they failed to follow DPD or DF-R rules and procedures, and deny that any such deviations, even if they occurred, resulted in a deprivation of Nieman's clearly established federal rights.

1.59    Defendants lack knowledge or information sufficient to form a belief about the truth of the irrelevant allegations pleaded in paragraph 56 of the Complaint, except that Defendants deny that they received notice of Plaintiff's alleged concerns within 120 hours of the events in issue, and deny that they engaged in any actionable misconduct.

1.60    Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations pleaded in paragraph 57 of the Complaint.

1.61    Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations pleaded in the second, fifth, sixth, and seventh sentences of paragraph 58 of the Complaint.  Defendants deny the remaining allegations pleaded in that paragraph.

1.62    Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations pleaded in paragraph 59 of the Complaint.

1.63    Paragraph 60 of the Complaint incorporates by reference the allegations pleaded in other paragraphs of the Complaint.  Therefore, Defendants incorporate by reference their

answers to those paragraphs as set forth above and below.

1.64    Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations pleaded in paragraph 61 of the Complaint.

1.65    Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations pleaded in paragraph 62 of the Complaint.

1.66    Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations pleaded in paragraph 63 of the Complaint.

1.67    Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations pleaded in paragraph 64 of the Complaint.

1.68    Paragraph 65 of the Complaint incorporates by reference the allegations pleaded in other paragraphs of the Complaint.  Therefore, Defendants incorporate by reference their answers to those paragraphs as set forth above and below.

1.69    Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations pleaded in paragraph 66 of the Complaint.

1.70    Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations pleaded in paragraph 67 of the Complaint.

1.71    Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations pleaded in paragraph 68 of the Complaint.

1.72    Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations pleaded in paragraph 69 of the Complaint.

1.73    Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations pleaded in paragraph 70 of the Complaint.

1.74    Paragraph 71 of the Complaint incorporates by reference the allegations pleaded

in other paragraphs of the Complaint.   Therefore, Defendants incorporate by reference their answers to those paragraphs as set forth above and below.

1.75    Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations pleaded in paragraph 72 of the Complaint.

1.76    Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations pleaded in paragraph 73 of the Complaint.

1.77    Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations pleaded in paragraph 74 of the Complaint.

1.78    Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations pleaded in paragraph 75 of the Complaint.

1.79    Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations pleaded in paragraph 76 of the Complaint.

1.80    Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations pleaded in paragraph 77 of the Complaint.

1.81    Paragraph 78 of the Complaint incorporates by reference the allegations pleaded in other paragraphs of the Complaint.   Therefore, Defendants incorporate by reference their answers to those paragraphs as set forth above and below.   Defendants admit that, at all times relevant to Nieman's claims, Defendants acted under color of state law, and were employees of the City of Dallas.

1.82    Defendants deny, as pleaded, the allegations in the first, second, third, and fourth sentences of paragraph 79 of the Complaint, and deny the remaining allegations pleaded in that paragraph.

1.83    Defendants deny the allegations pleaded in paragraph 80 of the Complaint.

1.84    Defendants deny the allegations pleaded in paragraph 81 of the Complaint, except that Defendants admit that Helton, Milam and Merrell transported Nieman to Parkland Hospital for medical treatment, and thereafter transferred custody of Nieman to the medical staff at Parkland.

1.85    Paragraph 82 of the Complaint contains propositions and conclusions of law to which no answer is required.  To the extent an answer is required, Defendants deny that Helton or Milam falsified ambulance and/or billing reports, deny that they drugged or chemically sedated Nieman, and further deny that they engaged in gross or outrageous conduct with respect to Nieman.

1.86    Defendants deny the allegations pleaded in paragraph 83 of the Complaint.

1.87    Defendants deny the allegations pleaded in paragraph 84 of the Complaint.

1.88    Paragraph 85 of the Complaint incorporates by reference the allegations pleaded in other paragraphs of the Complaint.  Therefore, Defendants incorporate by reference their answers to those paragraphs as set forth above and below.  Defendants deny the vague allegations regarding the operation of ambulance services pleaded in the second sentence.

1.89    Defendants deny the allegations pleaded in paragraph 86 of the Complaint, except that Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations pleaded in the third sentence of that paragraph.

1.90    Defendants deny, as pleaded, the allegations in the first sentence of paragraph 87 of the Complaint, and deny the remaining allegations pleaded in that paragraph.

1.91    Defendants deny the allegations pleaded in paragraph 88 of the Complaint.

1.92    Defendants deny the allegations pleaded in paragraph 89 of the Complaint.

1.93    Paragraph 90 of the Complaint incorporates by reference the allegations pleaded

in other paragraphs of the Complaint. Therefore, Defendants incorporate by reference their answers to those paragraphs as set forth above and below.

1.94    Paragraph 91 contains propositions and conclusions of law to which no answer is required, which are directed to Defendants City of Dallas and John McKinney. To the extent an answer is required, Defendants are unable to frame an answer to the vague allegations that they had a duty to train employees, and deny the vague allegations that they had a duty regarding the formulation of official municipal policies. Defendants lack knowledge or information sufficient to form a belief about what is supported by the so-called "extensive evidence" that Nieman alleges exists of deliberate indifference by the City's final policymakers to unspecified unlawful behaviors within City of Dallas departments.

1.95    Paragraph 92 contains propositions and conclusions of law to which no answer is required. To the extent an answer is required, Defendants deny the allegations pleaded in that paragraph.

1.96    Defendants deny the vague allegations pleaded in paragraph 93 of the Complaint.

1.97    Paragraph 94 of the Complaint incorporates by reference the allegations pleaded in other paragraphs of the Complaint. Therefore, Defendants incorporate by reference their answers to those paragraphs as set forth above and below.

1.98    Defendants admit the allegations pleaded in paragraph 95 of the Complaint.

1.99    Defendants deny the allegations pleaded in paragraph 96 of the Complaint.

1.100   Defendants deny the allegations pleaded in paragraph 97 of the Complaint.

1.101   Defendants deny the allegations pleaded in paragraph 98 of the Complaint.

1.102   Defendants deny the allegations pleaded in paragraph 99 of the Complaint.

1.103   Defendants deny the allegations pleaded in paragraph 100 of the Complaint.

1.104   Defendants deny the allegations pleaded in paragraph 101 of the Complaint.

1.105   Paragraph 102 of the Complaint incorporates by reference the allegations pleaded in other paragraphs of the Complaint.   Therefore, Defendants incorporate by reference their answers to those paragraphs as set forth above and below.

1.106   Defendants lack knowledge of information sufficient to form a belief about the truth of the allegations pleaded in paragraph 103 of the Complaint.

1.107   Defendants lack knowledge of information sufficient to form a belief about the truth of the allegations pleaded in paragraph 104 of the Complaint.

1.108   Defendants lack knowledge of information sufficient to form a belief about the truth of the allegations pleaded in paragraph 105 of the Complaint.

1.109   Defendants lack knowledge of information sufficient to form a belief about the truth of the allegations pleaded in paragraph 106 of the Complaint.

1.110   Paragraph 107 of the Complaint incorporates by reference the allegations pleaded in other paragraphs of the Complaint.   Therefore, Defendants incorporate by reference their answers to those paragraphs as set forth above and below.

1.111   Defendants lack knowledge of information sufficient to form a belief about the truth of the allegations pleaded in paragraph 108 of the Complaint.

1.112   Defendants lack knowledge of information sufficient to form a belief about the truth of the allegations pleaded in paragraph 109 of the Complaint.

1.113   Defendants lack knowledge of information sufficient to form a belief about the truth of the allegations pleaded in paragraph 110 of the Complaint.

1.114   Defendants lack knowledge of information sufficient to form a belief about the truth of the allegations pleaded in paragraph 111 of the Complaint.

1.115   Defendants lack knowledge of information sufficient to form a belief about the truth of the allegations pleaded in paragraph 112 of the Complaint.

1.116   Defendants lack knowledge of information sufficient to form a belief about the truth of the allegations pleaded in paragraph 113 of the Complaint.

1.117   Paragraph 114 of the Complaint incorporates by reference the allegations pleaded in other paragraphs of the Complaint.   Therefore, Defendants incorporate by reference their answers to those paragraphs as set forth above and below.

1.118   Defendants lack knowledge of information sufficient to form a belief about the truth of the allegations pleaded in paragraph 115 of the Complaint.

1.119   Defendants lack knowledge of information sufficient to form a belief about the truth of the allegations pleaded in paragraph 116 of the Complaint.

1.120   Defendants lack knowledge of information sufficient to form a belief about the truth of the allegations pleaded in paragraph 117 of the Complaint.

1.121   Defendants lack knowledge of information sufficient to form a belief about the truth of the allegations pleaded in paragraph 118 of the Complaint.

1.122   Defendants lack knowledge of information sufficient to form a belief about the truth of the allegations pleaded in paragraph 119 of the Complaint.

1.123   Defendants deny the allegations pleaded in paragraph 120, including all subparts, of the Complaint.

1.124   Defendants deny the allegations pleaded in paragraph 121 of the Complaint.

1.125   With respect to the petitions pleaded in the prayer for relief in paragraph 122 of the Complaint, Defendants deny that Plaintiff is entitled to any of the relief therein requested.

## II.    DEFENSES

2.1    Defendants plead that Nieman has failed to state a claim upon which relief can be granted against them under the Fourth and Fourteenth Amendments to the Constitution and under 42 U.S.C. § 1985.

2.2    Defendants plead that no deprivation of Nieman's rights under the Fourth Amendment occurred with regard to the matters about which he complains.

2.3    Defendants plead that reasonable suspicion existed that Nieman had committed a criminal offense, justifying his detention.

2.4    Defendants plead that probable cause, or at least arguable probable cause, existed to arrest Nieman, justifying his arrest.

2.5    Defendants plead that the detention and arrest of Nieman was conducted lawfully, was objectively reasonable, and did not violate clearly established law of which a reasonable person would have known.

2.6    Defendants plead that, on the occasion in question, Nieman's injuries did not result directly and only from the use of force that was clearly excessive to the need to use force and that was objectively unreasonable.

2.7    Defendants plead that their conduct did not deprive Nieman of his liberty without due process or subject him to an unequal treatment of the law.

2.8    Defendants plead that they did not conspire to violate Nieman's constitutional rights, including his right to equal protection of the law.

2.9     Defendants Helton, Milam, and Merrell affirmatively plead their entitlement to qualified immunity.  Specifically, Helton, Milam, and Merrell plead that they are public or government officials employed at the time of the incident in question by the City of Dallas; are

entitled to qualified immunity from suit and from damages in the present cause; and that on the

occasion in question, they each acted without malice, without an intent to deprive Nieman of any

legally protected rights, with a reasonable good faith belief that their actions were lawful, proper,

and within and pursuant to the scope of their discretionary authority, and that they did not violate

clearly established law of which a reasonable person would have known.   In support of their

assertions of qualified immunity, Helton, Milam, and Merrell plead as follows:

2.9.1   On September 15, 2014, and at all relevant times, Helton was a public official, a Texas Commission on Fire Protection certified fire fighter, as well as a Texas Department of State Health Services Emergency Medical Technician-Paramedic employed by the City of Dallas as a firefighter/paramedic.

2.9.2   On September 15, 2014, and at all relevant times, Milam was a public official, a Texas Commission on Fire Protection certified fire fighter, as well as a Texas Department of State Health Services Emergency Medical Technician-Paramedic employed by the City of Dallas as a firefighter/paramedic.

2.9.3   On September 15, 2014, and at all relevant times, Merrell was a public official, a Texas Commission on Law Enforcement (TCOLE) certified peace officer employed by the City of Dallas as a police officer.

2.9.4   At all times relevant to their encounter with Nieman on September 15, 2014, Helton and Milam were working in the Dallas Fire-Rescue ("DF-R") Department, and each was acting within the course and scope of his duties as a DF-R firefighter/paramedic, as described below, and was discharging his discretionary authority as a firefighter/paramedic.  The duties of a DF-R firefighter/paramedic include responding to medical emergency calls; providing pre-hospital emergency medical care to victims of accidents, injuries, or illness; interviewing patients at the scene and evaluating their status and condition;  diagnosing injuries and treating patients; assessing and monitoring patient vital signs; performing medical procedures including, but not limited to, intravenous cannulation; transporting patients by ambulance to emergency hospital departments; and preparing written patient care reports.

2.9.5   At all times relevant to her encounter with Nieman on September 15, 2014, Merrell was working in the Dallas Police Department ("DPD"), was acting within the course and scope of her duties as a Dallas police/patrol officer, as described below, and was discharging her discretionary authority as a peace officer.   The duties of a Dallas police/patrol officer include routine patrol of a specific area within the City of Dallas; answering calls for service and responding to complaints involving accidents, and misdemeanor and felony offenses; assisting injured persons; conducting preliminary investigations at the scene to determine whether a crime has been committed, including

gathering evidence; making detentions and arrests; preparing police reports and other reports, as necessary; and relaying complaint and emergency request information to appropriate agency dispatchers.

2.9.6   On September 14, 2014, at approximately 11:50 p.m., Helton and Milam, as well as Merrell and her partner, DPD officer Jennie Carver-Keeper ("Carver-Keeper"), received and responded to a 9-1-1 dispatch concerning an injured person in Uptown Dallas, Texas near Cedar Springs Road and Routh Street.  The dispatch advised that the person, a white male, had fallen down a flight of stairs and struck his head.  The dispatch also advised that the man, later identified as Jason Nieman ("Nieman"), was wearing a white striped shirt and navy pants, and that he was last seen on Routh bleeding from his head and stumbling as he walked.

2.9.7   While driving by ambulance to the location, Helton and Milam met Merrell and Carver-Keeper, who were in a DPD squad car looking for the person described in paragraph 2.9.6, above.  The paramedics and officers shared information and quickly realized that they were responding to the same call.  The paramedics and officers searched the area for Nieman for approximately ten minutes, but they were unable to find him.

2.9.8   Shortly thereafter, Helton and Milam cleared their call and returned to their assigned fire station.  Merrell and Carver-Keeper continued to search for Nieman.  The officers spoke to several people in the vicinity who told them that they saw Nieman walking toward McKinney Avenue.

2.9.9   After circling the area for almost twenty minutes, Merrell and Carver-Keeper eventually found Nieman lying partially on the sidewalk in the 2900 block of Routh. Nieman had blood on his head and face and his body was situated between the curb and a parked sports utility vehicle ("SUV").   It was apparent to Merrell that the parked SUV was preventing Nieman from rolling into the street, which was busy with traffic travelling to and from several open bars in the area.

2.9.10 The officers parked their squad car and got out to investigate.   Merrell approached Nieman and asked him for his name and what had happened.  Nieman was disoriented, incoherent, and was unable to sit up or stand.  Merrell also detected a strong smell of alcohol on Nieman's breath.

2.9.11 Based on the report from dispatch that Nieman had fallen and struck his head, his confused state of mind and inability to answer questions, and Merrell's own personal observations of him, Merrell reasonably believed that Nieman could be suffering from mental illness, a serious head injury, extreme intoxication, or a combination of these conditions.  The officers radioed DPD dispatch and requested emergency medical assistance for Nieman.

2.9.12 On September 15, 2014, at approximately 12:18 a.m., Helton and Milam were dispatched by ambulance to treat an injured person, the same one who they were

unable to locate approximately twenty minutes earlier.  The paramedics arrived at the location at approximately 12:22 a.m. and were again met by Merrell and Carver-Keeper.  Nieman was lying on the ground almost under a parked SUV.  The paramedics observed Nieman with a disheveled appearance and blood on his head and face.

2.9.13 Helton and Milam approached Nieman and immediately began assessing his medical condition.  The paramedics generated a patient care report and asked Nieman to tell them his name.  Nieman only told them his first name, "Jason."  The paramedics asked Nieman to tell them what had happened to him.  Nieman was unable to tell the paramedics what had happened or what he had been doing fifteen minutes earlier.  Nieman was unable to state whether pennies were smaller than quarters, and he thought that the current Vice President was both Barak Obama and Dick Cheney.

2.9.14  The paramedics observed that Nieman had a laceration and abrasion on his face and a strong smell of alcohol on his breath.  Nieman's vital signs were within normal range.  The paramedics determined that Nieman had an altered mental status and possibly a head injury.  Because of the potential for a severe head injury, such as a subdural hematoma, the paramedics determined that Nieman should be taken to a hospital for further medical treatment and psychological evaluation.

2.9.15  Chapter 573 of the Texas Mental Health Code, codified as subtitle C of title 7, Texas Health and Safety Code, authorizes a peace officer to take a person into custody without a warrant if the officer (1) has reason to believe and does believe that: (A) the person is mentally ill; and (B) because of that mental illness there is a substantial risk of serious harm to the person or to others unless the person is immediately restrained; and (2) believes that there is not sufficient time to obtain a warrant before taking the person into custody.  Tex. Health & Safety Code Ann. § 573.001(a).

2.9.16  Based on (1) Merrell's police training and experience as a peace officer; (2) her personal observations of Nieman, including his disheveled appearance and physical injuries; (3) the information known to Merrell at the time, including, information received from DPD dispatch that Nieman had fallen down a flight of stairs and struck his head; (4) the paramedics' medical assessment of Nieman and determination that he needed further medical treatment and a psychological evaluation; (5) that Nieman manifested an altered mental status, in that he was disoriented, incoherent, and was unable to tell the paramedics and officers his full name, what had happened to him, or answer questions concerning current events; (6) that Nieman was unable to sit up or stand to his feet; (7) that Nieman was obviously intoxicated; (8) that Nieman was found outside in a public place lying on the ground between a curb and a parked SUV; and (9) that Nieman was found on a street busy with traffic and people going in and out of bars, Merrell reasonably believed that probable cause existed for an emergency detention of Nieman under Chapter 573 of the Texas Mental Health Code for an Apprehension by Police Officer Without Warrant (APOWW).  Specifically, based on the facts and information known to her at the time, Merrell believed that Nieman was mentally ill and/or suffering from a serious head injury; that because of Nieman's

condition, there was a substantial risk of serious harm to him or others if he were not immediately restrained; and, that under the circumstances there was not sufficient time to obtain a warrant before taking Nieman into protective custody.

2.9.17 Merrell contacted her supervisor, Sergeant Dennis Craig, and obtained authorization to take Nieman into custody under an APOWW. At no time during Merrell's encounter with Nieman did she believe that probable cause did not exist to seize Nieman or perceive that he was being subjected to an unlawful seizure. At no time did Merrell act with an intent to deprive Nieman of his legally protected rights, including his constitutional rights under the Fourth Amendment.

2.9.18 Merrell informed the paramedics that she was taking Nieman into custody under an APOWW. Milam retrieved a wallet from Nieman's pants pocket solely to obtain Nieman's identification and to determine whether Nieman had a medical card that identified any medical restrictions or allergies. The paramedics retrieved a gurney from the ambulance and Nieman was informed that he was being transported to a nearby hospital for evaluation and treatment. Nieman became agitated and resisted being placed on the gurney by kicking, pulling away, and spitting while uttering profanities and a sequence of words and numbers that the paramedics and officers did not understand. The paramedics placed Nieman's extremities in soft restraints for his safety and their own. At no time did Helton or Milam place their knees on Nieman's chest, back, or right thorax area in an effort to restrain him, or otherwise. At no time during Merrell's encounter with Nieman did she see Helton or Milam subject Nieman to an unnecessary use of force or perceive that Nieman was being subjected to an unnecessary use of force.

2.9.19 Based on his training and experience, Milam decided to place an intravenous (IV) cannula into Nieman's vein as a precaution in case Nieman required fluids, such as saline, or medication during transport to the hospital. Because Nieman was spitting and had already tried to bite Milam several times during Milam's attempt to perform patient care, Milam determined that an external jugular IV would be the safest to insert. At no time during their encounter with Nieman did Helton or Milam introduce any unauthorized chemical restraints, including Ativan or similar substances, into Nieman's bloodstream. At no time during their encounter with Nieman did Helton or Milam give Nieman any medication or sedatives whatsoever, whether intravenously or otherwise.

2.9.20 At approximately 12:44 a.m., Helton and Milam transported Nieman to Parkland Memorial Hospital and Merrell accompanied them in the ambulance. Merrell rode in the back of the ambulance with Nieman while her partner, Carver-Keeper, followed them in the officers' squad car.

2.9.21 The paramedics and Merrell arrived at Parkland at approximately 1:00 a.m., at which time Helton and Milam, with the assistance of emergency medical staff, immediately transferred Nieman from the paramedics' gurney to one provided by the hospital. Helton and Milam had no further contact or dealings with Nieman after this

transfer of him to the care of the emergency medical staff at Parkland.

2.9.22 Meanwhile, Merrell completed a "Notification of Emergency Detention by Peace Officer" form provided by Parkland. Merrell did not obtain the form until after she arrived at Parkland, at which time she immediately completed and filed the notification of detention with Parkland as required by Chapter 573 of the Texas Mental Health Code. In addition to stating her reasons and beliefs in support of the emergency detention, Merrell included the date and approximate time of Nieman's detention, which was September 15, 2014, at approximately 12:30 a.m. Merrell had no further contact or dealings with Nieman after she completed and filed the notification of detention with Parkland.

2.9.23 Neither Helton, Milam, nor Merrell has any personal knowledge of the interactions between Nieman and Parkland medical staff. Helton, Milam, and Merrell were not present for the patient care or psychological evaluation provided to Nieman by the nurses and doctors at Parkland on September 15, 2014.

2.9.24 At all relevant times, Helton believed that his actions were lawful and justified by the facts known to him and the applicable law relating to the Fourth Amendment. Helton did not enter into any agreement or conspire with anyone to deprive Nieman of his constitutional rights.

2.9.25 At all relevant times, Milam believed that his actions were lawful and justified by the facts known to him and the applicable law relating to the Fourth Amendment. Milam did not enter into any agreement or conspire with anyone to deprive Nieman of his constitutional rights.

2.9.26 At all relevant times, Merrell believed that her actions were lawful and justified by the facts known to her and the applicable law relating to the Fourth Amendment. Merrell did not enter into any agreement or conspire with anyone to deprive Nieman of his constitutional rights.

2.10    A reasonable police officer, possessing the information known to Merrell at the time, could have believed that it was lawful to detain and place Nieman in protective custody for the purpose performed by Merrell on September 15, 2014. Therefore, Merrell's conduct as described above was objectively reasonable.

2.11    A reasonable firefighter/paramedic, possessing the information known to Helton and Milam at the time, could have believed that it was lawful to place Nieman in soft restrains in the manner and for the purpose performed by them on September 15, 2014. Therefore, Helton

and Milam's conduct as described above was objectively reasonable.

2.12    Helton's actions, as described in paragraphs 2.9.6 through 2.9.21, inclusive, were objectively reasonable, in that a reasonable firefighter/paramedic could have determined that Helton's actions, under the facts and circumstances as then known by Helton, were prudent, objectively reasonable, and did not violate clearly established law.

2.13    Milam's actions, as described in paragraphs 2.9.6 through 2.9.21, inclusive, were objectively reasonable, in that a reasonable firefighter/paramedic could have determined that Milam's actions, under the facts and circumstances as then known by Milam, were prudent, objectively reasonable, and did not violate clearly established law.

2.14    Merrell's actions, as described in paragraphs 2.9.6 through 2.9.22, inclusive, were objectively reasonable, in that a reasonable police officer could have determined that Merrell's actions, under the facts and circumstances as then known by Merrell, were prudent, objectively reasonable, and did not violate clearly established law.

### III.    COUNTERCLAIM

3.1    Pursuant to 42 U.S.C. § 1988, Defendants assert a counterclaim for their reasonable costs, including attorney's fees, incurred in defending the federal question claims pleaded in the Complaint against them.  Defendants incorporate by reference the admissions, denials, and pleadings contained in this answer.

3.2    Plaintiff, Jason Nieman, asserts in his live pleading federal claims against Defendants under 42 U.S.C. § 1985 for an alleged conspiracy to violate his civil rights, and pursuant to 42 U.S.C. § 1983 for alleged deprivations of his rights under the Due Process Clause and the Equal Protection Clause of the Fourteenth Amendment.  (*See* First Amended Complaint at Law at PageID 210-213, 216-219 ¶¶ 78-84, 94-100.)  Nieman's federal claims as pleaded in

Plaintiff's Original Complaint at Law, and now in Plaintiff's First Amended Complaint at Law, were and are frivolous, unreasonable, and groundless.

3.3    Nieman's Complaint fails to allege facts sufficient to establish a conspiracy claim under 42 U.S.C. § 1985.   Nieman's Complaint alleges *no facts* demonstrating the existence of any alleged conspiracy whose purpose was to deprive Nieman of equal protection of the laws *based on* racial animus or any other protected characteristics.   Nieman was aware that his § 1985 conspiracy claim lacked evidentiary support at the time Nieman filed Plaintiff's Original Complaint at Law.    Prior to, or shortly after filing this lawsuit, Nieman had the paramedics' Patient Care Report and the Notification of Emergency Detention By Peace Officer completed by officer Merrell.    Those documents do not demonstrate the existence of a conspiracy. Furthermore, Nieman was aware that Defendants made no statement or comment, and took no action during their encounter with him that would plausibly suggest that Defendants conspired to deprive Nieman of equal protection of the laws based on racial animus or any other protected characteristics.

3.4    Nieman's Complaint alleges a claim under the Due Process Clause of the Fourteenth Amendment based upon acts which Nieman contends constituted (a) an unlawful warrantless seizure of his person, and (b) uses of objectively unreasonable force to effect and maintain that seizure.   The Supreme Court's holding in *Graham v. Connor*, 490 U.S. 386, 395 (1985) clearly forecloses a Fourteenth Amendment due process claim based on the foregoing alleged conduct of Defendants.   Nieman's Complaint fails to allege a substantive or procedural due process claim against Defendants under the Fourteenth Amendment Due Process Clause, and Nieman knew that his alleged "due process claim" was factually and legally insufficient at the

time he filed Plaintiff's Original Complaint at law, and he can make no good faith argument that Defendants' actions are actionable under the Fourteenth Amendment.

3.5    Nieman's Complaint purports to allege a claim under the Fourteenth Amendment's Equal Protection Clause.   Nieman's Complaint is completely devoid of facts showing that Defendants treated Nieman differently than were other similarly-situated individuals.   Nieman's Complaint, moreover, fails to allege facts showing that Defendants' conduct was motivated by Nieman's race or any other protected characteristics, or that Defendants had a discriminatory state of mind during their interactions with Nieman.   Nieman knew that his "equal protection claim" lacked evidentiary support at the time he filed Plaintiff's Original Complaint at Law.   Prior to, or shortly after filing this lawsuit, Nieman had the paramedics' Patient Care Report and the Notification of Emergency Detention By Peace Officer completed by officer Merrell.   Those documents do not contain facts that evince in any way that Nieman was subjected to unequal treatment because of his race or other protected characteristics. Furthermore, Nieman was aware that Defendants made no statement or comment, and took no action during their encounter with him that would plausibly suggest that Nieman was being treated differently than were other similarly-situated individuals and that the unequal treatment stemmed from a discriminatory purpose.

3.6    Defendants are entitled to judgment for attorney's fees expended in defending against Nieman's claims pleaded against them under 42 U.S.C. § 1985, as well as the claims pleaded under the Fourteenth Amendment and brought against Defendants pursuant to 42 U.S.C. § 1983.

## IV.    JURY DEMAND

4.1    Defendants demand trial by jury as to all issues so triable.

WHEREFORE, Defendants Dwaine N. Helton, Michael Milam, and Jessica L. Merrell pray that Plaintiff take nothing by this suit; that all relief requested by Plaintiff be denied; that judgment be entered for Defendants on their counterclaim; that judgment be entered awarding Defendants their attorney's fees expended in defending against Plaintiff's claims pleaded against them under 42 U.S.C. § 1985, as well as the claims pleaded under the Fourteenth Amendment and brought against Defendants pursuant to 42 U.S.C. § 1983; that Defendants recover all costs of suit and attorney's fees, interest, and such other and further relief, general or special, at law or in equity, to which Defendants are entitled.

Respectfully submitted,

WARREN M. S. ERNST
Dallas City Attorney

s/ *Tatia R. Wilson*
Tatia R. Wilson
Senior Assistant City Attorney
Texas Bar No. 00795793
tatia.wilson@dallascityhall.com

Jason G. Schuette
Executive Assistant City Attorney
Texas Bar No. 17827020
jason.schuette@dallascityhall.com

James C. Butt
Senior Assistant City Attorney
Texas Bar No. 24040354
james.butt@dallascityhall.com

City Attorney's Office
1500 Marilla Street, Room 7B North
Dallas, Texas 75201
Telephone:  214-670-3519
Telecopier:  214-670-0622

*Attorneys for Defendants Dwaine N. Helton,*
*Michael Milam, and Jessica L. Merrell*

## CERTIFICATE OF SERVICE

I certify that on March 4, 2015, I electronically filed the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the CM/ECF electronic case filing system of the court. The electronic case filing system will send a "Notice of Electronic Filing" notification to all case participants registered for electronic notice, including the following *pro se* parties and/or attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means:

Jason Nieman
1700 Windycrest Drive
Springfield, Illinois 62704
*Plaintiff Pro Se*

William Andrew Messer
Brett Gardner
Messer, Rockefeller & Fort, P.L.L.C.
6351 Preston Road, Suite 350
Frisco, Texas 75034
*Attorneys for Defendants Amanda Garcia, R.N.,*
*Katherine M. Mapula, R.N., Catherine Lewis Neal, M.D.,*
*Kristie Louann Brown, R.N., and Luis Roman Tavaras, M.D.*

David Luningham
Joshua D. Kornely
Watson, Caraway, Midkiff & Luningham, L.L.P.
309 West 7th Street
1600 Oil & Gas Building
Fort Worth, Texas 76102
*Attorneys for Defendants Dallas County Hospital District*
*d/b/a Parkland Health & Hospital System*

Philipa M. Remington
Cathryn R. Paton
Thiebaud, Remington, Thornton, Bailey LLP
Two Energy Square
4849 Greenville Avenue, Suite 1150
Dallas, Texas 75206
*Attorneys for Defendants Suhny Abbara, M.D.,*
*Alexander Eastman, M.D., Nhan Le, M.D.,*
*Kyle Molberg, M.D., Ellen Jane O'Connell, M.D.,*
*Jeffrey Pruitt, M.D., Gina Sims Cho, M.D., and*
*Anthony Whittemore, M.D.*

s/*Tatia R. Wilson*
Tatia R. Wilson
Senior Assistant City Attorney