## THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

Jason Nieman,　　　　　　　　　　)
　　　　　　　　　　　　　　　　)
　　　　　　Plaintiff　　　　　　　)　　Case No: 3:14 cv 3897
　　　　　　　　　　　　　　　　)
　　　vs.　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　)　　Judge: Hon. Barbara M.G. Lynn
E. Street Investments, LLC, d/b/a The　)
Concrete Cowboy Bar, et al.　　　　　)　　Magistrate Judge: Hon. Paul D. Stickney
　　　　　　　　　　　　　　　　)
　　　　　　Defendants　　　　　　)
　　　　　　　　　　　　　　　　)
_____)

## PLAINTIFF'S RESPONSE TO THE MOTION [DKT. 76] OF DEFENDANT FREDERICK CERISE, SEEKING A RULE 7(A) REPLY

Comes now Plaintiff Jason Nieman, pro se, respectfully responding to the *Motion* [Dkt. 76, 3/10/2015] seeking an order from the Court requiring a Rule 7(a) reply in this matter. Plaintiff believes that the Court will agree that this is not necessary, and that the Defendant does not show any potential basis for a finding of qualified immunity, in whole or part. Plaintiff certifies this motion response as compliant with l.r. 7.1, 7.2 at 10 pages, excluding the Certificate of Service. Plaintiff incorporates relevant arguments, references, and citations found in his ordered Rule 7(a) reply [Dkt. 52, 2/9/2015] as to the other Parkland Defendants.

## RELEVANT PROCEDURAL HISTORY AND CERTIFICATE OF ATTEMPTED CONFERENCE UNDER LOCAL RULE 7.1

As the Court is aware, parties are required to meet and confer materially prior to filing certain motions under l.r. 7.1. A motion for *"more definite statement"* is listed as a motion type where conference and certification is mandatory, and Defendants' motion appears to apply: http://www.txnd.uscourts.gov/rules/localrules/civilrules7.html

Contrary to the express local rule, Plaintiff is unaware of any attempt or effort by this Defendant or his counsel to seek to confer with Plaintiff regarding the present motion.

Additionally, the required l.r. 7.1 certification is not found in the pleading.  Accordingly, the Court may agree that this is sufficient basis alone to reject the motion.

Plaintiff has well supported the extensive history of problems at DCHD/Parkland which similar to the abuses he suffered, though space would not permit a full accounting of the other allegations against the entity.  See [Dkt. 16] at 3 et seq.  Plaintiff has also briefly described the substantial amount of executive leadership and other staffing changes that have occurred as DCHD/Parkland has supposedly tried to bring itself in compliance with state, local, and/or federal standards as to billing practices, patient rights and safety, and otherwise.

In the operative complaint [Dkt. 16], Plaintiff pleads various good causes and facts against Cerise.  As to his status and role, Plaintiff specifically asserted, in relevant part:

> *"34….**Defendant Frederick Cerise, M.D**. was at all relevant times the Chief Executive Officer of Parkland Hospital, responsible for the overall medical administration of the hospital, including the care and custody of the patients admitted there, the supervision, training and control of the physicians working there, and who had responsibility for establishing and/or supervising the customs, policies and practice for the physicians Defendant Cerise is believed to be the "ultimate policymaker" for DCHD/Parkland, most responsible for addressing the numerous deficiencies and offenses which DCHD/Parkland staff have found to be guilty of since at least 2011."*

Defendant Cerise admits that he is the Chief Executive Officer at Parkland but otherwise vaguely denies the allegations against him, to the greatest extent.  (See *Answer* [Dkt. 74] at 15 et seq.  See also *1st Amended Complaint* [Dkt. 16.] at 13 et seq.).  In trying to defend his own conduct, and that of other members of Parkland and/or UTSW staff, Defendant Cerise has primarily (and likely improperly) referenced alleged medical records, which have neither been confirmed nor approved for any type of publication or reference by this Court.  In the *Answer* [Dkt. 74] Defendant Cerise vaguely claims qualified immunity without sufficient factual or documentary argument or support to meet such standard.  He also, without credibility, attempts to distance himself from the operations of the organization where he admittedly serves as Chief

Executive Officer.  To the extent Defendant Cerise denies that he is the final policymaker for

DCHD/Parkland, he provides no factual support for such assertion.  (See item 128, page 22 et

seq.).  In addition to filing an *Answer,* Defendant has also moved seeking an order from the

Court directing Plaintiff to file a Rule 7(a) reply.  For reasons that will follow, Plaintiff believes

that the Court will agree that as to this particular Defendant, this procedural step is neither

required nor proper.  This is particularly true in light of Plaintiff's ordered and filed Rule 7(a)

Reply as to the other DCHD/Parkland Defendants having already been completed.  [Dkt. 52].

## **ARGUMENT**

As a preliminary matter, Plaintiff notes to the Court that Defendant Cerise has been sued

as a supervisory Defendant.  Plaintiff has no knowledge that he directly participated in the

decisions to restrain, sedate (repeatedly), incarcerate, and otherwise take part in alleged

medically justified activities upon Plaintiff and Defendant has expressly denied direct

participation in such activities in his *Answer.* However, assertions of lack of responsibility, or

that he (Cerise) was not the final policymaker are unsupported, likely not credible, or at least a

fact question at this point under the relevant standard.  See *McMillan v. Monroe Cnty, Ala,* 520

U.S. 781, 786-87 (1997).  See also *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 691 (1978).

When the Court considers the massive number of violations attributed to DCHD and/or

Parkland, and the alleged reasons for recruiting Defendant Cerise (to fix these problems),

coupled with the severe and repeated violations against Plaintiff approximately nine months

after Defendant Cerise's arrival, Plaintiff has clearly met the standard for a finding of liability

against DCHD/Parkland and Cerise, in their supervisory capacities.  See, e.g., *Clark v. City of*

*San Antonio et al.,* No. 11-50010 (5th Cir. March 9, 2012)(finding, inter alia, evidence of a

pattern and practice of unconstitutional "no knock" searches was sufficient to warrant reversal of summary judgment in favor of the city).

See, e.g., *Ottman v. City of Indep.*, 341 F.3d 751, 761 (8th Cir. 2003) (imposing liability "when the supervisor's corrective inaction constitutes deliberate indifference toward the violation"); *Cottone v. Jenne,* 326 F.3d 1352, 1360 (11th Cir. 2003) (stating that a supervisor may be liable upon a showing of "a history of widespread abuse [that] puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so"); *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 216 (3d Cir. 2001) (allowing supervisory liability on a failure to train claim when "the need for more or different training was so obvious and so likely to lead to the violation of constitutional rights that the policymaker's failure to respond amounts to deliberate indifference").  The sheer number of similar incidents of documented abuse by DCHD/Parkland staff and the lack of any argument or proof by Defendant Cerise that he has actually undertaken *any* remedial effort, shows that he cannot expect to have any legitimate defense in this case, at least not in the early pleading stage.

**A.  The Nature of Qualified Immunity In This Case**

Arguably, Defendant Cerise is subject to potential liability in this case in his individual as well as organizational capacity.  Accordingly, any asserted qualified immunity defense would only potentially shield him as to any individual capacity claims.  See *Wilson v. Town of Mendon,* 294 F.3d 1, 7 (1st Cir. 2002).  Additionally, despite their clearly asserted goal, qualified immunity arguments do not automatically shield municipal defendants from all discovery.  See *Lion Boulos v. Wilson,* 834 F.2d 504, 507 (5th Cir. 1987), *Wicks v. Miss. State Employ. Servs,*, 41 F.3d 991, 994 (5th Cir. 1995).

Conversely, even if qualified immunity were ultimately found as to one or all of the other individual DCHD/Parkland Defendants, DCHD/Parkland, and arguably Defendant Cerise, could still be held responsible and liable under *Monell.* See *Peterson v. City of Fort Worth*, 588 F.3d 838, 842 (5th Cir. 2009). From what Plaintiff can see, Defendant Cerise has not identified any alternative person as the final policymaker for the persons and issues directly related to the constitutional violations committed against Plaintiff by DCHD/Parkland staff.

As a final initial point, Plaintiff does not believe that Defendants' qualified immunity defenses, or related pleadings, contain sufficient factual or documentary support to even meet the standard under Rule 8 and the prevailing standard, See, e.g., *Bell Atlantic v. Twombly,* 550 U.S. 544 (2007) and *Ashcroft v. Iqbal,* 556 U.S. 662 (2009).

**B. Plaintiff has sufficiently pled extensive violations of constitutional rights and that such acts were objectively unreasonable.**

As the Court is aware, this Defendant is yet another who has attempted to argue that violation(s) of constitutional rights have not even been pled in this case, without support. Plaintiff has clearly met the standard to show extensive acts of Fourth and Fourteenth Amendment violations by the DCHD/Parkland Defendants under control of Defendant Cerise, as well as an extensive history of similar violations and breaches of duties and/or standards by the hospital staff and leadership. See, e.g., *Rule 7(a) Reply,* [Dkt. 52].

In summary, Plaintiff has shown, and/or raised a fact question as to the following: **(1)** Plaintiff's detention, allegedly justified under Texas Mental Health Code Section §573 was extremely suspect, at best. The totality of the evidence, including recently made available Dallas Police Records [Dkt. 73-1 to 73-5] suggest that Plaintiff was approached by DPD and Dallas Fire/EMS Defendants Milam, Helton, and Merrell and suspected of nothing more than being a person who had suffered an injury. **(2)** The various actual or alleged records contain

inconsistencies which suggest that the various Defendants have misstated the exact nature of the alleged "APOWW" form which has been relied upon to the greatest extent as justification for their conduct.  (Defendant Cerise also refuses to provide any specifics as to exactly how or when this supposed form was completed, received, and/or filed. See *Answer* [Dkt. 74] at 48, 132.6, 146).   These defects and/or inconsistencies corroborate Plaintiff's assertion that the required processes were not followed, were not justified, and/or that certain documents were altered and/or backdated by the various Defendants as part of an effort and/or conspiracy to justify their misconduct.  See *1st Amm. Cmplt.* [Dkt 16] at 46 et seq. **(3)** After his arrival at DCHD/Parkland and UTSWMC Plaintiff verbally and expressly refused any medical treatment, restraint, sedation, or incarceration.  Contrary to his expressed statements he was subjected to unlawful radiological, urine, and blood searches, physical and chemical restraint (3 rounds of the latter), and various other types of indignities.  Plaintiff has also shown unlawful search and withholding of his belongings (wallet, insurance information, ID cards, cellular phone) and severe damage and/or destruction of most of his clothing. **(4)** Plaintiff has shown, and Defendant does not dispute, that Plaintiff was held against his will for almost 12 hours, including long after any alleged "serious head injury" was ruled out.  **(5)** After release, Plaintiff and his insurer were improperly billed for the unauthorized treatment, under Defendant Cerise's responsibility.

Plaintiff has also left little to no doubt that the searches conducted on him were unlawful under the standard, and that his rights to be free of such searches was constitutionally guaranteed and clearly established long before he fell into the clutches of the staff at DCHD/Parkland. *Missouri v. McNeely,* No. 11-1425, 569 U.S. ___, 133 S. Ct. 1552 (2013).  See also, e.g., *Cochran v. Gilliam,* 656 F.3d 300, 305 (6th Cir.2011)(Qualified immunity denied when officers assisted in a 4th amendment seizure of personal property during an eviction

proceeding, also upholding 14th amendment causes).The seizure of Plaintiff's wallet, cellular

phone and other property (clothes) is directly applicable to this ruling and precedent.

Plaintiff also had a clearly established right to refuse medical care which was utterly

disregarded.  The United States Supreme Court has determined that a competent person has a

constitutionally protected liberty interest to refuse medical treatment. *Cruzan v. Director,*

*Missouri Department of Health,* 110 S. Ct. 2841, 111 L.Ed. 2d 224 (1990). The court concluded

that the U.S. Constitution would grant a competent person a constitutionally protected right to

refuse life-saving medical treatment including nutrition and hydration.  In this case, the various

Defendants have not even asserted that Plaintiff was at risk for severe injury or death, though

they cannot dispute that they utterly defied his repeated and express refusals of consent for any

treatment or detention.  Plaintiff has also recently debunked any assertion by the City of Dallas

Defendants that Plaintiff was properly considered anything other than a person who showed

signs of a facial injury and who expressly refused transport or treatment.

In the State of Texas, The law presumes that an adult person is of sound mind and is

capable of managing his own affairs, and the burden of proof rests with party alleging mental

incapacity to prove it. See, e.g., *Dubree v. Blackwell*, 67 S.W.3d 286 (Tex. App.— Amarillo

2001, no writ). Where a person refuses to consent, as occurred here, persons cannot simply treat,

restraint, sedate, and/or or invade/search such a person against their will absent extreme

justification.  Conversely there are various protocols required to try and seek consent, including

as to a list of authorized surrogates such as a spouse.  See, Texas Health and Safety Code

§313.002-005.  Plaintiff has found an item which appears to be a policy and procedures

document for DCHD/Parkland partner University of Texas medical system.  (See response

exhibit A, attached).  The *Operating Procedure* document also notes that a designated surrogate

*cannot* override an expressed refusal of consent by a patient.  Additionally, the document makes it clearly that *two* physicians must agree and may only act without consent as such:

> *"In the event that the incapacitated adult or minor patient's status deteriorates to the point that death or irreparable harm will result unless the urgent/emergent medical care is instituted immediately, two physicians can determine the need for emergency care. Prior to commencing such care, the physician should inform the patient's reasonably available family that the care will be provided despite their objections."*

See also *Bennett v. Miller*, 137 S.W.3d 894 (Tex. App.—Texarkana 2004, no pet. h.) (Doctor's examination not conclusive as to competency of a person). The consent form template allegedly used by DCHD/Parkland is also noted to contain this express statement, common to medical providers, at least in the State of Texas:

**Consent for Medical Treatment and Photography**
- I do hereby voluntarly consent to and authorize Parkland to provide care encompassing all diagnostic and therapeutic treatments, including HIV testing, considered necessary or advisable in the judgment of the attending physician or his/her designee  By signing this form, I do not waive my right to refuse recommended tests or treatments

A medical professional who conducts a cursory examination and then proceeds to act in defiance of verbalized refusal to consent has no legitimate basis to expect to be insulated from state law torts or constitutional violations, and damages associated with them.  It is undisputed that Plaintiff did not voluntarily consent to *any* treatment or action by DCHD/Parkland, Defendant Cerise, or any other employee or officer of DCHD/Parkland or UTSW.  While DCHD/Parkland's website contains no information about the *Patient's Bill of Rights,* this is available from other sources, such as the Texas Hospital Association.  (See copy, attached as response exhibit B).  The brochure states that medical information is subject to privacy protections (arguably violated in this litigation by Defendant Cerise, and others).  Even a voluntary patient may refuse to consent to certain treatment or tests.

According to the *Journal of Emergency Medical Services*, Dallas Fire/EMS and Parkland developed something called the "Parkland Protocol" to deal with persons who refused

treatment or transport.  http://www.jems.com/article/legal-ethical/patient-refusal-what-do-when-m.  However, a search of the Parkland and Dallas Fire/EMS websites shows absolutely no reference to such procedures, contrary to those found for their partners.  (See Dkt. 16-2). Plaintiff has sufficiently shown a pattern of deliberate indifference or failure to properly set policies, and/or to train, as to DCHD/Parkland and Defendant Cerise, in light of all facts.

Plaintiff has also clearly shown that he was subjected to multiple acts of objectively unreasonable physical and chemical sedation. Any assertion that such rights were not "clearly established" at the time of these events is pointless.  Freedom from invasion of a person's body is one of the mostly clearly established constitutional rights a citizen enjoys in these United States. See, e.g *Union Pacific R. Co. v. Botsford*, 141 U.S. 250 (1891) where the court stated:

> *"No right is held more sacred, or is more carefully guarded by the common law, than the right of every individual to the possession and control of his own person, free from all restraint or interference of others, unless by clear and unquestioning authority of the law."*

Defendant Cerise also claims that lack of specific actions by him somehow insulate him from liability or suit.  This is clearly not so.  Plaintiff has shown that his health and/or life were not objectively in danger to an extent which could allow implied consent to be present under Texas law.  See *Gravis v. Physicians & Surgeons Hospital,* 427 S.W. 310, 311 (Tex. 1968). The extent of treatment, searches, multiple rounds of chemical sedation, sustained physical restraint, and prolonged captivity coupled with extreme amounts of billing generated by Parkland suggest a financial and/or improper motives, rather than acceptable ones.

In addition to supervisory liability, Defendant Cerise has not shown that he has taken any action to objectively investigate these events and constitutional lapses by DCHD/Parkland staff nor that he had previously taken any action in regard to his charged duty to fix what is so horridly broken at Parkland.  See, e.g., *City of Canton v. Harris*, 489 U.S. 378, 389 n.8 (1989)

("The 'deliberate indifference' standard we adopt for § 1983 'failure to train' claims does not turn upon the degree of fault (if any) that a plaintiff must show to make out an underlying claim of a constitutional violation."). *See also Gonzalez v. Yselta Indep. Sch. Dist.*, 996 F.2d 745, 759 (5th Cir. 1993), *Sims v. Adams*, 537 F.2d 829, 831 (5th Cir. 1976).

In *Baskin v. Parker,* 602 F.2d 1205 (5th Cir. 1979) the appellate court discussed express ratification.  In this case, Defendant Cerise became aware of the violations against Plaintiff immediately after they occurred.  However, not only has he shown utter indifference, he permitted Plaintiff and/or Plaintiff's health insurer to be improperly billed many tens of thousands of dollars for the alleged treatment.  This type of ratification after the fact, and/or direct participation in related improper actions defeats any qualified immunity arguments, to the extent they even existed.  Given that Defendant Cerise was specifically recruited to try and fix a severely troubled entity, his failure to act supports liability by way of a deliberate indifference finding. See, e.g., *Brumfield v. Hollins*, 551 F.3d 322, 328 (5th Cir. 2008)

## CONCLUSION

For these good reasons and other good reasons the Court may view on its own authority, Plaintiff believes that the Court should agree that a Rule 7(a) reply is not required as to Defendant Cerise, based upon the pled record before the parties, and the Court.

Respectfully submitted this March 27, 2015

/s/ Jason Nieman
Jason Nieman, *Pro Se*
1700 Windycrest Drive
Springfield, IL 62704
217 836 7126
Nieman46804@yahoo.com

## <u>CERTIFICATE OF SERVICE</u>

Jason Nieman, *pro se*, certifies that on this date (March 27, 2015) he electronically filed a true and correct copy of this pleading and exhibits with the clerk of the court for the Northern District of Texas, at Dallas, by way of the Court's ECF/CM system.  A Judge's paper copy of all items were mailed to the Court on this date, as required to the attention of the Clerk for Judge Stickney at 1100 Commerce Street Room 1611, Dallas, Texas 75242-1003.

The following Defendant(s) have appeared by counsel and should receive copies of this pleading and supports by way of the ECF/CM system:

Tatia R. Wilson, James Butt, Jason Schuette (Asst. City Attorneys)
Dallas City Attorney's Office
1500 Marilla Street, 7CN, Dallas, Texas 75201
Tel:  214-671-9553
tatia.wilson@dallascityhall.com, james.butt@dallascityhall.com
Jason.schuette@dallascityhall.com
*Counsel for the City of Dallas Defendants*
Wm. Andrew Messer, Esq., Jennifer DeCurtis, Esq., Brett Gardner, Esq.
Messer, Rockefeller, & Fort PLLC
6351 Preston Rd., Suite 350, Frisco, TX 75034
972.668.6400 (P), 972.668.6414 (Fax)
andy@txmunicipallaw.com, jennifer@txmunicipallaw.com, brett@txmunicipallaw.com

*Counsel for Katherine Mapula, Catherine Lewis Neal, Luis Roman Tavaras, Kristie Louann Brown, Amanda Garcia and other related Parkland Individual Defendants.*

Joshua D. Kornely, Esq., Joan Parma, Esq.
Watson, Caraway, Midkiff & Luningham, LLP
1600 Oil & Gas Building, 309 W. 7th Street, Fort Worth, Texas 76102
817.870.1717, Fax 817.338.4842
JKornely@watsoncaraway.com, JParma@watsoncaraway.com
*Counsel for Defendant Dallas County Hospital District*

Philipa M. Remington, Esq., Cathryn R. Paton, Esq.
Two Energy Square
4849 Greenville Avenue, Suite 1150
Dallas, Texas 75206
(214) 954-2200, Facsimile: (214) 754-0999
Premington@trtblaw.com, cpaton@trtblaw.com

*Counsel for Defendants Ellen O'Connell, Alexander Eastman, Gina Sims, Jeffrey Pruitt, Nhan Le, Kyle Molberg, Suhny Abbara, and Anthony Whittemore and potentially other related UTSW Individual Defendants*

Chaz Klaes, Joelle Nelson
1301 McKinney St., Suite 1400
Houston, TX 77010
713 559 0700
cklaes@gallowayjohnson.com, jnelson@gallowayjohnson.com
*Counsel for E Street / Concrete Cowboy Defendants*

/s/ Jason Nieman
Jason Nieman, Pro Se
1700 Windycrest Drive
Springfield, IL 62704
217 836 7126
Nieman46804@yahoo.com