**THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| Jason Nieman, | ) |
| Plaintiff | ) Case No: 3:14 cv 3897 |
| vs. | ) |
| E. Street Investments, LLC, d/b/a The Concrete Cowboy Bar, et al. | ) Judge: Hon. Barbara M.G. Lynn |
| | ) Magistrate Judge: Hon. Paul D. Stickney |
| Defendants | ) |

**PLAINTIFF'S RESPONSE TO THE MOTION [DKT. 88] OF DEFENDANTS', ELLEN JANE O'CONNELL, M.D., ALEXANDER EASTMAN, M.D., GINA SIMS CHO, M.D., JEFFREY PRUITT, M.D., NHAN LE, M.D., KYLE MOLBERG, M.D., SUHNY ABBARA, M.D., AND ANTHONY WHITTEMORE, M.D., SEEKING LEAVE TO FILE ANSWERS WHICH INCLUDES MEDICAL FACTS, INCLUDING QUALIFIED IMMUNITY FACTS**

Comes now Plaintiff Jason Nieman, pro se, respectfully responding to and opposing the *Motion* [Dkt. 88] of these various individual University of Texas Southwestern Medical Center ("UTSW") Defendants seeking an order from the Court allowing them to (1) file an answer to the operative 1st Amended Complaint [Dkt. 16] which includes private medical facts and/or references. For the reasons that follow, Plaintiff believes the Court will agree that this is not proper at this time and that any such issues should be addressed in discovery, with an associated protective order, with any such references or documents redacted and/or filed under seal as to any future pleadings. Plaintiff certifies this pleading and exhibits compliant with local rules 7.1 and/or 7.2 at 10 pages, excluding the certificate of service.

**RELEVANT PROCEDURAL HISTORY AND CERTIFICATE OF ATTEMPTED CONFERENCE UNDER LOCAL RULE 7.1**

As the Court is aware, this case is related to the capture and temporary imprisonment, physical and chemical restraint of, and non-consensual medical and or other physical actions

upon Plaintiff by the various Defendants, other than the E Street (Concrete Cowboy) Defendants.  The causes of action against the E Street Defendants are separate and relate to breaches of duties as to security, assumed duties as to the Plaintiff's welfare, dram shop statute violations, and/or premises liability issues.

As the Court is also aware, and as noted by these UTSW individual Defendants, upon filing of the *1st Amended Complaint* [Dkt. 16] elected to file a motion to dismiss [Dkt. 28, 29; 1/23/2015].  Plaintiff timely opposed [Dkt. 38; 1/26/2015] and the motion remains pending.  For reasons not fully explained, approximately three months later Defendants are now seeking to file an answer in addition to their pending Rule 12 motion.  In seeking leave, Defendants specifically are seeking leave of the Court to plead unstated medical facts and/or references in their answer.  However, the Defendants have not filed a copy of the proposed answer under seal (or otherwise) so the Court and Plaintiff will have to speculate as to exactly what types of references the Defendants plan to try and include.  Pursuant to at least the spirit of local rule 15.1, Plaintiff believes Defendants should have provided a draft copy of the answer under seal.

## **ARGUMENT**

As the Court is aware, several of the Defendant sets have suggested that they plan to try and use the actual or alleged medical records created during the incidents in question as part of their defenses.  Indeed, certain DCHD/Parkland defendants (other than Defendant Dr. Cerise) elected to file an *Answer* [49; 2/6/2015] which contained extremely specific alleged facts as to blood alcohol level, use of a "Foley catheter", confirming use of physical restraints and three doses of Ativan to render and keep him unconscious, after he refused treatment.  Plaintiff objected to these references and has also sought regulatory review by the U.S. HHS and Texas Health divisions.

Put simply, the various Defendants have made no secret of the fact that they will try to portray Plaintiff as violent, disoriented, objectively unable to make medical decisions for himself, and highly intoxicated, in their effort to avoid discovery and secure judgment in their favor at the pleading stage on qualified immunity arguments.  As the Court can see, this is not possible and the nature of the Defendants' actions do not allow them to use their actions, taken without Plaintiffs' consent (or the consent of any authorized surrogate), taken without court order or warrant, and taken despite Plaintiffs express and repeated verbalized refusal of transport, treatment, restraint, or incarceration, as a defense.  This is also impermissible and unfair as the Defendants have also made it clear that they hope to stay any and all discovery until a final adjudication by the 5th Circuit Court of Appeals or even the U.S. Supreme Court as to qualified immunity  (See *Joint Status Report,* [Dkt. 72, 3/9/2015] at page 2 at 2).

As the Court is also aware, the various Defendants (with the exception of the E Street Defendants) sought a medical authorization from Plaintiff at various times from September 2014 to approximately January 2015.  In an act of utmost good faith, Plaintiff provided a copy of the alleged medical records from Dallas Fire/EMS and Parkland on January 3, 2015 (via email) to the non-E Street Defendants.  The limited authorization was granted to allow for negotiations and also for any input from Defendants as to Fed. R. Civ. P. 11. (as to the then drafted but not yet filed *1st Amended Complaint.)*  Despite the assertion that the records were being sought for good faith analysis and/or negotiations purposes, no offers of conclusion followed from any Defendant set, and Plaintiff now believes the requests were a rouse.

Conversely, on February 6, 2015 certain individual DCHD/Parkland Defendants appear to have used those records to craft their affirmative defenses, including highly specific alleged medical references.  Plaintiff has objected to such references and also expressly revoked

authorization for use of such previously provided materials via email to all counsel of record (other than the E Street Defendants) on February 14, 2015.  To the extent that these Defendants would not even have access to such information but for improper use of the records that Plaintiff provided (under limited authorization, now properly revoked) this also serves as a separate and compelling basis to bar the Defendants' request to include references taken from such unconfirmed records.

In their pending *motion* Defendants have included a singular reference supporting their motion; 45 C.F.R. § 164.512 (HIPPA) (See *Motion* [Dkt. 88] at page 2). The Court will note, however, that Defendants to not state exactly what part of this section supposedly allows the disclosure of protected medical or personal information they seek by way of their present motion.  Defendants also fail to cite any case supporting their motion/request.

A somewhat similar issue was addressed in *Turk v. Oiler,* No. 09-cv-381 (N.D. Ohio August 11, 2010).  In *Turk,* certain medical defendants sought judgment on the pleadings under Rule 12(c) arguing that HIPPA allowed them to release private medical information pursuant to a grand jury proceeding without potential liability.  However, the court noted that Ohio's medical privacy act is more stringent, and did not allow the disclosure, allowing for potential liability for unauthorized disclosure. Similarly, these Defendants are bound by the Texas Medical Privacy Act, Tex. HS. Code. Ann. §181.001 et seq., which does *not* appear to have disclosure exceptions for judicial or administrative proceedings.  See §181.052-181.057.

The Court is also aware that Plaintiff has pled and supported, and no Defendant has apparently disputed, that Plaintiff verbally refused transport, incarceration and/or treatment at all times when he was conscious, which was primarily prior to the three rounds of chemical sedation forced upon Plaintiff at Parkland/UTSW, and an unconfirmed number of additional

doses which appear to have been administered by the Dallas Fire/EMS crew (but which those Defendants dispute having administered at all).

Plaintiff believes that the following case is highly instructive, and Plaintiff also notes that the presiding district court judge in this case (Judge Lynn) participated in the panel as the ruling; *George v. Edholm,* 752 F.3d 1206 (9th Cir. May 28, 2014). (Copy attached as opposition exhibit A). Mr. George was an arrestee who was believed to be carrying cocaine baggies in his stomach. Without a warrant, and without attempting to secure one, the police directed a doctor to forcibly search and evacuate the man's bowels. The court, citing *Rochin v. California,* 342 U.S. 165 (1952) compared the actions to the "rack and the screw" (torture), noting that the actions in *George* were even worse than those found to be impermissible and unconstitutional in *Rochin.* The narrative is as compelling as it is disturbing as to this case:

> *"Second, **the "intrusion upon [George's] dignitary interests in personal privacy and bodily integrity" was extreme.** Winston, 470 U.S. at 761. Edholm sedated George. He opened George's anus with an anoscope and inserted long forceps into George's rectum. He inserted a tube into George's nose, ran the tube into George's stomach, and pumped a gallon of liquid laxative through George's digestive system, triggering a complete evacuation of George's bowels. When George regained consciousness, the bowel evacuation was still in process. George did not consent to any of these procedures. The officers neither had a warrant authorizing these procedures nor attempted to get one.*
>
> *These procedures were "highly intrusive and humiliating." Tribble v. Gardner, 860 F.2d 321, 324 (9th Cir.1988). The search invaded George's anus and nostrils, as well as his throat, stomach, and intestines. **The anoscopy "targeted an area of the body that is highly personal and private." United States v. Gray, 669 F.3d 556, 564 (5th Cir.2012), vacated on other grounds, ––– U.S. ––––, 133 S.Ct. 151, 184 L.Ed.2d 2 (2012). Forced sedation, anoscopy, intubation, and bowel evacuation are more invasive than the stomach-pumping that Rochin described as "close to the rack and screw." 342 U.S. at 172; accord United States v. Booker, 728 F.3d 535, 545 (6th Cir.2013). If George's evidence is believed, the procedures were performed despite his vociferous protests and without explanation, consultation, or other "reasonable steps to mitigate [his] anxiety, discomfort, and humiliation." Cameron, 538 F.2d at 258; see also Winston, 470 U.S. at 765 ("[T]o take control of respondent's body, to drug this citizen—not yet convicted of a criminal offense—with narcotics and barbiturates into a state of unconsciousness, and then to search beneath his skin for evidence of a crime . involves a virtually total divestment of respondent's ordinary control over surgical probing beneath his skin ." (citation and internal quotation marks omitted)).***

*The search here was at least as invasive as searches we and other courts have characterized as unwarranted intrusions on dignitary interests. In United States v. Cameron, a suspect underwent a digital rectal exam and two enemas before being forced to drink a liquid laxative. 538 F.2d at 258. In an opinion by then-Judge Kennedy, we held that search unreasonable. Id. at 258–60.* **In Ellis v. City of San Diego, 176 F.3d 1183 (9th Cir.1999), we held that the plaintiff had alleged a clear Fourth Amendment violation when he claimed that doctors sedated him, took blood samples, and inserted a catheter into his penis. Id. at 1186, 1191–92;** *see also* **Booker, 728 F.3d at 547 (sedation, intubation, and anal probing are "an affront to personal dignity . categorically greater" than the surgery in Winston );** *Gray, 669 F.3d at 564 (proctoscopy is "a greater affront to . dignitary interest[s] than full-on exploratory surgery");* **United States v. Husband, 226 F.3d 626, 632 (7th Cir.2000) (sedation and reaching into suspect's mouth "constitute a serious invasion of . personal privacy and liberty interests");** *Rodriques v. Furtado, 950 F.2d 805, 811 (1st Cir.1991) (vaginal inspection is "a drastic and total intrusion of . personal privacy and security"); Kennedy v. L.A. Police Dep't, 901 F.2d 702, 711 (9th Cir.1989) (visual inspections of body cavities are "dehumanizing and humiliating"), abrogated on other grounds by Hunter v. Bryant, 502 U.S. 224, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (per curiam); Tribble, 860 F.2d at 325 (digital rectal exam is "one of the most intrusive methods of detecting contraband");* **Yanez v. Romero, 619 F.2d 851, 855 (10th Cir.1980) (catheterization is a "gross personal indignity");** *Huguez v. United States, 406 F.2d 366, 379 (9th Cir.1968) (digital rectal exam was "a brutal invasion of privacy"); State v. Payano–Roman, 290 Wis.2d 380, 714 N.W.2d 548, 560 (Wis.2006) (being forced to drink a laxative is a "significant intrusion")."*

Similarly to several Defendant sets in this case, the defendants in *George* attempted to claim that their actions were absolutely medically necessary (and hence subject to qualified immunity) because of the suspicion that cocaine baggies *might* burst and because of evidence of cocaine toxicity as to the plaintiff.  The court flatly rejected this assertion, noting that such a "speculative, generalized risk cannot on its own justify nonconsensual procedures as invasive as those performed by Dr. Edholm."  While a true medical emergency ("life in immediate danger") could, in some cases, permit non-consensual treatment to occur, this was clearly not such a case.

In contrast to the facts in *George,* Plaintiff was not an arrestee and any allegation that he was suspected of any crime is totally unsupported by the record, even in light of the vague assertions of City of Dallas individual Defendants being contradicted by their own alleged records and reports.  Additionally, while in this case, various Defendants have vaguely alleged

that certain procedures were medically necessary due to an actual or suspected emergency, the record thus far before the court, including the detailed assertions by certain DCHD/Parkland individual Defendants, do not support such assertions, particularly in light of *George.*

The Court is also aware that under Texas law, non-consensual medical intervention is even more disfavored than was the case under California law, in *George.* Specifically, in *Barclay v. Campbell,* 704 S.W. 2d 8 (1986):

*"While we appreciate the dilemma facing a psychiatrist in such a position, we hold that it was not the legislature's intent to take away an individual's right to make such decisions for himself just because his doctor does not believe his patient is reasonable…Rather, the issue is whether a "reasonable person" could have been influenced in making a decision whether to give or withhold consent to the procedure had he known of the risk. If a "reasonable person" could have been influenced, then Barclay was also entitled to be warned of the risk.*

*The right to make medical decisions for one's self has been recognized in numerous decisions as one encompassed by the right of privacy under the United States Constitution. See Carey v. Population Services International, 431 U.S. 678, 684, 97 S.Ct. 2010, 2015-16, 52 L.Ed.2d 675 (1977); Roe v. Wade, 410 U.S. 113, 152, 93 S.Ct. 705, 726, 35 L.Ed.2d 147 (1973). One does not automatically lose that right because of mental illness. A person suffering from a mental illness is guaranteed all the rights, benefits, responsibilities and privileges afforded by the constitutions and laws of the United States and Texas. TEX.REV.CIV.STAT.ANN. art. 5547-80(a) (Vernon Supp.1985). This includes making one's own medical decisions."*

In Texas, it is generally accepted in the medical community that treatment of a person without consent is battery. *See, e.g., Gravis v. Physicians & Surgeons Hosp.*, 427 S.W.2d 310, 311 (Tex.1968) (*"consent will be implied where the patient is unconscious or otherwise unable to give express consent **and** an immediate operation is necessary to preserve life or health."*) See also Texas Family Code section 32.001, Texas Health & Safety Code section 773.008 and Texas Revised Civil Statutes article 4590i, section 6.07(a)(2), (illustrating that implied consent does not arise from an emergency context when a healthcare provider has actual notice of lack of consent.)

Taking action against persons as to actual or alleged medical treatment, unwanted sedation and/or restraint appears to be a matter of common practice at DCHD/Parkland and/or UTSWMC at Dallas even though at least DCHD/Parkland has been advised in the past by this Court that certain actions of this type are objectively unreasonable, even as to persons who have been formally committed to psychiatric treatment.  See, e.g., *Pena v. DCHD,* 3:12 cv 439 (N.D. Tex. June 26, 2013).  The record thus far shows that Plaintiff's alleged "APOWW" status was extremely suspect and that the requirements (such as explanation to the captured person of their rights and what is occurring did not occur.  (See §573.001(g)).  Plaintiff's first notification of his status was not noted until approximately 7:00 a.m. on September 15, 2014.

It should also be noted that in *George* the court held that the actions of the medical personnel could be attributed to the state.  As the Court is aware, several Defendant sets have attempted to defend themselves in this action by alleging that Plaintiff was highly intoxicated and violent, and by pointing to the actions of Defendant (officer) Merrell in allegedly completing an "APOWW" form as somehow exonerating them.   However, so far as Plaintiff is aware no Defendant set has disputed that (1) the allegations of odor of alcohol or visual evidence of intoxication was based upon hearsay reports from the City of Dallas Fire/EMS crew (Defendants Helton and Milam), (2) allegations of violent behavior (hearsay) by same.  The actions as to the APOWW form remain very suspect in light of the vague *Answer* of Defendant Merrell and the recent disclosure of at least some alleged police/dispatch reports from the City of Dallas.  (See Dkt. 73-1 to 73-3).  These records obviously contradict sworn pleadings, at least to an extent, suggesting that nothing more than a possible head injury and some disorientation was suspected as to Plaintiff and that required processes. The Court will also note that the various Defendants have attempted to cloak themselves in the protections of Texas Mental

Health Code Section §573 ("APOWW").  Then again, none of them appear to credibly dispute the fact that they did not follow the required protocols to seek medical consent by Plaintiff and/or a surrogate (such as his spouse) or to seek a court order or warrant before proceeding with medical action and/or bodily searches by way of catheterization of the penis, blood draws by way of needle(s), IV needle insertion, and radiology, all without consent and in violation of express refusal of consent.

Finally, Defendants are precluded from attempting to rely upon the results of their unauthorized actions because they resulted from unconstitutional acts and/or unlawful actions, including improper and unauthorized searches (body, blood, urine, radiology). See, e.g. *Missouri v. McNeely,* No. 11-1425, 569 U.S. ___, 133 S. Ct. 1552 (2013) (blood draw without warrant is an unconstitutional search).  Good intentions, actual or alleged, cannot save a defendant who commits such unlawful searches.  See, e.g., *Ferguson v. City of Charleston*, 532 U.S. 67 (2001)(performing urinalysis on pregnant women as to possible cocaine use while pregnant was an unlawful search).  Accordingly, these Defendants cannot legitimately hope to use the fruit of their actions (actual or alleged blood, urine, or other test results or alleged medical records) to try and justify them.  To the extent the Court permits these Defendants to do so in any way, such activities are most appropriate during discovery, under seal and subject to protective order, to avoid unfair and/or inaccurate mischaracterization of the Plaintiff by the Defendants as they seek to try and justify that which cannot be justified under the law.

Finally, the Court will note that Defendants have accused Plaintiff of attempting to use the actual or alleged medical records as "a sword and a shield". (*Motion* [Dkt 88] at page 2). This is clearly not the case.  Plaintiff understands that the Court will order some level of disclosure of actual or alleged medical or EMT records during the discovery phase of this case.

However, Plaintiff expects the Court will require any filings of detailed medical information will be under seal.  Additionally, as Plaintiff has shown, the types of references that the various Defendants would attempt to use for their defenses (in support of judgment on the pleadings and depriving the Court and Plaintiff of *full* disclosure of all records) cannot be allowed at this phase because they cannot legitimately support any affirmative defense that could allow the Defendants to avoid suit, liability, or damages in this case by way of a Rule 12(c) motion.  As to these Defendants this is particularly so as they likely cannot attempt to seek another Rule 12 motion (on the pleadings) to the extent their earlier motion to dismiss [Dkt. 28, 29] is denied in whole or part.  See Fed. R. Civ. P. 12(g)(2).  See also *Hillis v. Heineman,* No. 09-17040 (9th Cir. Nov. 19, 2010).  See also *Orthoflex, Inc. v. Thermotek, Inc.* 3:11 cv 0870, 3:10 cv 2618 (Cons.) (N.D. Tex. May 23, 2013).

## CONCLUSION

For these good reasons and other good reasons the Court may view on its own authority, Plaintiff believes that the Court should bar the Defendants from filing an answer that includes any private or personal (medical or similar) references as to the Plaintiff as such actual or alleged information would not be admissible nor could it potentially support any legitimate defense of said Defendants, in this case.

Respectfully submitted this April 14, 2015

/s/ Jason Nieman
Jason Nieman, *Pro Se*
1700 Windycrest Drive
Springfield, IL 62704
217 836 7126
Nieman46804@yahoo.com

## **CERTIFICATE OF SERVICE**

Jason Nieman, *pro se*, certifies that on this date (April 14, 2015) he electronically filed a true and correct copy of this pleading and exhibits with the clerk of the court for the Northern District of Texas, at Dallas, by way of the Court's ECF/CM system.  A Judge's paper copy of all items were mailed to the Court on this date, as required to the attention of the Clerk for Judge Stickney at 1100 Commerce Street Room 1611, Dallas, Texas 75242-1003.

The following Defendant(s) have appeared by counsel and should receive copies of this pleading and supports by way of the ECF/CM system:

Tatia R. Wilson, James Butt, Jason Schuette (Asst. City Attorneys)
Dallas City Attorney's Office
1500 Marilla Street, 7CN, Dallas, Texas 75201
Tel:   214-671-9553
tatia.wilson@dallascityhall.com, james.butt@dallascityhall.com
Jason.schuette@dallascityhall.com
*Counsel for the City of Dallas Defendants*

Wm. Andrew Messer, Esq., Jennifer DeCurtis, Esq., Brett Gardner, Esq.
Messer, Rockefeller, & Fort PLLC
6351 Preston Rd., Suite 350, Frisco, TX 75034
972.668.6400 (P), 972.668.6414 (Fax)
andy@txmunicipallaw.com, jennifer@txmunicipallaw.com, brett@txmunicipallaw.com
*Counsel for Katherine Mapula, Catherine Lewis Neal, Luis Roman Tavaras, Kristie Louann Brown, Amanda Garcia and other related Parkland Individual Defendants.*

Joshua D. Kornely, Esq., Joan Parma, Esq.
Watson, Caraway, Midkiff & Luningham, LLP
1600 Oil & Gas Building, 309 W. 7th Street, Fort Worth, Texas 76102
817.870.1717, Fax 817.338.4842
JKornely@watsoncaraway.com, JParma@watsoncaraway.com
*Counsel for Defendant Dallas County Hospital District*

Philipa M. Remington, Esq., Cathryn R. Paton, Esq.
Two Energy Square
4849 Greenville Avenue, Suite 1150
Dallas, Texas 75206
(214) 954-2200, Facsimile: (214) 754-0999
Premington@trtblaw.com, cpaton@trtblaw.com

*Counsel for Defendants Ellen O'Connell, Alexander Eastman, Gina Sims, Jeffrey Pruitt, Nhan Le, Kyle Molberg, Suhny Abbara, and Anthony Whittemore and potentially other related UTSW Individual Defendants*

Chaz Klaes, Joelle Nelson
1301 McKinney St., Suite 1400
Houston, TX 77010
713 559 0700
cklaes@gallowayjohnson.com, jnelson@gallowayjohnson.com
*Counsel for E Street / Concrete Cowboy Defendants*

/s/ Jason Nieman
Jason Nieman, Pro Se
1700 Windycrest Drive
Springfield, IL 62704
217 836 7126
Nieman46804@yahoo.com