

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JASON NIEMAN, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | No. 3:14-CV-3897-M (BF) |
| | § | |
| CITY OF DALLAS, et al., | § | |
| Defendants. | § | |

### FINDINGS, CONCLUSIONS AND RECOMMENDATION
### OF THE UNITED STATES MAGISTRATE JUDGE

This case has been referred to the United States Magistrate Judge for pretrial management. Before the Court are defendant City of Dallas' Motion to Dismiss Plaintiff's State Tort Claims [D.E. 34] ("Motion to Dismiss State Claims"), and Amended Motion to Dismiss Plaintiff's Federal Claims Alleged Against It In Plaintiff's First Amended Complaint [D.E. 36] ("Amended Motion to Dismiss Federal Claims"). For the following reasons, the undersigned recommends that the Court GRANT the City of Dallas' Motion to Dismiss State Claims [D.E. 34] and Amended Motion to Dismiss Federal Claims [D.E. 36].

### BACKGROUND

Plaintiff Jason Nieman ("Plaintiff") brings this suit alleging personal injury and violations of his civil rights under Title 42, United States Code, Section 1983 ("Section 1983") in connection with events that took place on September 14, 2014 at Concrete Cowboy located on Cedar Springs Road in Dallas, Texas. *See* Am. Compl. [D.E. 16 at 24]. On that night, Plaintiff contends that he consumed 4 glasses of wine with dinner between 6:00 p.m. and 9:00 p.m. at a restaurant located at the Adolphus Hotel but that he was not intoxicated when he left the restaurant. *See id.* [D.E. 16 at 24]. At approximately 9:00 p.m., Plaintiff contends that he went to a nearby venue, OE Penguin in

search of a karaoke bar, but upon discovering that there was no karaoke at that location, Plaintiff proceeded to the Concrete Cowboy with an individual named "Jason" and an unidentified female. *See id.* [D.E. 16 at 24]. Plaintiff does not recall consuming any alcoholic beverages at OE Penguin. *See id.* [D.E. 16 at 24].

Upon arriving at Concrete Cowboy, Plaintiff contends that he consumed a beverage given to him by Jason which he believed to be vodka and Red Bull, but was contaminated with a drug appearing to have been GHB or Rohypnol. *See id.* [D.E. 16 at 24-25]. Within few minutes of consuming the contaminated beverage, Plaintiff contends that his judgment, physical control, and memory were greatly compromised but alleges that the staff at Concrete Cowboy failed to reasonably prevent and/or detect the "drugging incident" and allowed Plaintiff to be provided more alcoholic beverages despite his obviously compromised condition. *See id.* [D.E. 16 at 25]. Plaintiff contends that several hours later, he was attempting to "escape the clutches" of Jason and his unidentified female companion when he fell on a staircase at Concrete Cowboy which he believes was caused by: (1) the consumption of the contaminated beverage; (2) the defective and/or dangerous condition of the staircase and/or handrail; and (3) inadequate lighting in the staircase. *See id.* [D.E. 16 at 25-26]. Plaintiff contends that he suffered a hard fall which resulted in "serious facial/cranial impact." *See id.* [D.E. 16 at 26]. Plaintiff contends that as a result of the fall, he "suffered a deep abrasion/laceration to his nose, a serious nasal contusion, [and a] non-serious concussion from the fall." *See id.* [D.E. 16 at 26].

Shortly after mid-night, Plaintiff contends that he encountered the owner of Concrete Cowboy and two Dallas police officers, whom despite his apparent compromised state and facial/head injuries and being advised by Plaintiff of his fall, allowed Plaintiff to walk away from

2

the premises. *See id.* [D.E. 16 at 26]. At approximately 12:45 a.m., Plaintiff contends that paramedics Dwaine N. Helton and Michael Milam kidnapped him using unreasonable physical force and transported him to Parkland. *See id.* [D.E. 16 at 26]. Plaintiff contends that as "a reasonable person trying to free himself from unlawful and/or unreasonable restraint, battery, and/or detention, Plaintiff struggled and growled/yelled, demanding to be release." *See id.* [D.E. 16 at 27]. Plaintiff further contends that his "yells were such that some saliva unintentionally escaped his mouth as he made his pleas," but that he never attempted "to bite or injure Defendants Helton, Milam, or anyone else." *See id.* [D.E. 16 at 27].

Plaintiff alleges that in the early morning of September 15, 2014, he was held captive at Parkland and without his consent, the staff at Parkland "cut off his clothes, destroying his shirt, pants, and underwear, and stole his wallet, money, identification, credit cards, insurance cards, cellular phone and related items from him by way of strong arm robbery and/or robbery [b]y virtue of restrain and/or medication." *See id.* [D.E. 16 at 30]. However, Plaintiff states that at approximately 12:30 p.m. of that day, his clothing, wallet, and telephone were returned to him and he was released from Parkland. *See id.* [D.E. 16 at 34]. Plaintiff alleges that he was subjected to numerous unauthorized procedures and treatments during his transportation to and during his stay at Parkland. *See id.* [D.E. 16 at 30-34]. Plaintiff further contends that "[a]t no time did [he] give any relevant Defendant consent for treatment or billing, nor did he ever consent to this outrageous intrusion as to his personal privacy." *See id.* [D.E. 16 at 30].

On January 24, 2015, the City of Dallas filed its Motion to Dismiss Plaintiff's Federal Claims Alleged Against It In Plaintiff's First Amended Complaint [D.E. 33] ("Motion to Dismiss Federal Claims"); Motion to Dismiss State Claims [D.E. 34]; and Amended Motion to Dismiss Federal

Claims [D.E. 36]. The Motion to Dismiss Federal Claims has subsequently been denied as moot. *See* Order [D.E. 106]. In the Motion to Dismiss State Claims [D.E. 34], the City of Dallas argues that Plaintiff's state tort claim against it must be dismissed because of governmental immunity. *See* Mot. to Dismiss [D.E. 34 at 4]. In addition, the City of Dallas argues that Plaintiff's Section 1983 claim against it must be dismissed because Plaintiff failed to allege municipal liability. *See* Am. Mot. to Dismiss [D.E. 36 at 4-8]. Plaintiff filed his response on January 26, 2015 [D.E. 41].

## **STANDARD OF REVIEW**

Under Rule 12(b)(6), a court examines pleadings by accepting all well-pleaded facts as true and viewing them in a light most favorable to the plaintiff. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). In order to survive a Rule 12(b)(6) motion to dismiss, the complaint must plead enough facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has facial plausibility where the plaintiff alleges facts that allows the court to draw the reasonable inference that the defendant is liable for the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]"). If the well-pleaded facts do not allow the court to infer more than a possibility of misconduct, the complaint has only alleged, but has not shown that the pleader is entitled to the relief sought. *Iqbal*, 556 U.S. at 679 (alteration omitted) (quoting FED. R. CIV. P. 8(a)(2)). Furthermore, under Federal Rule of Civil Procedure 8(a)(2) ("Rule 8(a)(2)"), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled

to relief." Although Rule 8(a)(2) does not require detailed factual allegations, mere labels and conclusions do not suffice. *See Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "'[A] formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). In addition, while courts liberally construe the pleadings of *pro se* litigants, *pro se* parties are not exempt from complying with court rules of procedural and substantive law. *Birl v. Estelle*, 660 F.2d 592, 593 (5th Cir. 1981) (citing *Faretta v. California*, 422 U.S. 806, 834 n.46 (1975)).

## ANALYSIS

### Texas Tort Claims Act Claim

The City of Dallas argues that Plaintiff's Texas Tort Claims Act ("TTCA") claim should be dismissed because it is immune from suit under the doctrine of governmental immunity. *See Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 694 n.3 (Tex. 2003) ("Courts often use the terms sovereign immunity and governmental immunity interchangeably. However, they involve two distinct concepts. Sovereign immunity refers to the State's immunity from suit and liability. . . . Governmental immunity, on the other hand, protects political subdivisions of the State, including counties, cities, and school districts.") (citations omitted). Under the doctrine of governmental immunity, cities retain immunity from suit unless it is expressly waived by the legislature. *See City of Houston v. Williams*, 353 S.W.3d 128, 134 (Tex. 2011) ("Like sovereign immunity, governmental immunity can be waived, but we defer to the Legislature to do so by statute."). "The [Texas] Legislature has mandated that a statute shall not be construed as waiving immunity absent 'clear and unambiguous language.'" *Id.* (citing TEX. GOV'T CODE § 311.034; *Tooke v. City of Mexia*, 197 S.W.3d 325, 328-29 (Tex. 2006)). The City of Dallas contends that because there is no such waiver

of immunity, Plaintiff's TTCA claim fails. *See* Mot. to Dismiss [D.E. 34 at 4-5].

"The Texas Tort Claims Act specifically states that a person having a claim under the Act may sue a governmental unit, including a city, for damages that are allowed by the Act." *Huong v. City of Port Arthur*, 961 F. Supp. 1003, 1008 (E.D. Tex. 1997) (citing TEX. CIV. PRAC. & REM. CODE § 101.025, 101.001(2)(B)). Damages against governmental units that are allowed by TTCA are for:

> (1) property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within the scope of employment if:
> > (A) the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and
> > (B) the employee would be personally liable to the claimant according to Texas law; and
> 
> (2) personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.

TEX. CIV. PRAC. & REM. CODE § 101.021. "The TTCA does not apply to any claim 'arising out of assault, battery, false imprisonment, or any other intentional tort.'" *Wright v. City of Garland*, No. 3:10-CV-1852-D, 2014 WL 1492356, at *10 (N.D. Tex. Apr. 16, 2014) (citing TEX. CIV. PRAC. & REM. CODE § 101.057).

The City of Dallas argues that Plaintiff cannot circumvent the intentional-tort exception by framing his claim in terms of negligence. *See* Mot. to Dismiss [D.E. 34 at 4]. "If a plaintiff pleads facts which amount to an intentional tort, no matter if the claim is framed as negligence, the claim generally is for an intentional tort and is barred by the TTCA. A plaintiff cannot circumvent the intentional tort exception by couching his claims in terms of negligence." *Wright*, 2014 WL 1492356, at *10 (internal quotations and citations omitted). Plaintiff's allegations against the City

of Dallas assert intentional conduct. *See* Pl.'s Am. Compl. [D.E. 16 at 45-47]. Plaintiff alleges the following conduct: "involuntary kidnapping, seizure, capture, physical attack upon, imprisonment, forced sedation, and/or medical treatment," and contends that such conduct "constitute[s] unlawful offenses as to the laws of the State of Texas, including, but not necessarily limited to, battery [and] false imprisonment." *See id.* [D.E. 16 at 46]. Therefore, Plaintiff's TTCA claim against the City of Dallas should be dismissed.

### Section 1983 Claim

A municipality is subject to suit under Section 1983 under certain circumstances. *See Wright*, 2014 WL 1492356, at *7 (citing *Monell v. Dep't of Social Servs. of N.Y.*, 436 U.S. 658, 690 (1978)). A municipality "is not liable under § 1983 on the theory of *respondeat superior*," but can be held liable for violation of constitutional rights if the deprivation resulted from an official policy or custom. *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009); *Wright*, 2014 WL 1492356, at *7 (citing *Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001)). Municipal liability under Section 1983 requires three elements: "(1) an official policy (or custom), of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy or custom." *Wright*, 2014 WL 1492356, at *7 (quoting *Valle v. City of Houston*, 613 F.3d 536, 541-42 (5th Cir. 2010); *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002)).

"A policy or custom is official only when it results from the decision or acquiescence of the municipal officer or body with final policymaking authority over the subject matter of the offending policy." *Peterson*, 588 F.3d at 847 (quoting *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989)) (internal quotations omitted). An official "'policy can be shown through evidence of an

actual policy, regulation, or decision that is officially adopted and promulgated by lawmakers or others with policymaking authority.'" *Wright*, 2014 WL 1492356, at *7 (quoting *Valle*, 613 F.3d at 542; citing *Burge v. St. Tammany Parish*, 336 F.3d 363, 369 (5th Cir. 2003)). "Although a single decision by a policy maker may, under certain circumstances, constitute a policy for which a municipality may be liable, this single incident exception is extremely narrow and gives rise to municipal liability only if the municipal actor is a final policymaker." *Id.* (citing *Valle*, 613 F.3d at 542) (internal quotations and alterations omitted). An official custom is "'a persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy.'" *Id.* (quoting *Piotrowski*, 237 F.3d at 579; *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984)).

In order to "satisfy the second element [of municipal liability], the plaintiff must adequately plead that actual or constructive knowledge of a custom is attributable to the governing body of the municipality or to an official to whom that body has delegated policy-making authority." *Id.* (internal quotations, alterations, and citations omitted). "Liability attaches only when a final policymaker (as distinguished from a final decisionmaker), who has the responsibility for making law or setting policy in any given area of a local government's business, establishes the municipal policy with respect to the action ordered." *Id.* (Internal quotations and citations omitted). "The third element requires that the plaintiff adequately plead that the municipal policy or custom was the 'moving force' of the constitutional deprivation, which requires a 'high threshold of proof.'" *Id.* at *8 (citing *Piotrowski*, 237 F.3d at 580; *Monell*, 436 U.S. at 694). The plaintiff "'must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link

between the municipal action and the deprivation of federal rights.'" *Id.* (citing *Valle*, 613 F.3d at 542; *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997)). "The plaintiff therefore 'must demonstrate that a municipal decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision.'" *Id.* (citing *Valle*, 613 F.3d at 542; *Brown*, 520 U.S. at 411).

The City of Dallas contends that other than Plaintiff's conclusory allegation that there was a custom having the force of municipal policy, Plaintiff failed to allege municipal liability because Plaintiff does not specifically identify the official policy or custom alleged to have caused the constitutional violation and resulting injury. *See* Def.'s Am. Mot. to Dismiss [D.E. 36 at 4-9]. Under Count VI of his Amended Complaint, Plaintiff states that the following conduct by the City of Dallas violated his Fourth and Fourteenth Amendment rights:

a. failure to properly train its employees;

b. failure to prevent policies or procedures in place that cause or encourage violations of the federal civil rights of persons such as Plaintiff;

c. allowed a culture of misconduct by way of deliberate indifference of the rights of persons such as Plaintiff;

d. extensive evidence supports a conclusion that the City of Dallas and the relevant final policymakers breached their duties consistently despite actual or constructive notice of a culture of unconstitutional or abusive behavior in various City of Dallas departments;

e. allowed or encouraged the excessive or unjustified use of Texas Mental Health Code 573 as a basis to routinely capture, batter, restrain, sedate, and transport persons contrary to the federal civil right of persons including, but not limited to Plaintiff;

f. allowed or encouraged the improper use of physical or chemical restraints and sedation to forcibly imprison, detain, or render unconscious persons who refuse medical treatment; and

g. failure to have adequate policies or procedures in place for "off duty" policy officers.

*See* Am. Compl. [D.E. 16 at 47-48].

As the City of Dallas contends, Plaintiff fails to specifically identify any other instance where another individual received similar treatment as he alleges here. *See* Am. Mot. to Dismiss [D.E. 36 at 6-7]; *Hatcher v. City of Grand Prairie*, No. 3:14-CV-432-M, 2015 WL 181763, at *5 (N.D. Tex. Jan. 14, 2015) ("Plaintiffs fail to allege any factual basis to support a particular policy or custom-formal or informal-that led to the constitutional violations alleged in their complaint. . . .They do not allege facts to establish any other instances where an individual has been shot or tasered for noncompliance with officer commands alone or any other information to suggest that any such conduct constitutes an unwritten custom of Grand Prairie."). "Isolated violations are not the persistent, often repeated, constant violations, that constitute custom and policy as required for municipal section 1983 liability." *Bennett v. City of Slidell*, 728 F.2d 762, 768 n.3 (5th Cir. 1984).

Furthermore, as the City of Dallas argues, Plaintiff does not allege facts supporting the existence of an official policy or custom, the force of which was the legal cause of the alleged unconstitutional conduct. *See* Am. Mot. to Dismiss [D.E. 36 at 6]. "A plaintiff must identify the policy, connect the policy to the governmental entity itself, and show that his injury was incurred because of the application of that specific provision." *Hatcher*, 2015 WL 181763, at *5 (citing *White v. Jackson*, No. 7:13-CV-50-O, 2014 WL 99976, at *4 (N.D. Tex. Jan.10, 2014); *Bennett v. City of Slidell*, 728 F.2d 762, 767 (5th Cir.1984)). In demonstrating the causal link between the municipal action and the deprivation of constitutional rights, Plaintiff must allege facts to permit the inference that the "municipal decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow." *Wright*, 2014 WL 1492356, at *8; *see also Goins v. City of Sansom Park*, No. 4:14-CV-365-O, 2015 WL 3953795, at *6 (N.D. Tex. May 29, 2015) ("The

Fifth Circuit has emphasized that the moving-force and deliberate-indifference elements of municipal liability must not be diluted, for where a court fails to adhere to rigorous requirements of culpability and causation, municipal liability collapses into respondeat superior liability.") (citing *James v. Harris Cnty.*, 577 F.3d 612, 617 (5th Cir. 2009)) (internal quotations and alterations omitted). As the City of Dallas argues, Plaintiff failed to plead facts that permit the Court to infer that the final policymakers were deliberately indifferent to a known or obvious risk of the alleged constitutional harm. *See* Am. Mot. to Dismiss [D.E. 36 at 8-9]. Therefore, Plaintiff also failed to allege municipal liability on this basis. *See Moreno v. City of Dallas*, No. 3:13-CV-4106-B, 2015 WL 3890467, at *11 (N.D. Tex. June 18, 2015) ("A review of Plaintiff's allegations, taken as true for the purpose of deciding the present motion to dismiss, do not permit a reasonable inference that the municipality engaged in deliberate indifference . . . . In sum, Plaintiff has alleged facts that are insufficient to indicate the existence of a policy that encouraged the use of excessive force. Because Plaintiff has failed to present allegations that identify a policymaker or a custom or policy of excessive use of force, her pleadings do not support municipal liability on her Section 1983 claim.") (citing *Kitchen v. Dallas County*, 759 F.3d 468, 484 (5th Cir. 2014)).

In sum, the undersigned is unable to construe Plaintiff's conclusory allegations as sufficiently putting the City of Dallas on notice of the policy or custom which caused the deprivation of Plaintiff's constitutional rights. *See Henrise v. Horvath*, 174 F. Supp. 2d 493, 502 (N.D. Tex. 2001) ("Requiring a plaintiff to identify the specific policy or custom and allege that the policy or custom adopted by the municipality . . . was the 'moving force' behind the constitutional violation . . . . puts a defendant on notice of the grounds on which a plaintiff's claim rests. In other words, the allegations of a complaint must not be conclusory. . . . Conclusory allegations cannot survive a

motion to dismiss.") (citing *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992)). While the undersigned liberally construed Plaintiff's Amended Complaint due to his *pro se* status, he is not exempt from complying with court rules of procedural and substantive law. *See Birl*, 660 F.2d at 593. Because Plaintiff failed to allege municipal liability under Section 1983, the undersigned recommends that the Court dismiss Plaintiff's Section 1983 claim against the City of Dallas.

## RECOMMENDATION

For the foregoing reasons, the undersigned respectfully recommends that the Court **GRANT** the City of Dallas' Motion to Dismiss State Claims [D.E. 34] and Amended Motion to Dismiss Federal Claims [D.E. 36].

**SO RECOMMENDED**, this 21 day of July, 2015.

PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE

## NSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT

The United States District Clerk shall serve a true copy of these findings, conclusions, and recommendation on the parties. Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions, and recommendation must serve and file written objections within fourteen days after service of the findings, conclusions, and recommendation. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory, or general objections. A party's failure to file such written objections to these proposed findings, conclusions, and recommendation shall bar that party from a *de novo* determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985). Additionally, any failure to file written objections to the proposed findings, conclusions, and recommendation within fourteen days after service shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superceded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).