UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JASON NIEMAN, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | No. 3:14-CV-3897-M (BF) |
| | § | |
| CITY OF DALLAS, et al., | § | |
| Defendants. | § | |

FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

This case has been referred to the United States Magistrate Judge for pretrial management.

Before the Court is defendant John McKinney's ("McKinney") Rule 12(b)(6) Motion to Dismiss

Plaintiff's Claims Alleged Against Him [D.E. 32] ("Motion to Dismiss"). For the following reasons,

the undersigned recommends that the Court GRANT McKinney's Motion to Dismiss [D.E. 32].

BACKGROUND

Plaintiff Jason Nieman ("Plaintiff") brings this suit alleging personal injury and violations

of his civil rights under Title 42, United States Code, Section 1983 ("Section 1983") in connection

with events that took place on September 14, 2014 at Concrete Cowboy located on Cedar Springs

Road in Dallas, Texas. *See* Am. Compl. [D.E. 16 at 24]. On that night, Plaintiff contends that he

consumed 4 glasses of wine with dinner between 6:00 p.m. and 9:00 p.m. at a restaurant located at

the Adolphus Hotel but that he was not intoxicated when he left the restaurant. *See id.* [D.E. 16 at

24]. At approximately 9:00 p.m., Plaintiff contends that he went to a nearby venue, OE Penguin in

search of a karaoke bar, but upon discovering that there was no karaoke at that location, Plaintiff

proceeded to the Concrete Cowboy with an individual named "Jason" and an unidentified female.

*See id.* [D.E. 16 at 24]. Plaintiff does not recall consuming any alcoholic beverages at OE Penguin.

*See id.* [D.E. 16 at 24].

Upon arriving at Concrete Cowboy, Plaintiff contends that he consumed a beverage given to him by Jason which he believed to be vodka and Red Bull, but was contaminated with a drug appearing to have been GHB or Rohypnol. *See id.* [D.E. 16 at 24-25]. Within few minutes of consuming the contaminated beverage, Plaintiff contends that his judgment, physical control, and memory were greatly compromised but alleges that the staff at Concrete Cowboy failed to reasonably prevent and/or detect the "drugging incident" and allowed Plaintiff to be provided more alcoholic beverages despite his obviously compromised condition. *See id.* [D.E. 16 at 25]. Plaintiff contends that several hours later, he was attempting to "escape the clutches" of Jason and his unidentified female companion when he fell on a staircase at Concrete Cowboy which he believes was caused by: (1) the consumption of the contaminated beverage; (2) the defective and/or dangerous condition of the staircase and/or handrail; and (3) inadequate lighting in the staircase. *See id.* [D.E. 16 at 25-26]. Plaintiff contends that he suffered a hard fall which resulted in "serious facial/cranial impact." *See id.* [D.E. 16 at 26]. Plaintiff contends that as a result of the fall, he "suffered a deep abrasion/laceration to his nose, a serious nasal contusion, [and a] non-serious concussion from the fall." *See id.* [D.E. 16 at 26].

Shortly after mid-night, Plaintiff contends that he encountered the owner of Concrete Cowboy and two Dallas police officers, whom despite his apparent compromised state and facial/head injuries and being advised by Plaintiff of his fall, allowed Plaintiff to walk away from the premises. *See id.* [D.E. 16 at 26]. At approximately 12:45 a.m., Plaintiff contends that paramedics Dwaine N. Helton and Michael Milam kidnapped him using unreasonable physical force and transported him to Parkland. *See id.* [D.E. 16 at 26]. Plaintiff contends that as "a reasonable

person trying to free himself from unlawful and/or unreasonable restraint, battery, and/or detention, Plaintiff struggled and growled/yelled, demanding to be release." *See id.* [D.E. 16 at 27]. Plaintiff further contends that his "yells were such that some saliva unintentionally escaped his mouth as he made his pleas," but that he never attempted "to bite or injure Defendants Helton, Milam, or anyone else." *See id.* [D.E. 16 at 27].

Plaintiff alleges that in the early morning of September 15, 2014, he was held captive at Parkland and without his consent, the staff at Parkland "cut off his clothes, destroying his shirt, pants, and underwear, and stole his wallet, money, identification, credit cards, insurance cards, cellular phone and related items from him by way of strong arm robbery and/or robbery [b]y virtue of restrain and/or medication." *See id.* [D.E. 16 at 30]. However, Plaintiff states that at approximately 12:30 p.m. of that day, his clothing, wallet, and telephone were returned to him and he was released from Parkland. *See id.* [D.E. 16 at 34]. Plaintiff alleges that he was subjected to numerous unauthorized procedures and treatments during his transportation to and during his stay at Parkland. *See id.* [D.E. 16 at 30-34]. Plaintiff further contends that "[a]t no time did [he] give any relevant Defendant consent for treatment or billing, nor did he ever consent to this outrageous intrusion as to his personal privacy." *See id.* [D.E. 16 at 30].

On January 24, 2015, McKinney filed his Motion to Dismiss [D.E. 32]. In the Motion to Dismiss, McKinney argues that Plaintiff's Section 1983 claim against him should be dismissed because he failed to plead facts to permit the Court to make a reasonable inference of a causal connection between anything McKinney did or failed to do in his capacity as a supervisor and the actions of the paramedics who allegedly unlawfully detained and transported Plaintiff to Parkland against his will. *See* Mot. to Dismiss [D.E. 32 at 4]. McKinney further argues that Plaintiff's Section

1983 claim against him should be dismissed because his Fourteenth Amendment claim fails as a matter of law. *See id.* [D.E. 32 at 6]. Plaintiff filed his response on January 26, 2015 [D.E. 40].

## STANDARD OF REVIEW

Under Rule 12(b)(6), a court examines pleadings by accepting all well-pleaded facts as true and viewing them in a light most favorable to the plaintiff. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). In order to survive a Rule 12(b)(6) motion to dismiss, the complaint must plead enough facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has facial plausibility where the plaintiff alleges facts that allows the court to draw the reasonable inference that the defendant is liable for the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]"). If the well-pleaded facts do not allow the court to infer more than a possibility of misconduct, the complaint has only alleged, but has not shown that the pleader is entitled to the relief sought. *Iqbal*, 556 U.S. at 679 (alteration omitted) (citing FED. R. CIV. P. 8(a)(2)). Furthermore, under Federal Rule of Civil Procedure 8(a)(2) ("Rule 8(a)(2)"), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Although Rule 8(a)(2) does not require detailed factual allegations, mere labels and conclusions do not suffice. *See Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "'[A] formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). In addition, while courts liberally construe the pleadings of *pro se* litigants, *pro se*

4

parties are not exempt from complying with court rules of procedural and substantive law. *Birl v. Estelle*, 660 F.2d 592, 593 (5th Cir. 1981) (citing *Faretta v. California*, 422 U.S. 806, 834 n.46 (1975)).

## ANALYSIS

Section 1983 does not create any substantive rights, but instead was designed to provide a remedy for violations of federal statutory and constitutional rights. *See Sepulvado v. Jindal*, 729 F.3d 413, 420 n.17 (5th Cir. 2013); *Sw. Bell Tel., LP v. City of Houston*, 529 F.3d 257, 260 (5th Cir. 2008). There are two essential elements to a Section 1983 claim: (1) the conduct in question must be committed by a person acting under color of state law; and (2) the conduct deprives the plaintiff of a right secured by the Constitution or the laws of the United States. *See Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013).

"Under section 1983, supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability." *Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir. 1987) (citing *Thibodeaux v. Arceneaux*, 768 F.2d 737, 739 (5th Cir. 1985); *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986)). A supervisor may be held liable under Section 1983 only if "'(1) he affirmatively participates in the acts that cause the constitutional deprivation, or (2) he implements unconstitutional policies that causally result in the constitutional injury.'" *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011) (quoting *Gates v. Texas Dep't of Prot. & Reg. Servs.*, 537 F.3d 404, 435 (5th Cir. 2008)). "'In order to establish supervisor liability for constitutional violations committed by subordinate employees, plaintiffs must show that the supervisor act[ed], or fail[ed] to act, with deliberate indifference to violations of others' constitutional rights committed by their subordinates.'" *Id.* (quoting *Gates*, 537 F.3d at 435). "'A failure to adopt a policy can be deliberately

indifferent when it is obvious that the likely consequences of not adopting a policy will be a deprivation of constitutional rights.'" *Id.* (quoting *Rhyne v. Henderson Cnty.*, 973 F.2d 386, 392 (5th Cir. 1992)). A supervisor may also be held liable for the failure to supervise or train where: "'(1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference.'" *Id.* (quoting *Goodman v. Harris Cnty.*, 571 F.3d 388, 395 (5th Cir. 2009)).

McKinney argues that Plaintiff's allegations fail to state any plausible claim against him. *See* Mot. to Dismiss [D.E. 32 at 4]. McKinney argues that Plaintiff does not plead that he personally participated in any of the events described in the Amended Complaint - he does not plead that he was physically present, had knowledge of, or was in any way personally involved in the actions of the paramedics who allegedly unlawfully detained him and transported him to Parkland against his will. *See id.* [D.E. 32 at 4]. McKinney further contends that Plaintiff does not plead any facts that allow the Court to reasonably infer a causal connection between something that he did or failed to do in his capacity as a supervisor and the actions of the paramedics. *See id.* [D.E. 32 at 4]. McKinney argues that Plaintiff does not even plead facts that establish that McKinney was the paramedics' supervisor. *See id.* [D.E. 32 at 4]. McKinney contends that Plaintiff instead pleads the bare conclusion that McKinney "had a duty to supervise Defendants Milam and Helton and to deter and/or prevent their actions in abusing and/or committing constitutional rights violations against Plaintiff." *See id.* [D.E. 32 at 4]; Am. Compl. [D.E. 16 at 36]. Plaintiff further stated that "McKinney failed to meet such duties and/or was deliberately indifferent to the actions of persons such as Milam and Helton," and that "McKinney violated Plaintiff's rights by attempting to wrongfully bill and/or

6

charge him for alleged services, including unauthorized ambulance and/or medical charges." *See*

Am. Compl. [D.E. 16 at 36]. Under Count VI of his Amended Complaint, Plaintiff states that the

following conduct by McKinney violated his Fourth and Fourteenth Amendment rights:

a. failure to properly train employees;

b. failure to prevent policies or procedures in place that cause or encourage violations of the federal civil rights of persons such as Plaintiff;

c. allowed a culture of misconduct by way of deliberate indifference of the rights of persons such as Plaintiff;

d. allowed or encouraged the excessive or unjustified use of Texas Mental Health Code 573 as a basis to routinely capture, batter, restrain, sedate, and transport persons contrary to the federal civil right of persons including, but not limited to Plaintiff; and

f. allowed or encouraged the improper use of physical or chemical restraints and sedation to forcibly imprison, detain, or render unconscious persons who refuse medical treatment.

*See id.* [D.E. 16 at 47-48].

As McKinney contends, Plaintiff's conclusory allegations do not suffice, and Plaintiff has

wholly failed to allege supervisor liability under Section 1983. Plaintiff's allegations do not permit

the Court to reasonably infer that McKinney engaged in deliberate indifference or that there is a

causal connection between McKinney's failure to train or supervise and the deprivation of

constitutional rights. Nor can Plaintiff's allegations be construed as stating that McKinney

affirmatively participated in the conduct in question with the paramedics. While the undersigned

liberally construed Plaintiff's allegations due to his *pro se* status, he is not exempt from complying

with court rules of procedural and substantive law. *See Birl*, 660 F.2d at 593. Because Plaintiff failed

to allege supervisor liability under Section 1983, the undersigned recommends that the Court dismiss

Plaintiff's Section 1983 claim against McKinney.

## RECOMMENDATION

For the foregoing reasons, the undersigned respectfully recommends that the Court **GRANT**

McKinney's Motion to Dismiss [D.E. 32].

**SO RECOMMENDED**, this _22_ day of July, 2015.

PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE

## NSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT

The United States District Clerk shall serve a true copy of these findings, conclusions, and recommendation on the parties. Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions, and recommendation must serve and file written objections within fourteen days after service of the findings, conclusions, and recommendation. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory, or general objections. A party's failure to file such written objections to these proposed findings, conclusions, and recommendation shall bar that party from a *de novo* determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985). Additionally, any failure to file written objections to the proposed findings, conclusions, and recommendation within fourteen days after service shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superceded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).