UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JASON NIEMAN, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | No. 3:14-CV-3897-M (BF) |
| | § | |
| CITY OF DALLAS, et al., | § | |
| Defendants. | § | |

## AMENDED FINDINGS, CONCLUSIONS AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE

This case has been referred to the United States Magistrate Judge for pretrial management. On July 20, 215, the undersigned entered Findings, Conclusions and Recommendation [D.E. 107] on Defendant Dallas County Hospital District d/b/a Parkland Health & Hospital System's ("Parkland") Motion to Dismiss Plaintiff's First Amended Complaint at Law Under Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)") ("Motion to Dismiss") [D.E. 27]. The undersigned amends the July 20, 2015 Findings, Conclusions and Recommendation [D.E. 107] as follows. For the following reasons, the undersigned recommends that the Court GRANT Parkland's Motion to Dismiss [D.E. 27].

## BACKGROUND

Plaintiff Jason Nieman ("Plaintiff") brings this suit alleging personal injury and violations of his civil rights under Title 42, United States Code, Section 1983 ("Section 1983") in connection with events that took place on September 14, 2014 at Concrete Cowboy located on Cedar Springs Road in Dallas, Texas. *See* Am. Compl. [D.E. 16 at 24]. On that night, Plaintiff contends that he consumed 4 glasses of wine with dinner between 6:00 p.m. and 9:00 p.m. at a restaurant located at the Adolphus Hotel but that he was not intoxicated when he left the restaurant. *See id.* [D.E. 16 at

24]. At approximately 9:00 p.m., Plaintiff contends that he went to a nearby venue, OE Penguin in search of a karaoke bar, but upon discovering that there was no karaoke at that location, Plaintiff proceeded to the Concrete Cowboy with an individual named "Jason" and an unidentified female. *See id.* [D.E. 16 at 24]. Plaintiff does not recall consuming any alcoholic beverages at OE Penguin. *See id.* [D.E. 16 at 24].

Upon arriving at Concrete Cowboy, Plaintiff contends that he consumed a beverage given to him by Jason which he believed to be vodka and Red Bull, but was contaminated with a drug appearing to have been GHB or Rohypnol. *See id.* [D.E. 16 at 24-25]. Within few minutes of consuming the contaminated beverage, Plaintiff contends that his judgment, physical control, and memory were greatly compromised but alleges that the staff at Concrete Cowboy failed to reasonably prevent and/or detect the "drugging incident" and allowed Plaintiff to be provided more alcoholic beverages despite his obviously compromised condition. *See id.* [D.E. 16 at 25]. Plaintiff contends that several hours later, he was attempting to "escape the clutches" of Jason and his unidentified female companion when he fell on a staircase at Concrete Cowboy which he believes was caused by: (1) the consumption of the contaminated beverage; (2) the defective and/or dangerous condition of the staircase and/or handrail; and (3) inadequate lighting in the staircase. *See id.* [D.E. 16 at 25-26]. Plaintiff contends that he suffered a hard fall which resulted in "serious facial/cranial impact." *See id.* [D.E. 16 at 26]. Plaintiff contends that as a result of the fall, he "suffered a deep abrasion/laceration to his nose, a serious nasal contusion, [and a] non-serious concussion from the fall." *See id.* [D.E. 16 at 26].

Shortly after mid-night, Plaintiff contends that he encountered the owner of Concrete Cowboy and two Dallas police officers, whom despite his apparent compromised state and

facial/head injuries and being advised by Plaintiff of his fall, allowed Plaintiff to walk away from the premises. *See id.* [D.E. 16 at 26]. At approximately 12:45 a.m., Plaintiff contends that paramedics Dwaine N. Helton and Michael Milam kidnapped him using unreasonable physical force and transported him to Parkland. *See id.* [D.E. 16 at 26]. Plaintiff contends that as "a reasonable person trying to free himself from unlawful and/or unreasonable restraint, battery, and/or detention, Plaintiff struggled and growled/yelled, demanding to be release." *See id.* [D.E. 16 at 27]. Plaintiff further contends that his "yells were such that some saliva unintentionally escaped his mouth as he made his pleas," but that he never attempted "to bite or injure Defendants Helton, Milam, or anyone else." *See id.* [D.E. 16 at 27].

Plaintiff alleges that in the early morning of September 15, 2014, he was held captive at Parkland and without his consent, the staff at Parkland "cut off his clothes, destroying his shirt, pants, and underwear, and stole his wallet, money, identification, credit cards, insurance cards, cellular phone and related items from him by way of strong arm robbery and/or robbery [b]y virtue of restrain and/or medication." *See id.* [D.E. 16 at 30]. However, Plaintiff states that at approximately 12:30 p.m. of that day, his clothing, wallet, and telephone were returned to him and he was released from Parkland. *See id.* [D.E. 16 at 34]. Plaintiff alleges that he was subjected to numerous unauthorized procedures and treatments during his transportation to and during his stay at Parkland. *See id.* [D.E. 16 at 30-34]. Plaintiff further contends that "[a]t no time did [he] give any relevant Defendant consent for treatment or billing, nor did he ever consent to this outrageous intrusion as to his personal privacy." *See id.* [D.E. 16 at 30].

On January 23, 2015, Parkland filed its motion to dismiss Plaintiff's Section 1983 and Texas Tort Claims Act claims. *See* Def.'s Mot. [D.E. 27 at 3-10]. Parkland argues that Plaintiff fails to

adequately allege municipal liability for his Section 1983 claim and that Plaintiff's Texas Tort Claims Act ("TTCA") claim is barred under the doctrine of sovereign immunity. *See id.* [D.E. 27 at 3-10]. Plaintiff filed his response on January 26, 2015 [D.E. 37].

## STANDARD OF REVIEW

Under Rule 12(b)(6), a court examines pleadings by accepting all well-pleaded facts as true and viewing them in a light most favorable to the plaintiff. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). In order to survive a Rule 12(b)(6) motion to dismiss, the complaint must plead enough facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has facial plausibility where the plaintiff alleges facts that allows the court to draw the reasonable inference that the defendant is liable for the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]"). If the well-pleaded facts do not allow the court to infer more than a possibility of misconduct, the complaint has only alleged, but has not shown that the pleader is entitled to the relief sought. *Iqbal*, 556 U.S. at 679 (alteration omitted) (quoting FED. R. CIV. P. 8(a)(2)). Furthermore, under Federal Rule of Civil Procedure 8(a)(2) ("Rule 8(a)(2)"), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Although Rule 8(a)(2) does not require detailed factual allegations, mere labels and conclusions do not suffice. *See Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "'[A] formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550

U.S. at 555). In addition, while courts liberally construe the pleadings of *pro se* litigants, *pro se* parties are not exempt from complying with court rules of procedural and substantive law. *Birl v. Estelle*, 660 F.2d 592, 593 (5th Cir. 1981) (citing *Faretta v. California*, 422 U.S. 806, 834 n.46 (1975)).

## ANALYSIS

### Section 1983 Claim

A municipality can be held liable for violation of Constitutional rights only if the deprivation resulted from an official policy. *See Monell v. Dep't of Social Servs. of N.Y.*, 436 U.S. 658, 694 (1978). Such a policy includes "a persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy." *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984). However, a municipality "is not liable under § 1983 on the theory of *respondeat superior*." *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009). Municipal liability under Section 1983 requires three elements: (1) a policymaker, (2) an official policy, and (3) a violation of a constitutional right where the moving force is the custom or policy. *Hampton Co. Nat'l Surety, LLC v. Tunica Cnty.*, 543 F.3d 221, 227 (5th Cir. 2008) (quoting *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)). "The description of a policy or custom and its relationship to the underlying constitutional violation, moreover, cannot be conclusory; it must contain specific facts." *Spiller v. City of Texas City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997).

Among other arguments, Parkland contends that Plaintiff failed to allege municipal liability because he does not specify which policy allegedly caused the constitutional violations and fails to

5

identify any pattern of similar instances where others were deprived of their constitutional rights as a result an alleged policy. *See* Def.'s Br. [D.E. 27 at 8-9]. Under Count IX of his Amended Complaint, Plaintiff states that the following conduct violated his Fourth and Fourteenth Amendment rights:

a. Parkland failed to properly train its employees, agents, executive officers, and/or independent contractors and failed to prevent policies or procedures that caused or encouraged violations of his civil rights;

b. "The history of unreasonable, abusive, and/or unconstitutional conduct by Parkland and/or UTSW staff is well documented. The events and/or abuses that the Plaintiff suffered has come despite numerous calls from state and local officials, national and/or local media, the courts, and/or other interested parties that Parkland and/or UTSW finally bring an end to such unconstitutional and improper conduct;"

c. Through act or omission allowed or encouraged its employees to "routinely capture, batter, restrain, sedate, and/or participate in transportation of persons contrary to their federal civil rights;" and

d. Parkland created a culture that caused its employees to prescribe or order unnecessary medical services or diagnostic testing, use improper or inappropriate chemicals or physical restraints, and disregard the wishes of persons who refuse medical services.

*See* Am. Compl. [D.E. 16 at 54-55].

As Parkland contends, Plaintiff fails to specify any other instances where another individual received similar treatment as he alleges here. *See* Def.'s Br. [D.E. 27 at 8-9]; *Hatcher v. City of Grand Prairie*, No. 3:14-CV-432-M, 2015 WL 181763, at *5 (N.D. Tex. Jan. 14, 2015) ("Plaintiffs fail to allege any factual basis to support a particular policy or custom-formal or informal-that led to the constitutional violations alleged in their complaint. . . . They do not allege facts to establish any other instances where an individual has been shot or tasered for noncompliance with officer commands alone or any other information to suggest that any such conduct constitutes an unwritten custom of Grand Prairie."). "Isolated violations are not the persistent, often repeated, constant

violations, that constitute custom and policy as required for municipal section 1983 liability." *Bennett v. City of Slidell*, 728 F.2d 762, 768 n.3 (5th Cir. 1984). Therefore, the undersigned is not able to construe Plaintiff's assertions as alleging a policy or custom.

Furthermore, as Parkland argues, Plaintiff does not specify which policy allegedly caused which constitutional violation. *See* Def.'s Br. [D.E. 27 at 8-9]. "A plaintiff must identify the policy, connect the policy to the governmental entity itself, and show that his injury was incurred because of the application of that specific provision." *Hatcher*, 2015 WL 181763, at *5 (citing *White v. Jackson*, No. 7:13-CV-50-O, 2014 WL 99976, at *4 (N.D. Tex. Jan.10, 2014); *Bennett v. City of Slidell*, 728 F.2d 762, 767 (5th Cir.1984)); *see also Henrise v. Horvath*, 174 F. Supp. 2d 493, 502 (N.D. Tex. 2001) ("Requiring a plaintiff to identify the specific policy or custom and allege that the policy or custom adopted by the municipality . . . was the 'moving force' behind the constitutional violation . . . . puts a defendant on notice of the grounds on which a plaintiff's claim rests. In other words, the allegations of a complaint must not be conclusory. . . . Conclusory allegations cannot survive a motion to dismiss.") (citing *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992)). The undersigned is unable to construe Plaintiff's conclusory allegations as identifying a policy or custom sufficient to put Parkland on notice of the Constitutional harm Plaintiff allegedly sustained. While the undersigned liberally construed Plaintiff's Amended Complaint due to his *pro se* status, he is not exempt from complying with court rules of procedural and substantive law. *See Birl*, 660 F.2d at 593. Because Plaintiff failed to allege municipal liability under Section 1983, the undersigned recommends that the Court dismiss Plaintiff's Section 1983 claim against Parkland.

Texas Tort Claims Act Claim

Parkland argues that Plaintiff's TTCA claim should be dismissed because it is immune from

suit under the doctrine of sovereign immunity. *See Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 694 n.3 (Tex. 2003) ("Sovereign immunity refers to the State's immunity from suit and liability. . . . In addition to protecting the State from liability, it also protects the various divisions of state government, including agencies, boards, hospitals, and universities.") (citations omitted). Under the doctrine of sovereign immunity, divisions of state government retain immunity from suit unless it is expressly waived by the Legislature. *See id.*; City *of Houston v. Williams*, 353 S.W.3d 128, 134 (Tex. 2011) ("[T]he state retains immunity from suit unless it has been expressly waived by the Legislature.") (citation omitted). Parkland contends that because there is no such waiver of immunity, Plaintiff's TTCA claim fails. *See* Def.'s Mot. [D.E. 27 at 3].

"The Texas Tort Claims Act specifically states that a person having a claim under the Act may sue a governmental unit . . . for damages that are allowed by the Act." *Huong v. City of Port Arthur*, 961 F. Supp. 1003, 1008 (E.D. Tex. 1997) (citing TEX. CIV. PRAC. & REM. CODE § 101.025, 101.001(2)(B)). Damages against governmental units that are allowed by the Act are for:

> (1) property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within the scope of employment if:
>     (A) the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and
>     (B) the employee would be personally liable to the claimant according to Texas law; and
> (2) personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.

TEX. CIV. PRAC. & REM. CODE § 101.021. "The TTCA does not apply to any claim 'arising out of assault, battery, false imprisonment, or any other intentional tort.'" *Wright v. City of Garland*, No. 3:10-CV-1852-D, 2014 WL 1492356, at *10 (N.D. Tex. Apr. 16, 2014) (citing TEX. CIV. PRAC. &

Rem. Code § 101.057).

Parkland argues that Plaintiff cannot circumvent the intentional-tort exception by framing his claims in terms of negligence. *See* Def.'s Mot. [D.E. 27 at 10]. "If a plaintiff pleads facts which amount to an intentional tort, no matter if the claim is framed as negligence, the claim generally is for an intentional tort and is barred by the TTCA. A plaintiff cannot circumvent the intentional tort exception by couching his claims in terms of negligence." *Wright*, 2014 WL 1492356, at *10 (internal quotations and citations omitted). Plaintiff's allegations against Parkland assert intentional conduct. *See* Pl.'s Am. Compl. [D.E. 16 at 51-58]. Plaintiff alleges that Parkland's employees falsely imprisoned him and administered medication and medical services against his will. *See id.* [D.E. 16 at 51-58]. Therefore, Plaintiff's TTCA claim against Parkland should be dismissed.

Parkland argues that the TTCA claim against its employees must also be dismissed because Texas Civil Practices and Remedies Code, Section 101.106 ("Section 101.106(e)") requires Plaintiff to choose at the time of filing suit whether he would proceed against Parkland or its employees, but Plaintiff improperly sued both. *See* Def.'s Mot. [D.E. 27 at 10]. Section 101.106(e) provides that "[i]f a suit is filed under this chapter against both a governmental unit and any of its employees, the employees shall immediately be dismissed on the filing of a motion by the governmental unit." Tex. Civ. Prac. & Rem. Code § 101.106(e). Therefore, the Court should dismiss Parkland's employees from this suit. *See Cunningham v. City of Balch Springs*, No. 3:14-CV-9-L, 2014 WL 4851576, at *7 (N.D. Tex. Sept. 30, 2014) ("The Individual Defendants, as employees of the City, seek dismissal of Plaintiff's state law claims of false arrest and intentional infliction of emotional distress. Because Cunningham filed suit under the Act against the City and the Individual Defendants, the Individual Defendants as employees must be dismissed immediately once the governmental entity files a motion

to dismiss. . . . As the City and the Individual Defendants have filed motions to dismiss, dismissal of these claims against the Individual Defendants is mandatory.").

## RECOMMENDATION

For the foregoing reasons, the undersigned respectfully recommends that the Court **GRANT** Parkland's Motion to Dismiss [D.E. 27].

**SO RECOMMENDED**, this 30 day of July, 2015.

_____
PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT

The United States District Clerk shall serve a true copy of these findings, conclusions, and recommendation on the parties. Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions, and recommendation must serve and file written objections within fourteen days after service of the findings, conclusions, and recommendation. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory, or general objections. A party's failure to file such written objections to these proposed findings, conclusions, and recommendation shall bar that party from a *de novo* determination by the District Court. See *Thomas v. Arn*, 474 U.S. 140, 150 (1985). Additionally, any failure to file written objections to the proposed findings, conclusions, and recommendation within fourteen days after service shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. See *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superceded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).