UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| JASON NIEMAN, § | |
| Plaintiff, § | |
| v. § | No. 3:14-CV-3897-M (BF) |
| E. STREET INVESTMENTS, L.L.C., § | |
| d/b/a CONCRETE COWBOY, et al., § | |
| Defendants. § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

This case has been referred to the United States Magistrate Judge for pretrial management. Before the Court is Frederick P. Cerise, M.D.'s ("Defendant") Motion to Dismiss Under Federal Rule of Civil Procedure ("Rule") 12(b)(6) [ECF No. 136] ("Motion to Dismiss"). For the following reasons, the undersigned recommends that the Court GRANT Defendant's Motion to Dismiss [ECF No. 136].

**BACKGROUND**

Jason Nieman ("Plaintiff") brings this suit alleging personal injury and violations of his civil rights under Title 42, United States Code, Section 1983 ("Section 1983") in connection with events that took place on September 14, 2014 at Concrete Cowboy, a bar located on Cedar Springs Road in Dallas, Texas. *See* Am. Compl. [ECF No. 16 at 24]. On that night, Plaintiff contends that he consumed 4 glasses of wine with dinner between 6:00 p.m. and 9:00 p.m. at a restaurant located at the Adolphus Hotel, but that he was not intoxicated when he left the restaurant. *See id.* [ECF No. 16 at 24]. Plaintiff states that, at approximately 9:00 p.m., he went to a nearby venue, O.E. Penguin, in search of a karaoke bar, but upon discovering that there was no karaoke at that location, Plaintiff proceeded to the Concrete Cowboy with an individual named "Jason" and an unidentified female companion. *See id.* [ECF No. 16 at 24]. Plaintiff states that he does not recall consuming any

alcoholic beverages at O.E. Penguin. *See id.* [ECF No. 16 at 24].

Plaintiff states that upon arriving at Concrete Cowboy, he consumed a beverage given to him by Jason, which he believed to be vodka and Red Bull, but was contaminated with a drug appearing to have been Gamma Hydroxybutyrate ("GHB") or Rohypnol. *See id.* [ECF No. 16 at 24-25]. Within a few minutes of consuming the contaminated beverage, Plaintiff contends that his judgment, physical control, and memory were greatly compromised, but alleges that the staff at Concrete Cowboy and nearby police officers failed to reasonably prevent and/or detect the "drugging incident." *See id.* [ECF No. 16 at 25]. Plaintiff alleges that the staff at Concrete Cowboy allowed him to be provided more alcoholic beverages, despite his obviously compromised condition. *See id.* [ECF No. 16 at 25]. Plaintiff contends that shortly thereafter, he was attempting to "escape the clutches" of Jason and his unidentified female companion when he fell on a staircase at Concrete Cowboy, which he believes was caused by the combination of: (1) the consumption of the contaminated beverage; (2) the defective and/or dangerous condition of the staircase and/or handrail; and (3) inadequate lighting in the staircase. *See id.* [ECF No. 16 at 25-26]. Plaintiff contends that he "suffered a hard fall with a serious facial/cranial impact." *See id.* [ECF No. 16 at 26]. Plaintiff states that as a result of his fall, he "suffered a deep abrasion/laceration to his nose, a serious nasal contusion, [and a] non-serious concussion." *See id.* [ECF No. 16 at 26].

Plaintiff contends that he encountered the owner of Concrete Cowboy and two City of Dallas police officers shortly after mid-night, all of whom, despite the fact that they "could see that Plaintiff [] was impaired" and that he "had suffered at least a moderately serious facial/head injury," and were further "advised that such injuries were the result of a fall on the premises," those individuals "simply allowed [Plaintiff] to walk on, despite his obviously compromised state." *See id.* [ECF No.

2

16 at 26]. Plaintiff alleges that at approximately 12:45 a.m. on September 15, 2014, paramedics Dwaine N. Helton and Michael Milam captured and kidnapped him using unreasonable physical force and transported him to Dallas County Hospital District d/b/a Parkland Health and Hospital System ("Parkland"). *See id.* [ECF No. 16 at 26]. Plaintiff contends that as "a reasonable person trying to free himself from unlawful and/or unreasonable restraint, battery, and/or detention, Plaintiff struggled and growled/yelled, demanding to be released." *See id.* [ECF No. 16 at 27]. Plaintiff further states that his "yells were such that some saliva unintentionally escaped his mouth as he made his pleas," but he never attempted "to bite or injure Defendants Helton, Milam, or anyone else." *See id.* [ECF No. 16 at 27]. Furthermore, Plaintiff alleges that Defendant Jessica L. Morrell ("Officer Morrell"), a City of Dallas law enforcement officer, violated her duty to prevent the paramedics from kidnapping Plaintiff against his will and transporting him to Parkland. *See id.* [ECF No. 16 at 28]. Furthermore, Plaintiff alleges that Officer Morell later created an Apprehension by a Peace Officer Without Warrant ("A.P.O.W.W.") form to make it appear that Plaintiff's capture, imprisonment, and battery were lawful. *See id.* [ECF No. 16 at 28].

Plaintiff alleges that in the early morning of September 15, 2014, he was held captive at Parkland, and that the staff at Parkland, without his consent, "cut off his clothes, destroying his shirt, pants, and underwear, and stole his wallet, money, identification, credit cards, insurance cards, cellular phone, and related items from him by way of strong arm robbery and/or robbery [b]y virtue of restrain and/or medication." *See id.* [ECF No. 16 at 29-30]. However, Plaintiff states that by approximately 1:45 p.m. of that same day, his clothing, wallet, and telephone were returned to him, and he was released from Parkland. *See id.* [ECF No. 16 at 34]. Plaintiff alleges that he was subjected to numerous unauthorized procedures and treatments during his transportation to and

3

during his stay at Parkland. *See id.* [ECF No. 16 at 27-34]. Plaintiff further contends that "[a]t no time did [he] give any relevant Defendant consent for treatment or billing, nor did he ever consent to this outrageous intrusion as to his personal privacy." *See id.* [ECF No. 16 at 30].

On August 14, 2015, Defendant filed his Motion to Dismiss [ECF No. 136]. Defendant contends that Plaintiff sues him solely in his capacity as the Chief Executive Officer ("CEO") of Parkland, and Plaintiff fails to plead facts that permit the Court to draw a reasonable inference that he had any personal involvement in the care and treatment provided to Plaintiff at Parkland. *See* Mot. to Dismiss [ECF No. 136 at 2, 5, 7]. Defendant also argues that Plaintiff fails to plead facts sufficient to support a supervisory liability claim against him, because Plaintiff failed to identify any policy or procedure that was the moving force of the alleged constitutional violations. *See id.* [ECF No. 136 at 2]. Defendant argues that he is further entitled to dismissal of the claims against him, because Plaintiff failed to plead facts, if true, that would overcome his qualified immunity defense. *See id.* [ECF No. 136 at 2]. Plaintiff filed his response on August 14, 2015 arguing that Defendant's Motion to Dismiss is untimely, and also that he adequately pleaded facts to state a Section 1983 claim against Defendant. *See* Resp. [ECF No. 140 at 2-10]. Defendant filed his reply on August 28, 2015. *See* Reply [ECF No. 156].

## STANDARD OF REVIEW

Under Rule 12(b)(6), a court examines pleadings by accepting all well-pleaded facts as true and viewing them in a light most favorable to the plaintiff. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). In order to survive a Rule 12(b)(6) motion to dismiss, the complaint must plead enough facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v.*

4

*Twombly*, 550 U.S. 544, 570 (2007). A claim has facial plausibility where the plaintiff alleges facts that allow the court to draw the reasonable inference that the defendant is liable for the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. If "the plaintiffs [] have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570. Furthermore, while the Court liberally construes the pleadings of *pro se* litigants in conducting its Rule (12)(b)(6) analysis, *pro se* parties are not exempt from complying with court rules of procedural and substantive law. *See Birl v. Estelle*, 660 F.2d 592, 593 (5th Cir. 1981) ("One who proceeds *pro se* with full knowledge and understanding of the risks involved acquires no greater rights than a litigant represented by a lawyer . . . . Rather, such a litigant acquiesces in and subjects himself to the established rules of practice and procedure." (citations omitted)).

## ANALYSIS

### Section 1983

"Section 1983 provides a claim against anyone who 'under color of any statute, ordinance, regulation, custom, or usage, of any State' violates another's constitutional rights." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (citing 42 U.S.C. § 1983). "'Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred.'" *Sepulvado v. Jindal*, 729 F.3d 413, 420 n.17 (5th Cir. 2013) (quoting *Albright v. Oliver*, 510 U.S. 266, 271 (1994)). In order to state a Section 1983 claim, "'a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States, and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law.'" *Hanna*, 726 F.3d at 638

5

(quoting *James v. Collin Cnty.*, 535 F.3d 365, 373 (5th Cir. 2008); *Moore v. Willis Indep. Sch. Dist.*, 233 F.3d 871, 874 (5th Cir. 2000)).

Under Section 1983, "supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability." *Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir. 1987) (citing *Thibodeaux v. Arceneaux*, 768 F.2d 737, 739 (5th Cir. 1985); *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986)). "'A supervisory official may be held liable . . . . only if (1) he affirmatively participates in the acts that cause the constitutional deprivation, or (2) he implements unconstitutional policies that causally result in the constitutional injury.'" *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011) (quoting *Gates v. Tex. Dep't of Prot. & Reg. Servs.*, 537 F.3d 404, 435 (5th Cir. 2008)). "'In order to establish supervisor liability for constitutional violations committed by subordinate employees, plaintiffs must show that the supervisor act[ed], or fail[ed] to act, with deliberate indifference to violations of others' constitutional rights committed by their subordinates.'" *Id.* (quoting *Gates*, 537 F.3d at 435). "'A failure to adopt a policy can be deliberately indifferent when it is obvious that the likely consequences of not adopting a policy will be a deprivation of constitutional rights.'" *Id.* (quoting *Rhyne v. Henderson Cnty.*, 973 F.2d 386, 392 (5th Cir. 1992)). A supervisor can also be liable for his failure to supervise or train if "'(1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference.'" *Id.* (quoting *Goodman v. Harris Cnty.*, 571 F.3d 388, 395 (5th Cir. 2009)).

Defendant argues that Plaintiff's Amended Complaint identifies him in his capacity as the CEO of Parkland, but does not identify any personal involvement in the care and treatment provided

6

to Plaintiff at Parkland. *See id.* [ECF No. 136 at 2, 5]; Am. Compl. [ECF No. 16 at 22]. Plaintiff states in paragraph 34 of his Amended Complaint that:

> Defendant Frederick Cerise, M.D. was at all relevant times the Chief Executive Officer of Parkland Hospital, responsible for the overall medical administration of the hospital, including the care and custody of the patients admitted there, the supervision, training and control of the physicians working there, and who had responsibility for establishing and/or supervising the customs, policies and practice for the physicians. Defendant Cerise is believed to be the "ultimate policymaker" for DCHD/Parkland, most responsible for addressing the numerous deficiencies and offenses which DCHD/Parkland staff have found to be guilty of since at least 2011.

Am. Compl. [ECF No. 16 at 22]. Further, Defendant points out that in Count IX of his Amended Complaint, Plaintiff lists Defendant's name, along the with names of other Parkland employees, as being liable in a supervisory capacity. *See id.* [ECF No. 16 at 53]; Mot. to Dismiss [ECF No. 13 at 5]. Defendant argues that Plaintiff failed to plead facts sufficient to support a supervisory liability claim against Defendant, because Plaintiff does not identify any policy or procedure that was the moving force of the alleged constitutional violations. *See id.* [ECF No. 136 at 2]. Plaintiff states the following under Count IX of his Amended Complaint:

> **COUNT IX: (Dallas County Hospital District [d/b/a Parkland Health and Hospital System] ("DCHD"), John Quinn, M.D., Nancy Schierding, R.N., Christopher Madden, M.D., Frederick Cerise, M.D., John Gregory Fitz, M.D.) 42 U.S.C. § 1983 – Violations of the 4th and 14th Amendments to the U.S. Constitution, Violations of Due Process and Equal Protection, False Imprisonment, and Excessive Force [*MONELL and SUPERVISORY LIABILITY*].**
>
> 107. Plaintiff restates and re-alleges by reference paragraphs 1 through 59, and 101 to 106, as applicable, as if fully set forth herein against these enumerated Defendants.
>
> 108. Defendants Dallas County, TX, DCHD/Parkland had a duty to properly train employees, agents, executive officers and/or independent contractors acting under actual, alleged, implied, or believed "color of law", including those employees or agents of UTSW conducting and/or participating in medical or related activities at Parkland Hospital, in Dallas, Texas. Defendants similarly have and had a duty not to

allow policies or procedures to be in place that cause or encourage violations of the federal civil rights of persons such as Plaintiff Nieman. In the alternative, Defendants must not show reckless indifference to the rights of persons such as Plaintiff Nieman.

109. The history of unreasonable, abusive, and/or unconstitutional conduct by Parkland and/or UTSW staff is well documented. The events and/or abuses that the Plaintiff suffered has come despite numerous calls from state and local officials, national and/or local media, the courts, and/or other interested parties that Parkland and/or UTSW finally bring an end to such unconstitutional and improper conduct.

110. By virtue of act and/or omission, Defendants allowed and/or encouraged (1) excessive and/or unjustified use of Texas Mental Health Code 573 ("A.P.O.W.W.") as a basis to routinely capture, batter, restrain, sedate, and/or participate in transportation of persons contrary to their federal civil rights, such persons including, but not limited to the Plaintiff, (2) the improper use of physical and/or chemical restraints and sedation to forcibly imprison, detain, and/or to render unconscious persons who legitimately refuse and/or refused medical treatment, (3) to attempt to charge egregious amounts under the guise of legitimate medical service charges even though all such charges were attributed to action and/or alleged medical treatment which was undertaken and/or completed against the express wishes of such persons, and/or completed without their express medical or other consent.

111. Similarly, and/or in the alternative, Defendants allowed and/or created a culture that caused employees, independent contractors, and/or agents of Parkland and/or UTSW to, under "color of law" (1) prescribe and/or order unnecessary medical services and/or diagnostic testing, such as radiology, (2) use improper and/or inappropriate chemical and/or physical restraints on persons whose conduct and/or condition did not justify such implements, (3) to disregard the wishes of persons who refused medical or other treatment and services, including physical and/or chemical restraints and/or sedation, such that such treatment, services, and/or restraints/sedation have customarily been used against the will of persons like Plaintiff Nieman.

112. By virtue of their actions and/or inactions in creating and/or allowing an environment through reckless disregard, Plaintiff has suffered tangible constitutional violations and injuries. The supervisory Defendants of Dallas County, DCHD/Parkland, and the individual supervisory Defendants are directly legally liable to Plaintiff for the damages, injuries, humiliation suffered by him and/or related compensation which he is justly entitled to.

113. Because of the longstanding history of violations by DCHD/Parkland and UTSW, the breach duties by Defendants John Quinn, M.D., Nancy Schierding, R.N., Christopher Madden, M.D., Frederick Cerise, M.D., John Gregory Fitz, M.D., and

> their consistent and unjustified refusal to finally being about cultural and operational change to bring an end of such misconduct and unconstitutional violations at Parkland/UTSW constitutes intentional, malicious, and/or reckless action, each of the individual supervisory Defendants have exposed themselves to exemplary and/or punitive damages.

Am. Compl. [ECF No. 16 at 53-55]. Plaintiff also filed a Rule 7(a) Reply [ECF No. 97] as directed by the Court. *See* Order [ECF No. 95].

Plaintiff appears to concede in his response to Defendant's Motion to Dismiss that he did not allege in his Amended Complaint that Defendant affirmatively participated in the conduct that caused the constitutional violations, but instead argues that Defendant is liable in a supervisory capacity because he "implemented or allowed policies to be placed, and/or customs and practices to exist, which were clearly unconstitutional and/or illegal., meeting the standard." *See* Resp. [ECF No. 140 at 7]. Plaintiff further argues that "The fact that DCHD/Parkland was repeatedly sanctioned and/or placed under supervision and oversight by state and/or federal authorities due to patient abuse and the fact the Defendant Cerise was supposedly recruited specifically to abate or prevent such abuse(s), coupled with yet another severe and unconstitutional event on his watch makes it clear that a viable cause of action has been pled." *See id.* [ECF No. 140 at 7]. Plaintiff also argues in his response that "Plaintiff has not been provided access to any of DCHD/Parkland's records which would allow a greater analysis as to the exact involvement of Defendant Cerise as to the events leading up to the unlawful and unconstitutional conduct of individual DCHD/Parkland Defendants." *See id.* [ECF No. 140 at 8].[1]

---

1. Plaintiff also argues that Defendant's Motion to Dismiss should be denied as untimely, because it was filed after Defendant's Answer. *See* Resp. [ECF No. 140 at 2-3]. However, as Defendant points out, Defendant's Answer preserved the right to move to dismiss for Plaintiff's failure to state a claim. *See* Answer [ECF No. 74 at 22]; Reply [ECF No. 156 at 2] (citing *McDonald v. Dall. Cty.*, No. 3:06-CV-771-L, 2007 WL 1944349, at *3 (N.D. Tex. June 21, 2007)("Defendant can preserve its right to move to dismiss, however, if the answer

Upon consideration of the foregoing, the undersigned concludes that Plaintiff failed to allege supervisor liability under Section 1983. Plaintiff alleges in a conclusory fashion that Defendant is responsible for the supervision, training, and policies in place at Parkland, because he is Parkland's CEO, and argues that the Court should hold him responsible for the alleged unconstitutional conduct of the Parkland staff in providing unnecessary medical services and billing him excessively for those services. *See* Am. Compl. [ECF No. 16 at 22, 53-55]. Plaintiff fails to allege any facts from which the undersigned can reasonably infer that Defendant failed to properly train or supervise the Parkland employees or that Defendant in fact acted in a supervisory capacity or was responsible for the training of any of the Parkland employees who treated Plaintiff. *See* Am. Compl. [ECF No. 16 at 53-55]. It does not logically follow that Defendant would be responsible for the training and supervision of the nurses and doctors who treated Plaintiff, solely from the fact that Defendant is the hospital's CEO. Plaintiff appears to be making the impermissible argument that the Court should hold Defendant vicariously liable for the conduct of Parkland's medical staff, because he is the CEO.

Plaintiff further fails to allege facts from which the Court can deduce that Defendant was deliberately indifferent with respect to the training and supervision of the medical staff who treated Plaintiff or the existence of a causal connection between Defendant's failure to train or supervise and the deprivation of any constitutional rights. Plaintiff's allegations also cannot be construed as stating that Defendant engaged in deliberate indifference with respect to any alleged unconstitutional policies in place at Parkland. While the undersigned liberally construes Plaintiff's allegations due to his *pro se* status, he is not exempt from complying with court rules of procedural and substantive law. *See Birl*, 660 F.2d at 593. Plaintiff's conclusory allegations here do not suffice to survive

---

asserts Plaintiff's failure to state a claim.") (citation omitted)).

10

Defendant's Rule 12(b)(6) motion. Because Plaintiff failed to plead facts sufficient to allege supervisor liability under Section 1983, Plaintiff's Section 1983 claims against Defendant should be dismissed.[2]

With respect to Plaintiff's contention that he will be able to better articulate Defendant's wrongful conduct once he receives discovery from Parkland, the Court must still be able to presently draw the reasonable inference that Defendant is liable for the alleged misconduct. *See* Pl.'s Resp. [ECF No. 140 at 8]; *Ashcroft*, 556 U.S. at 678 ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."). As previously discussed, if Plaintiff fails to "nudge[] [his] claims across the line from conceivable to plausible, [his claims] must be dismissed." *Twombly*, 550 U.S. at 570. Plaintiff's pleaded facts do not permit the Court to infer more than a sheer possibility of misconduct by Defendant. Therefore, Plaintiff's claims against Defendant should also be dismissed for this reason.

## Texas Tort Claims Act

While Plaintiff does not specifically allege in his Amended Complaint that Defendant is liable for any state tort claims, out of an abundance of caution, Defendant also argues that any such claims should be dismissed, because any state law claims that sound in intentional torts are expressly excluded from the limited waiver of the immunity under which he is entitled to protection. *See* Mot. to Dismiss [ECF No. 136 at 9]. Plaintiff does not address this argument in his response, but rather, focuses his discussion on his Section 1983 claims against Defendant. *See* Resp. [ECF No. 140 at 1-11].

---

2. Because the undersigned concludes that Plaintiff's Section 1983 claims against Defendant should be dismissed because Plaintiff failed to allege supervisor liability, the undersigned pretermits discussion of Defendant's qualified immunity argument.

11

"Sovereign immunity refers to the State's immunity from suit and liability. . . . In addition to protecting the State from liability, it also protects the various divisions of state government, including agencies, boards, hospitals, and universities." *See Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 694 n.3 (Tex. 2003) (citations omitted). Under the doctrine of sovereign immunity, divisions of state government retain immunity from suit, unless it is expressly waived by the Legislature. *See City of Hous. v. Williams*, 353 S.W.3d 128, 134 (Tex. 2011) ("[T]he state retains immunity from suit unless it has been expressly waived by the Legislature.") (citation omitted). "The Texas Tort Claims Act specifically states that a person having a claim under the Act may sue a governmental unit . . . for damages that are allowed by the Act." *Huong v. City of Port Arthur*, 961 F. Supp. 1003, 1008 (E.D. Tex. 1997) (citing TEX. CIV. PRAC. & REM. CODE §§ 101.025, 101.001(2)(B)). The damages that are allowed by the Texas Tort Claims Act ("TTCA") are for:

> (1) property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within the scope of employment if:
> (A) the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and
> (B) the employee would be personally liable to the claimant according to Texas law; and
> (2) personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.

TEX. CIV. PRAC. & REM. CODE § 101.021. "The TTCA does not apply to any claim 'arising out of assault, battery, false imprisonment, or any other intentional tort.'" *Wright v. City of Garland*, No. 3:10-CV-1852-D, 2014 WL 1492356, at *10 (N.D. Tex. Apr. 16, 2014) (citing TEX. CIV. PRAC. & REM. CODE § 101.057).

Defendant argues that Plaintiff cannot circumvent the intentional tort exception by framing

12

his claims in terms of negligence. *See* Mot. to Dismiss [D.E. 136 at 9-10]. "If a plaintiff pleads facts which amount to an intentional tort, no matter if the claim is framed as negligence, the claim generally is for an intentional tort and is barred by the TTCA. A plaintiff cannot circumvent the intentional tort exception by couching his claims in terms of negligence." *Wright*, 2014 WL 1492356, at *10 (internal quotation marks and citations omitted). Plaintiff seeks to have the Court hold Defendant responsible for the Parkland's employees' alleged intentional conduct in falsely imprisoning him, and administering medication and rendering medical services against his will. *See* Am. Compl. [D.E. 16 at 51-58]. Therefore, Plaintiff fails to state any viable TTCA claims against Defendant, to the extent he is asserting any such claims.

Defendant further argues that any TTCA claims against Parkland's employees must be dismissed because Texas Civil Practices and Remedies Code, Section 101.106(e) ("Section 101.106(e)") requires Plaintiff to choose at the time of filing suit, whether he will proceed against Parkland or its employees, but Plaintiff improperly sued both. *See* Mot. to Dismiss [D.E. 136 at 10]. Section 101.106(e) provides that "[i]f a suit is filed under this chapter against both a governmental unit and any of its employees, the employees shall immediately be dismissed on the filing of a motion by the governmental unit." TEX. CIV. PRAC. & REM. CODE § 101.106(e). Therefore, any TTCA claims against Defendant are also improper on this basis. *See Cunningham v. City of Balch Springs*, No. 3:14-CV-9-L, 2014 WL 4851576, at *7 (N.D. Tex. Sept. 30, 2014) ("The Individual Defendants, as employees of the City, seek dismissal of Plaintiff's state law claims of false arrest and intentional infliction of emotional distress. Because Cunningham filed suit under the Act against the City and the Individual Defendants, the Individual Defendants as employees must be dismissed immediately once the governmental entity files a motion to dismiss. . . . As the City and the

Individual Defendants have filed motions to dismiss, dismissal of these claims against the Individual Defendants is mandatory." (citing TEX. CIV. PRAC. & REM. CODE § 101.106(e); *Mission Consol. Indep. Sch. Dist.*, 253 S.W.3d 653, 659 (Tex. 2008); *Bustos v. Martini Club, Inc.*, 599 F.3d 458, 463 (5th Cir. 2010))).

### RECOMMENDATION

For the foregoing reasons, the undersigned respectfully recommends that the Court **GRANT** Defendant's Motion to Dismiss [ECF No. 136].

**SO RECOMMENDED**, this 11th day of February, 2016.

_____
PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND
### NOTICE OF RIGHT TO APPEAL/OBJECT

The United States District Clerk shall serve a true copy of these findings, conclusions, and recommendation on the parties. Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions, and recommendation must serve and file written objections within fourteen days after service of the findings, conclusions, and recommendation. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory, or general objections. A party's failure to file such written objections to these proposed findings, conclusions, and recommendation shall bar that party from a *de novo* determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985). Additionally, any failure to file written objections to the proposed findings, conclusions, and recommendation within fourteen days after service shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superceded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).