## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| JASON NIEMAN, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | No. 3:14-CV-3897-M (BF) |
| E. STREET INVESTMENTS, L.L.C., | § | |
| d/b/a CONCRETE COWBOY, et al., | § | |
| Defendants. | § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

This case has been referred to the United States Magistrate Judge for pretrial management. Before the Court is 12(b)(1) and 12(b)(6) Motion to Dismiss [ECF No. 137] ("Motion to Dismiss") filed by Amanda Garcia, Katherine M. Mapula, Catherine Lewis Neal, Kristie Louann Brown, Luis Roman Taveras, Jason Gregory Smith, Nicholas S. Clarke, Jay Kun Lee, Daniel Lee Marion, and Nancy Schierding (collectively, "Defendants"). For the following reasons, the undersigned recommends that the Court GRANT Defendants' Motion to Dismiss [ECF No. 137].

## BACKGROUND

Jason Nieman ("Plaintiff") brings this suit alleging personal injury and violations of his civil rights under Title 42, United States Code, Section 1983 ("Section 1983") in connection with events that took place on September 14, 2014 at Concrete Cowboy, a bar located on Cedar Springs Road in Dallas, Texas. *See* Am. Compl. [ECF No. 16 at 24]. On that night, Plaintiff contends that he consumed 4 glasses of wine with dinner between 6:00 p.m. and 9:00 p.m. at a restaurant located at the Adolphus Hotel, but that he was not intoxicated when he left the restaurant. *See id.* [ECF No. 16 at 24]. Plaintiff states that, at approximately 9:00 p.m., he went to a nearby venue, O.E. Penguin, in search of a karaoke bar, but upon discovering that there was no karaoke at that location, Plaintiff proceeded to the Concrete Cowboy with an individual named "Jason" and an unidentified female

companion. *See id.* [ECF No. 16 at 24]. Plaintiff states that he does not recall consuming any alcoholic beverages at O.E. Penguin. *See id.* [ECF No. 16 at 24].

Plaintiff states that upon arriving at Concrete Cowboy, he consumed a beverage given to him by Jason, which he believed to be vodka and Red Bull, but was contaminated with a drug appearing to have been Gamma Hydroxybutyrate or Rohypnol. *See id.* [ECF No. 16 at 24-25]. Within a few minutes of consuming the contaminated beverage, Plaintiff contends that his judgment, physical control, and memory were greatly compromised, but alleges that the staff at Concrete Cowboy and nearby police officers failed to reasonably prevent and/or detect the "drugging incident." *See id.* [ECF No. 16 at 25]. Plaintiff alleges that the staff at Concrete Cowboy allowed him to be provided more alcoholic beverages, despite his obviously compromised condition. *See id.* [ECF No. 16 at 25]. Plaintiff contends that shortly thereafter, he was attempting to "escape the clutches" of Jason and his unidentified female companion, when he fell on a staircase at Concrete Cowboy, which he believes was caused by the combination of: (1) the consumption of the contaminated beverage; (2) the defective and/or dangerous condition of the staircase and/or handrail; and (3) inadequate lighting in the staircase. *See id.* [ECF No. 16 at 25-26]. Plaintiff contends that he "suffered a hard fall with a serious facial/cranial impact." *See id.* [ECF No. 16 at 26]. Plaintiff states that as a result of his fall, he "suffered a deep abrasion/laceration to his nose, a serious nasal contusion, [and a] non-serious concussion." *See id.* [ECF No. 16 at 26].

Plaintiff contends that he encountered the owner of Concrete Cowboy and two City of Dallas police officers shortly after mid-night, all of whom, despite the fact that they "could see that Plaintiff [] was impaired," and that he "had suffered at least a moderately serious facial/head injury," and were further "advised that such injuries were the result of a fall on the premises," those individuals

"simply allowed [him] to walk on, despite his obviously compromised state." *See id.* [ECF No. 16 at 26]. Plaintiff alleges that, at approximately 12:45 a.m. on September 15, 2014, paramedics Dwaine N. Helton and Michael Milam captured and kidnapped him using unreasonable physical force and transported him to Dallas County Hospital District d/b/a Parkland Health and Hospital System ("Parkland"). *See id.* [ECF No. 16 at 26]. Plaintiff contends that as "a reasonable person trying to free himself from unlawful and/or unreasonable restraint, battery, and/or detention, Plaintiff struggled and growled/yelled, demanding to be released." *See id.* [ECF No. 16 at 27]. Plaintiff further states that his "yells were such that some saliva unintentionally escaped his mouth as he made his pleas," but he never attempted "to bite or injure Defendants Helton, Milam, or anyone else." *See id.* [ECF No. 16 at 27]. Furthermore, Plaintiff alleges that Defendant Jessica L. Morrell ("Officer Morrell"), a City of Dallas law enforcement officer, violated her duty to prevent the paramedics from kidnapping him against his will and transporting him to Parkland. *See id.* [ECF No. 16 at 28]. Furthermore, Plaintiff alleges that Officer Morell later created an Apprehension by a Peace Officer Without Warrant ("A.P.O.W.W.") form to make it appear that Plaintiff's capture, imprisonment, and battery were lawful. *See id.* [ECF No. 16 at 28].

Plaintiff alleges that in the early morning of September 15, 2014, he was held captive at Parkland, and that the staff at Parkland, without his consent, "cut off his clothes, destroying his shirt, pants, and underwear, and stole his wallet, money, identification, credit cards, insurance cards, cellular phone, and related items from him by way of strong arm robbery and/or robbery [b]y virtue of restrain and/or medication." *See id.* [ECF No. 16 at 29-30]. However, Plaintiff states that by approximately 1:45 p.m. of that same day, his clothing, wallet, and telephone were returned to him, and he was released from Parkland. *See id.* [ECF No. 16 at 34]. Plaintiff alleges that he was

subjected to numerous unauthorized procedures and treatments during his transportation to and during his stay at Parkland. *See id.* [ECF No. 16 at 27-34]. Plaintiff further contends that "[a]t no time did [he] give any relevant Defendant consent for treatment or billing, nor did he ever consent to this outrageous intrusion as to his personal privacy." *See id.* [ECF No. 16 at 30].

On August 14, 2015, Defendants, who are all doctors and nurses at Parkland, filed their Motion to Dismiss [ECF No. 137]. Defendants argue that Plaintiff failed to state viable claims against them, and that they are entitled to qualified immunity. *See* Defs.' Br. [ECF No. 138 at 10-28]. Plaintiff filed his response on August 15, 2015 arguing that Defendants' Motion to Dismiss should be denied in entirety, with the exception of his claims against Nancy Schierding,[1] whom Plaintiff contends he named in this lawsuit due to "good faith error." Resp. [ECF No. 142 at 1]. Defendants filed their reply on August 18, 2015. *See* Reply [ECF No. 144].

## STANDARD OF REVIEW

### Rule 12(b)(1)

A motion to dismiss under Federal Rule of Civil Procedure ("Rule") 12(b)(1) challenges a federal court's subject matter jurisdiction. *Lowe v. U.H.F. Magnolia Trace, L.P.*, No. 3:14-CV-1460-M, 2015 WL 9690254, at *1-2 (N.D. Tex. Dec. 10, 2015) (citing FED. R. CIV. P. 12(b)(1)). Federal courts are courts of limited jurisdiction, and they lack power to adjudicate claims without jurisdiction conferred by statute or the Constitution. *Id.* (citing *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998)). Therefore, a claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1), if the court lacks statutory or constitutional authority to adjudicate the claim.

---

1. Defendants state in their Answer that Nancy Schierding was working at a medical facility in Warren, Ohio on September 15, 2014, and that she stopped working at Parkland in approximately June of 2011. *See* Answer [ECF No. 49 at 23].

*Id.* (citing *Home Builders Assoc. of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998)). If a Rule 12(b)(1) motion is filed together with other Rule 12 motions, the court should consider the "jurisdictional attack before addressing any attack on the merits," because the case cannot proceed without subject matter jurisdiction. *Id.* (quoting *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001); citing *Ruhrgas A.G. v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999)).

### Rule 12(b)(6)

Under Rule 12(b)(6), a court examines pleadings by accepting all well pleaded facts as true and viewing them in a light most favorable to the plaintiff. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). In order to survive a Rule 12(b)(6) motion to dismiss, the complaint must plead enough facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has facial plausibility where the plaintiff alleges facts that allow the court to draw the reasonable inference that the defendant is liable for the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. If "the plaintiffs [] have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570.

While courts liberally construe the pleadings of *pro se* litigants, *pro se* parties are not exempt from complying with court rules of procedural and substantive law. *See Birl v. Estelle*, 660 F.2d 592, 593 (5th Cir. 1981) ("One who proceeds *pro se* with full knowledge and understanding of the risks involved acquires no greater rights than a litigant represented by a lawyer . . . . Rather, such a litigant acquiesces in and subjects himself to the established rules of practice and procedure." (citations

omitted)).

## ANALYSIS

### State Law Claims

Defendants argue that the Court lacks subject matter jurisdiction, because all of the claims alleged against them in Plaintiff's Amended Complaint are actually state law health tort claims. *See* Defs.' Br. [ECF No. 138 at 10-15]. Title 28, United States Code, Section 1367(a) ("Section 1367(a)") gives a court supplemental jurisdiction over claims that are related to the claims that give the court original jurisdiction, which include related claims against parties over whom the court would not have independent jurisdiction. *See* 28 U.S.C. § 1367(a); *Winegarner v. City of Coppell*, No. 3:05-CV-1157-L, 2006 WL 2485847, at *10 (N.D. Tex. Aug. 28, 2006). Section 1367(a) states:

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

*Id.* Title 28, United States Code, Section 1367(c) ("Section 1367(c)") gives a court the discretion to decline to exercise supplemental jurisdiction, if all the claims which gave the court original jurisdiction are dismissed. *See* 28 U.S.C. § 1367(c) ("[D]istrict courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction."). Therefore, if a plaintiff invokes federal question subject matter jurisdiction with respect to his claims against some defendants, the court can exercise supplemental jurisdiction over the plaintiff's related state claims that form the same case or controversy against other defendants where no independent basis for subject matter jurisdiction

otherwise exists. *See Winegarner*, 2006 WL 2485847, at *10. Further, because Section 1367(c) does not mandate courts to decline supplemental jurisdiction if all the claims over which it had original jurisdiction are dismissed, but gives courts the discretion to decline jurisdiction, a court may exercise supplemental jurisdiction, even after all the federal claims in the case are dismissed. *See* 28 U.S.C. § 1367(c). Therefore, even if the Court construes all of Plaintiff's claims against Defendants as state claims, Sections 1367(a) and 1367(c) give the Court authority to exercise supplemental jurisdiction over those claims, even after all the federal claims in this case are dismissed.

Defendants also argue that Plaintiff's state claims against Defendants (with the exception of Nancy Schierding who stopped working at Parkland in 2011) must be dismissed, because Plaintiff improperly sued both Parkland and its employees. *See* Defs.' Br. [ECF No. 138 at 14]; Defs.' Answer [ECF No. 49 at 23]. Defendants argue that any Texas Tort Claims Act ("TTCA") claims against Parkland's employees must be dismissed because Texas Civil Practices and Remedies Code, Section 101.106(e) ("Section 101.106(e)") requires Plaintiff to choose at the time of filing suit, whether Plaintiff will proceed against Parkland or its employees, but Plaintiff improperly sued both. *See* Defs.' Br. [ECF No. 138 at 14].

"The Texas Tort Claims Act specifically states that a person having a claim under the Act may sue a governmental unit . . . for damages that are allowed by the Act." *Huong v. City of Port Arthur*, 961 F. Supp. 1003, 1008 (E.D. Tex. 1997) (citing TEX. CIV. PRAC. & REM. CODE §§ 101.025, 101.001(2)(B)). The damages that are allowed by the TTCA are for:

(1) property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within the scope of employment if:
    (A) the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and

(B) the employee would be personally liable to the claimant according to Texas law; and

(2) personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.

TEX. CIV. PRAC. & REM. CODE § 101.021. Section 101.106(e) provides that "[i]f a suit is filed under this chapter against both a governmental unit and any of its employees, the employees shall immediately be dismissed on the filing of a motion by the governmental unit." TEX. CIV. PRAC. & REM. CODE § 101.106(e). Therefore, any TTCA claims against Defendants should be dismissed, to the extent Plaintiff is asserting such claims. *See Cunningham v. City of Balch Springs*, No. 3:14-CV-9-L, 2014 WL 4851576, at *7 (N.D. Tex. Sept. 30, 2014) ("The Individual Defendants, as employees of the City, seek dismissal of Plaintiff's state law claims of false arrest and intentional infliction of emotional distress. Because Cunningham filed suit under the Act against the City and the Individual Defendants, the Individual Defendants as employees must be dismissed immediately once the governmental entity files a motion to dismiss. . . . As the City and the Individual Defendants have filed motions to dismiss, dismissal of these claims against the Individual Defendants is mandatory." (citing TEX. CIV. PRAC. & REM. CODE § 101.106(e); *Mission Consol. Indep. Sch. Dist.*, 253 S.W.3d 653, 659 (Tex. 2008); *Bustos v. Martini Club, Inc.*, 599 F.3d 458, 463 (5th Cir. 2010))).

## Federal Claims

"Section 1983 provides a claim against anyone who 'under color of any statute, ordinance, regulation, custom, or usage, of any State' violates another's constitutional rights." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (citing 42 U.S.C. § 1983). "'Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred.'" *Sepulvado v. Jindal*, 729 F.3d 413, 420 n.17 (5th Cir. 2013) (quoting *Albright v. Oliver*, 510 U.S.

8

266, 271 (1994)). In order to state a Section 1983 claim, "'a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States, and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law.'" *Hanna*, 726 F.3d at 638 (quoting *James v. Collin Cnty.*, 535 F.3d 365, 373 (5th Cir. 2008); *Moore v. Willis Indep. Sch. Dist.*, 233 F.3d 871, 874 (5th Cir. 2000)).

Plaintiff's allegations against Defendants (except for Nancy Schierding) are set forth in Count VIII of his Amended Complaint as follows:

**COUNT VIII: (Amanda Garcia, R.N., Jason Gregory Smith, M.D., Nicholas S. Clarke, M.D., Marian Daniel Lee, R.N., Jay Kun Lee, M.D./D.D.S., Jane Ellen O'Connell, M.D., Katherine M. Mapula, R.N., Catherine Lewis Neal, M.D., Luis Roman Tavaras, M.D., Kristie Louann Brown, R.N., Alexander Eastman, M.D., Gina Sims, M.D., Jeffrey Pruitt, M.D., Nhan Le, M.D., Kyle Molberg, M.D., Suhny Abbara, M.D., Anthony Whittemore, M.D.): 42 U.S.C. § 1983 – Violations of the 4th and 14th Amendments to the U.S. Constitution, Equal Protection, Violation of Due Process Rights, False Imprisonment, Excessive Force, 42 U.S.C. § 1985 (Conspiracy) [Parkland/UTSW Individual Defendants].**

102. Plaintiff restates and re-alleges by reference paragraphs 1 through 59, as applicable, as if fully set forth herein against these enumerated Defendants. Defendants individually and/or collectively acted under actual or alleged "color of law" at one or more relevant times. However, Defendants do not enjoy qualified immunity as such actions taken under "color of law."

103. Each of these Defendants directly and/or indirectly participated in the unlawful imprisonment of Plaintiff Nieman by virtue of (1) failing to release Plaintiff from custody and/or restraint and/or failure to intervene to order Plaintiff Nieman's release from unlawful and/or unconstitutional involuntary custody, (2) failing to intervene by virtue of individual and/or supervisory authority to effect the release of Plaintiff from his unlawful imprisonment and/or physical restraint.

104. Each of these Defendants directly and/or indirectly participated improperly and/or used excessive force against Plaintiff Nieman by virtue of (1) placing Plaintiff in unnecessary and unreasonable physical restraint, (2) using chemicals and/or drugs to sedate Plaintiff against his will and despite lack of reasonable justification for such action and despite Plaintiff's express and lucid requests for immediate release and cessation of medical activity upon him, (3) the placement of a forced Foley catheter

9

in the Plaintiff's penis/urethra as part of unauthorized treatment and/or sedation, (3) to attempt to charge egregious amounts under the guise of legitimate medical service charges even though all such charges were attributed to action and/or alleged medical treatment which was undertaken and/or completed against the express wishes of such persons, and/or completed without their express medical or other consent. Additionally, Defendants' actions in holding Plaintiff against his will and forcibly restraining him by physical, mechanical or chemical/medical means also constituted a deprivation of Plaintiff's liberty as guaranteed by the 14th Amendment to the U.S. Constitution, such deprivation occurring without required due process of law and being objectively unreasonable. Defendants had no legitimate basis for these actions and do not enjoy qualified or other immunity for any of these actions or inactions in defiance of Plaintiff's constitutional rights. By virtue of seizing Plaintiff's wallet, identification, insurance cards, credit cards, cellular phone, and related items, the Defendants committed acts of unlawful seizure in violation of Plaintiff's 4th Amendment rights, and without any required due process being followed.

105. As a direct result of the actions and/or knowing inactions of Defendants individually and/or collectively, and/or a conspiracy to commit and/or permit such offenses, Plaintiff Nieman suffered physical puncture injuries from needles, suffered new and/or aggravation of soft tissue injuries to his arms and torso, soft tissue injuries to his penis/urethra and related organ structures, soft tissue and/or organ based injuries to his kidneys, and related injury(ies). The actions of Defendants, the actions of Defendants individually and/or collectively also directly and/or indirectly caused and/or contributed to Plaintiff being unable to attend a previously scheduled business meeting on September 15, 2014. Plaintiff Nieman has suffered objective damages as to lost wages, required redundant travel, and other related damages as the requirement to re-set such meeting(s) and to travel back to Dallas several weeks later to complete the meetings originally set for September 15, 2014. Defendants, the actions of Defendants, individually and/or collectively, are personally and legally responsible for the damages suffered by Plaintiff Nieman.

106. Because the actions of the Defendants, individually and/or collectively, were intentional and/or grossly negligent, malicious, and/or outrageous and unacceptable, these Defendants have subjected themselves to the imposition of significant punitive and/or exemplary damages.

Am. Compl. [ECF No. 16 at 51-53]. Plaintiff also filed a Rule 7(a) Reply [ECF No. 61] as directed

by the Court. *See* Order [ECF No. 59].

Defendants argue that Plaintiff failed to state excessive force, due process, equal protection,

supervisor liability, and conspiracy claims. *See* Defs.' Br. [ECF No. 138 at 15-26]. Defendants argue

that Plaintiff's excessive force claim fails, because he failed to establish both a seizure and any use of force. *See id.* [ECF No. 138 at 16]. Defendants also argue that Plaintiff's due process claim fails, because Plaintiff failed to allege a violation of any due process right that is plausible on its face. *See id.* [ECF No. 138 at 20]. Defendants further argue that Plaintiff's equal protection claim fails, because he pleaded no facts to demonstrate that he is a member of a protected class or that he was similarly situated to any other patients arriving A.P.O.W.W. at Parkland. *See id.* [ECF No. 138 at 23].With respect to Plaintiff's conspiracy claim, Defendants argue that Plaintiff's allegations are merely legal conclusion with no factual specificity. *See id.* [ECF No. 138 at 25].

While Plaintiff's Amended Complaint alleges that Nancy Schierding "was, at all relevant times, the director of nursing for the psychiatric emergency room and in charge of . . . supervision, training, and control of the nurses working there," Defendants point out that Plaintiff acknowledged in his Rule 7(a) Reply that Schierding was included in his lawsuit due to "good faith error," and that she "should be dismissed from the action and removed from the caption." *See id.* [ECF No. 138 at 23-24]; Rule 7(a) Reply [ECF No. 61 at 3, 26]. Defendants also point out that while Plaintiff asserts that Catherine Lewis Neal and Luis Roman Taveras had supervisory authority over Katherine M. Mapula and Kristie Louann Brown, he does not appear to plead supervisor liability claims against any of the Defendants, except for against Nancy Schierding. *See* Defs.' Br. [ECF No. 138 at 24 n.10]; Am. Compl. [ECF No. 16 at 21, 51, 53].

In Plaintiff's response, he asks the Court to deny Defendants' motion in entirety, with the exception of his claims against Nancy Schierding, with respect to whom he contends he "repeatedly consented to the voluntary dismissal of without prejudice as she was apparently named in good faith error." *See* Resp. [ECF No. 142 at 1]. Plaintiff further argues that "even if Texas Health Code

Section 573 could potentially provide any justification for the Defendants' actions, there is a serious question of fact as to the process followed and legitimacy thereof." *See id.* [ECF No.142 at 18]. Plaintiff contends that "the alleged 'A.P.O.W.W.' form appears to potentially have been backdated as to time (allegedly filled out at '12:30' but not scanned into the Parkland system until approximately 6:00 a.m. the next morning)." *See id.* [ECF No.142 at 18].

Plaintiff argues that he properly alleged that Defendants participated in or supervised the offenses committed against him, and that they improperly seized and searched his person and personal effects. *See id.* [ECF No.142 at 7, 11-12, 21-24]. Plaintiff also contends that Defendants ignored his conspiracy claim in their Motion to Dismiss. *See id.* [ECF No.142 at 20]. Plaintiff further contends that the "issue of the legitimacy of Plaintiff's involuntary capture, restraint, and detention remains suspect from the very beginning and will likely not be resolved at least until discovery has been completed in this case given that the City of Dallas individual Defendants have elected to provide almost no facts in their Answer." *See id.* [ECF No.142 at 18].[2]

<u>Excessive Force</u>

In order to state an excessive force claim, Plaintiff must show: (1) an injury, (2) resulting directly from clearly excessive force, and (3) that the use of that force was clearly unreasonable. *See Freeman v. Gore*, 483 F.3d 404, 416 (5th Cir. 2007). Excessive force claims are analyzed under the Fourth Amendment's objective reasonableness standard. *See Graham v. Connor*, 490 U.S. 386, 395-

---

2. Plaintiff also argues that Defendants' Motion to Dismiss should be denied as untimely, because it was filed after Defendants' Answer. *See* Resp. [ECF No. 142 at 2-3]. However, as Defendants point out, Defendants' Answer preserved the right to move to dismiss for Plaintiff's failure to state a claim. *See* Answer [ECF No. 49 at 22]; Reply [ECF No. 144 at 1-2] (citing *McDonald v. Dall. Cty.*, No. 3:06-CV-771-L, 2007 WL 1944349, at *3 (N.D. Tex. June 21, 2007)("Defendant can preserve its right to move to dismiss, however, if the answer asserts Plaintiff's failure to state a claim.") (citation omitted)).

97 (1989). "In gauging the objective reasonableness of the force used . . . [the Court] must balance the amount of force used against the need for that force . . . ." *Spann v. Rainey*, 987 F.2d 1110, 1115 (5th Cir. 1993). Defendants argue that Plaintiff failed to plead facts showing that they used excessive force. *See* Defs.' Br. [D.E. 138 at 19]. Although the undersigned has liberally construed Plaintiff's allegations, the undersigned does not find that Plaintiff pleaded facts showing that clearly unreasonable force was used in providing necessary medical services. Plaintiff specifically states in his Amended Complaint that he suffered a hard fall which resulted in "serious facial/cranial impact," and that he "suffered a deep abrasion/laceration to his nose, [and] a serious nasal contusion . . . ." *See* Am. Compl. [ECF No. 16 at 26]. Therefore, while Plaintiff contends that the medical services provided were unnecessary, it is objectively reasonable for Defendants to provide those services, despite Plaintiff's belief that they were unnecessary, to treat injuries that Plaintiff concedes were "serious." Therefore, Plaintiff fails to state an excessive force claim.

<u>Due Process</u>

In order to "state a Fourteenth Amendment due process claim under § 1983, 'a plaintiff must first identify a protected life, liberty or property interest and then prove that governmental action resulted in a deprivation of that interest.'" *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) (quoting *Baldwin v. Daniels*, 250 F.3d 943, 946 (5th Cir. 2001)). Again, alleging that Defendants provided medical treatment for a period of approximately 12 hours immediately after Plaintiff sustained injuries, which he describes as having resulted from a "serious facial/cranial impact," does not show that Plaintiff was deprived of any life, liberty, or property interest, or that Defendants

13

falsely imprisoned him during that relatively brief period.[3] *See* Am. Compl. [ECF No. 16 at 26, 34].

Without such an interest, "'there is nothing subject to due process protections and our inquiry ends.'"

*Rege*, 627 F.3d at 545 (quoting *Cabrol v. Town of Youngsville*, 106 F.3d 101, 105 (5th Cir. 1997)).

Furthermore, the Supreme Court has explained that "[t]he need to protect or preserve life or avoid

serious injury is justification for what would be otherwise illegal absent an exigency or emergency."

*Brigham City v. Stuart*, 547 U.S. 398, 403 (2006) (citations omitted). Therefore, assuming arguendo

that there was a deprivation of an identifiable interest, the exigency of the circumstances would

render Defendants' conduct legal. As a result, Plaintiff has failed to state a due process claim.

## Equal Protection

In order to "state a claim under the Equal Protection Clause, a § 1983 plaintiff must either

allege that (a) 'a state actor intentionally discriminated against [him] because of membership in a

protected class[,]' . . . or (b) he has been 'intentionally treated differently from others similarly

situated and that there is no rational basis for the difference in treatment.'" *Gibson v. Tex. Dep't of

Ins.*, 700 F.3d 227, 238 (5th Cir. 2012) (quoting *Williams v. Bramer*, 180 F.3d 699, 705 (5th Cir.

1999); *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)). Defendants argue that Plaintiff

pleaded no facts demonstrating that he was a member of a protected class or that he was similarly

situated with any other patients arriving A.P.O.W.W. at Parkland. *See* Defs.' Br. [ECF No. 138 at

23]. Defendants further argue that Plaintiff failed state what the purported discriminatory act

committed was or who specifically committed those discriminatory acts. *See id.* [ECF No. 138 at

23]. Because Plaintiff wholly failed to allege facts that state an equal protection claim, any such

---

3. While Plaintiff contends that his personal effects were taken from him when he was admitted to the hospital, he states that they were returned to him upon his discharge. *See id.* [ECF No. 16 at 29-30, 34].

claims should be dismissed. *See Gibson*, 700 F.3d at 238 ("Gibson makes no allegation that this law discriminates, either facially or in its application, against members of any protected class. Nor does he make any serious allegation that this law has been applied to him in a manner different from other similarly situated individuals. . . . Accordingly, we affirm the district court's dismissal of Gibson's equal protection claim.").

Conspiracy

"A person injured as the result of a conspiracy to interfere with his civil rights may bring an action under 42 U.S.C. § 1985." *Suttles v. U.S. Postal Serv.*, 927 F. Supp. 990, 1000 (S.D. Tex. 1996) (citing *Holdiness v. Stroud*, 808 F.2d 417, 424 (5th Cir. 1987)). Title 42, United State Code, Section 1985(3) ("Section 1985(3)") states in part the following:

> If two or more persons in any State or Territory conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; . . . in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more conspirators.

42 U.S.C. § 1985(3). In order to state a claim under Section 1985(3), Plaintiff must allege:

> (1) a conspiracy involving two or more persons; (2) for the purpose of depriving, either directly or indirectly, a person or class of persons of the equal protection of the laws; and (3) an act in furtherance of the conspiracy; (4) which causes injury to a person or property, or a deprivation of any right or privilege of a citizen of the United States.

*Suttles.*, 927 F. Supp. at 1000-01 (citing *United Bhd. of Carpenters & Joiners of Am. v. Scott*, 463 U.S. 825, 828-29 (1983); *Hilliard v. Ferguson*, 30 F.3d 649, 652-53 (5th Cir. 1994); *Deubert v. Gulf Fed. Sav. Bank*, 820 F.2d 754, 757 (5th Cir. 1987)). Further, Plaintiff must also assert "'some racial,

15

or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action.'" *Suttles.*, 927 F. Supp. at 1001 (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971)).

Defendants argue that Plaintiff fails to plead facts to support the existence of a conspiracy and fails to plead any class-based discriminatory intent on the part of any Defendants. *See* Defs.' Br. [ECF No. 138 at 25]. Defendants further argue that Plaintiff failed to allege any facts in furtherance of a conspiracy or any damage sustained from such actions. *See id.* [ECF No. 138 at 25-26]. Again, because Plaintiff wholly failed to plead facts to state a conspiracy claim, such a claim should be dismissed.

### Supervisor Liability

Under Section 1983, "supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability." *Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir. 1987) (citing *Thibodeaux v. Arceneaux*, 768 F.2d 737, 739 (5th Cir. 1985); *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986)). "'A supervisory official may be held liable . . . . only if (1) he affirmatively participates in the acts that cause the constitutional deprivation, or (2) he implements unconstitutional policies that causally result in the constitutional injury.'" *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011) (quoting *Gates v. Tex. Dep't of Prot. & Reg. Servs.*, 537 F.3d 404, 435 (5th Cir. 2008)). "'In order to establish supervisor liability for constitutional violations committed by subordinate employees, plaintiffs must show that the supervisor act[ed], or fail[ed] to act, with deliberate indifference to violations of others' constitutional rights committed by their subordinates.'" *Id.* (quoting *Gates*, 537 F.3d at 435). "'A failure to adopt a policy can be deliberately indifferent when it is obvious that the likely consequences of not adopting a policy will be a deprivation of constitutional rights.'" *Id.* (quoting *Rhyne v. Henderson Cnty.*, 973 F.2d 386, 392 (5th

16

Cir. 1992)). A supervisor can also be liable for his failure to supervise or train if "'(1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference.'" *Id.* (quoting *Goodman v. Harris Cnty.*, 571 F.3d 388, 395 (5th Cir. 2009)).

Any supervisor liability claim against Nancy Schierding should be dismissed, because Plaintiff concedes that she was inadvertently named in this lawsuit due to an oversight. *See* Resp. [ECF No. 142 at 1]. With respect to Plaintiff's assertion that Catherine Lewis Neal and Luis Roman Taveras had supervisory authority over Katherine M. Mapula and Kristie Louann Brown, Plaintiff does not plead facts sufficient to state supervisor liability claims against them. *See* Am. Compl. [ECF No. 16 at 21, 51-53]. As Defendants point out, aside from his bare assertion that Neal and Taveras had supervisory authority over Mapula and Brown, Plaintiff does not state facts to assert claims of supervisor liability for Neal or Taveras, or any of the other Defendants. Defs.' Br. [ECF No. 138 at 24 n.10]. Therefore, any such claims against Defendants should be dismissed.[4]

---

4. Because the undersigned concludes that Plaintiff's federal claims against Defendants should be dismissed, because Plaintiff failed to state viable claims for excessive force, due process, equal protection, supervisor liability, and conspiracy, the undersigned pretermits consideration of Defendants' qualified immunity argument.

## RECOMMENDATION

For the foregoing reasons, the undersigned respectfully recommends that the Court **GRANT**

Defendants' Motion to Dismiss [ECF No. 137].

**SO RECOMMENDED**, this16th  day of February,  2016.


PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

The United States District Clerk shall serve a true copy of these findings, conclusions, and recommendation on the parties. Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions, and recommendation must serve and file written objections within fourteen days after service of the findings, conclusions, and recommendation. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory, or general objections. A party's failure to file such written objections to these proposed findings, conclusions, and recommendation shall bar that party from a *de novo* determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985). Additionally, any failure to file written objections to the proposed findings, conclusions, and recommendation within fourteen days after service shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superceded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).